IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JAMES KLUPPELBERG, | ) | |
| | ) | |
| Plaintiff, | ) | 13 CV 3963 |
| | ) | |
| v. | ) | JUDGE LEFKOW |
| | ) | |
| JON BURGE et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO DRAW ADVERSE INFERENCE AGAINST THE CITY AND BAR INTRODUCTION OF PRIOR TESTIMONY OF INDIVIDUAL DEFENDANTS INVOKING THE 5TH AMENDMENT**

Now comes Plaintiff, James Kluppelberg, by and through his counsel, Loevy & Loevy, and respectfully requests that this Court permit the jury to draw an adverse inference against the City based on Rolston's and Burge's invocation of the Fifth Amendment, and bar the introduction of Rolston's motion to suppress testimony. In support thereof, Plaintiff states as follows:

**Introduction**

Plaintiff has sued the City of Chicago on a *Monell* theory, as well a number of the City's employees. Under state law and the union contract, the City is the real party in interest responsible for satisfying any judgment.

Throughout this litigation, two of the City of Chicago's employees (Defendants Leonard Rolston and Jon Burge) invoked their Fifth Amendment privilege. Rolston and Burge took the Fifth at their depositions and in answers to written discovery when questioned about the City of Chicago's policies, practices and training on interrogations, evidence disclosure and "street files," and they took the Fifth when questioned about the investigation that led to Plaintiff's

wrongful arrest and incarceration for the fire and attendant homicide at 4448 S. Hermitage ("Hermitage Fire").

Rolston was one of the lead police officers in the Hermitage Fire. Plaintiff has alleged that Defendant Rolston beat a confession out of him – a beating so vicious that Plaintiff was urinating blood. That confession was ultimately suppressed by the criminal court, which found that it was "obvious that [Plaintiff] was mistreated by the police." Ex. 3, Ruling, *People v. Kluppelberg*, at P221. Plaintiff has also alleged that Rolston fabricated and withheld exculpatory evidence consistent with the City's policies, practices and training, and in violation of Plaintiff's constitutional rights.

Burge was Rolston's supervisor. As Commander of Bomb and Arson, Defendant Burge oversaw the Plaintiff's interrogation and the associate investigation, and then announced Plaintiff's arrest to the public following his indictment for the arson-murder. As the supervisor in charge of the investigation, Burge also fostered the constitutional violations undertaken by his subordinates by participating in and/or turning a blind eye to them. Burge

As former employees of the City, Rolston's and Burge's invocation of the Fifth Amendment in response to questions within the scope of their employment should be imputed to their employer, the City of Chicago. That is, the jury should be permitted to draw an adverse inference not only against Rolston and Burge, but also against the City of Chicago.

Furthermore, the City should be barred from introducing Rolston's testimony from Plaintiff's 1988 motion to suppress hearing in the instant litigation. During that motion to suppress, Rolston denied any wrongdoing and testified that Plaintiff voluntarily confessed, a subject upon which Rolston has invoked the Fifth Amendment during this litigation. *See* Ex. 1, Rolston Dep. at 283-290. Fed. R. Evid. 804(a) clearly prohibits Rolston from introducing this

testimony because he has made himself unavailable at trial. Recognizing this, the Defendants are trying to make an end run around that prohibition by seeking to introduce his testimony through the City (as opposed to Rolston). But as Rolston's employer, the City can no more introduce this testimony than Rolston could himself.

**Argument**

1. **The Jury Should Be Permitted to Drawn An Adverse Inference Against the City Based on Burge's and Rolston's Invocation of the Fifth Amendment**

Adverse inferences from an agent's or employee's assertion of the privilege are permitted against a corporate party. *See RAD Svcs., Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271, 275 (3d Cir. 1986) ("[N]othing forbids imputing to a corporation the silence of its personnel."); *see also Pagel, Inc. v. Securities and Exchange Commission,* 803 F.Supp. 942 (8th Cir.1986) (Securities and Exchange Commission did not err in taking adverse inference against corporate officials of broker-dealer into account when weighing evidence against the broker-dealer); *Brink's, Inc. v. City of New York,* 539 F.Supp. 1139, 1141 (S.D.N.Y.1982) (any inference to be drawn from contractor's present or former employees exercising the privilege could be used against contractor as well as the employees in city action to recover money from parking meter thefts); *AEL Industries, Inc. v. Alvarez*, CIV. A. 88-0391, 1989 WL 97394, at *4–5 (E.D. Pa. Aug. 17, 1989) (adverse inference could be drawn against sole shareholder from invocation of Fifth Amendment by former employees). That is true regardless of whether the witness invoking the Fifth Amendment works for the corporation at the time of the invocation or not. *Rad Svcs, Inc.*, 808 F.3d at 275-76. Rather, "[a]ny factors suggesting that a former employee retains some loyalty to his former employer – such as the fact that the employer is paying for his attorney – would serve the same purpose." *Id*.

The bases for drawing an adverse inference against the corporation based on an individual's invocation of the Fifth Amendment are well established in the law. As *Rad Svcs, Inc.* explains:

> An employee's self-interest would counsel him to exculpate his employer, if possible. The witness, as well, would know the facts about which he is called to testify since they relate to the scope of his employment. The employer, moreover, could rebut any adverse inference that might attend the employee's silence, by producing contrary testimonial or documentary evidence.

*Id.*[1]

Each of the criteria for admitting an agent's or employee's invocation of the Fifth Amendment against the municipal employer are present here. First, there is no dispute that the City is paying for counsel for both Burge and Rolston, and will indemnify each for any compensatory damages awarded against them to the Plaintiff.

Second, Rolston's, Burge's and the City's interests are all aligned. The City and Rolston have the exact same motive in this case: to disprove Plaintiff's allegations about the manner in which Rolston treated him. In addition, the facts about which Rolston and Burge were questioned "relate to the scope of [their] employment." Moreover, both the City and Rolston have listed on their Final Pretrial Order other evidence designed to prove that Plaintiff voluntarily confessed. The fact that the City filed two motions to compel Defendant Rolston to testify instead of assert his Fifth Amendment rights should not change the result. For one thing, there is no reason not to see these motions as strategic and tactical (precisely so they could make this argument now)

Third, a contrary ruling would make no sense. In trying to prove the *Monell* claim, the Plaintiff cannot put "the City" on the witness stand. The City speaks through its agents. This

---

[1] Indeed, admitting an agent's or employee's Fifth Amendment invocation against the corporation has its roots in Fed. R. Evid. 801(d)(2)(D). That Rule excepts from the hearsay bar a statement offered against a corporate party and made by its "agent or servant concerning a matter within the scope of his agency or employment . . . during the existence of the relationship . . . ."

includes its agents who will be telling the City's story, as well as its agents who have a good faith basis to believe that truthful answers about the policy and practice questions could be incriminating. The City should not be able to enjoy the benefit of the former without accepting the negative inferences stemming from the latter.

To be clear, the claims against the City are the policy and practice claims, as distinct from the Due Process claims against the individual. By the policy and practice claims, Plaintiff alleges (and the City disputes) that Burge and Rolston were part of a Constitutionally-infirm system under which Area 3 detectives routinely withheld "street files" from criminal defendants (just as the exculpatory "New File" was withheld from Plaintiff for decades until this civil litigation), thereby perpetrating *Brady* violations on an institutional level. Plaintiff has amassed considerable proof establishing exactly that. When Burge and Rolston assert the Fifth not just on whether they railroaded Plaintiff, but also on whether the City's then-existing street files practice was unconstitutional, those latter privilege assertions are very relevant and should be admissible against the City. As stated, these are the City's agents, and the City is only able to tell its story through its agents.

Furthermore, to the extent that the City contends in response that it should not be bound by Rolston's decision to invoke the Fifth Amendment because it does not exercise control over him (as demonstrated by the City's motions to compel his testimony), that argument should fail. The Fifth Amendment right is always personal to an individual, and the fact that a corporation neither has a Fifth Amendment right nor can force an employee to either invoke or not invoke the Fifth Amendment is of no moment. *See Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, CIV. 09-00336 SOM, 2013 WL 3243371, at *4 (D. Haw. June 26, 2013). Besides, the City's motion to compel was transparently tactical/strategic, designed to permit just this

argument as opposed to being genuinely motivated to secure the testimony. This is because these Defendants have already declared that truthful answers to questions would be bad. Witnesses are not allowed to assert this privilege simply to avoid uncomfortable subjects; disclosure of the truth must give rise to genuine belief that it could subject the privilege asserter to criminal jeopardy. There is thus absolutely no reason, in other words, to assume that these witnesses' testimony on the policy and practice questions would have been anything but harmful to the City, notwithstanding the City's purported interest in securing it.

For all of these reasons, the jury should be permitted to draw an adverse inference against the City from Rolston's and Burge's invocation of the Fifth Amendment.

**2. The City Should Also Be Barred From Introducing Rolston's Motion to Suppress Testimony**

As noted above, Defendant Rolston testified at Plaintiff's motion to suppress that Plaintiff voluntarily confessed to the Hermitage Fire and that he did not beat or physically coerce Plaintiff. Defendant Rolston would not answer questions about this account at his deposition, and has declared that he will not be offering such testimony (or permitting cross-examination on it) at the upcoming trial.

To be clear, Rolston has endeavored to "make himself" unavailable. Under these circumstances, the Defendants should be barred from introducing his motion to suppress testimony at Plaintiff's upcoming trial. Fed. R. Evid. 804(a) ("But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying."). Recognizing this, Rolston has not listed that testimony on the Final Pretrial Order. Instead, the City is seeking to do what Rolston cannot: Introduce Rolston's motion to suppress testimony. That request should be denied.

As described more fully above, because Rolston was an agent of the City acting within the scope of his employment during his interrogation of Plaintiff and subsequent testimony, the City should be bound by Rolston's invocation of the Fifth Amendment as if it were its own. That is particularly true because the interests of the City and Rolston are directly aligned on this score; both are seeking to prove that Plaintiff's confession was true and voluntary.

Moreover, permitting the City to introduce Rolston's motion to suppress testimony would work an unfair end-run around Fed. R. Evid. 804(a). It would permit the jury to hear what Rule 804(a) expressly prohibits and would provide Rolston with the very benefit that he chose to forego when asserting the Fifth – his defense to Plaintiff's allegations that he was beaten. The unfair prejudice to Plaintiff would be substantial.

If nothing else, Rolston's subsequent revelation that he is unwilling to stand by his prior testimony fundamentally destroys its reliability as competent evidence worthy of admission at a federal trial. Introduction would be akin to permitting the jury to see a document whose foundation has been fatally undermined.

Finally, it is worth noting that by precluding the City from introducing Rolston's motion to suppress testimony, this Court will not be depriving the City from asserting a defense to Plaintiff's allegations. The City is free to call other witnesses or introduce other documents that it believes undermines Plaintiff's contention and that can provide admissible evidence; it would just not be free to call this witness and introduce this testimony.

WHEREFORE, Plaintiff respectfully requests that this Court permit the jury to draw an adverse inference against the City based on Rolston's and Burge's invocation of the Fifth Amendment, and bar the introduction of Rolston's motion to suppress testimony.

Respectfully submitted,

/s/ Jon Loevy
One of Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Gayle Horn
Elizabeth Mazur
Roshna Bala Keen
Sarah Grusin
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

    I, Jon Loevy, an attorney, hereby certify that on October 7, 2016, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Jon Loevy