```
            IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


JAMES KLUPPELBERG,                )
                                  )
           Plaintiff,             )  Docket No. 13 C 3963
                                  )
        vs.                       )
                                  )
JON BURGE, et al.,                )  Chicago, Illinois
                                  )  September 21, 2016
           Defendants.            )  10:05 a.m.


           TRANSCRIPT OF PROCEEDINGS - Status
        BEFORE THE HONORABLE JOAN H. LEFKOW


APPEARANCES:

For the Plaintiff:      LOEVY & LOEVY
                        BY:  MS. ELIZABETH N. MAZUR
                             MS. SARAH L. GRUSIN
                        311 North Aberdeen Street, Third Floor
                        Chicago, Illinois  60607


For the Defendants:     THE SOTOS LAW FIRM, P.C.
                        BY:  MS. ELIZABETH A. EKL
                        550 East Devon Avenue, Suite 150
                        Itasca, Illinois  60143

                        JONES DAY
                        BY:  MR. KENTON J. SKARIN
                        77 West Wacker Drive, Suite 3500
                        Chicago, Illinois  60601


Court Reporter:         FRANCES WARD, CSR, RPR, RMR, FCRR
                        Official Court Reporter
                        219 S. Dearborn Street, Suite 2144D
                        Chicago, Illinois  60604
                        (312) 435-5561
                        frances_ward@ilnd.uscourts.gov
```

```
1           THE CLERK:  13 C 3963, Kluppelberg v. Burge.
2           MS. EKL:  Good morning, your Honor.
3           Elizabeth Ekl, E-k-l, on behalf of the individual
4  Chicago police and fire defendants.
5           MR. SKARIN:  Good morning, your Honor.
6           Kenton Skarin, S-k-a-r-i-n, on behalf of Defendant
7  City of Chicago.
8           MS. MAZUR:  Good morning, your Honor.
9           Elizabeth Mazur and Sarah Grusin for plaintiff.
10          THE COURT:  Good morning.
11          Ms. Ekl, you are here for whom?
12          MS. EKL:  Your Honor, all of the individual
13 defendants in the case.
14          THE COURT:  Okay.
15          So I really don't have time to hear much argument
16 on this.  I looked at the response in the motion.  I have a
17 couple of questions.
18          One is, it seems to me disingenuous to the
19 plaintiff to say this is new -- disingenuous of the plaintiff
20 to say this is new when you have had this file for 14 months,
21 and you didn't tell me in your motion that you had redeposed
22 four of the people after receiving the file.
23          MS. MAZUR:  That's correct, your Honor.  And I
24 apologize if it came off that way.
25          As I understand it, during fact discovery of this
```

1  case, when we redeposed defendants about the file, it is
2  because we wanted information about the file.  So we
3  deposed -- redeposed the defendants who were testifying.
4        Defendant Burge has been on the Fifth Amendment.
5  It was our understanding he would be taking the Fifth
6  Amendment on everything, so we didn't ask to redepose him
7  about that at the time.
8        What, I guess, is actually new is that we have
9  learned that he is not coming to trial, and so his testimony
10 will be limited to what is in his deposition.  And we didn't
11 have the opportunity to pose questions about him -- about the
12 file at his deposition.  We sort of anticipated we would just
13 pose those questions to him at trial when he appeared, but he
14 is not appearing.
15       So this is really just a chance to get the record
16 on asking those questions.  And I understand defendants are
17 concerned.  They think it's prejudicial.  But it seems like
18 those are really admissibility questions, and that can be
19 dealt with separately.  While we are out there asking him
20 questions about other things, can we ask these few extra
21 questions and get the record on it?
22       MS. EKL:  Your Honor, in regard to Mr. Burge's
23 unavailability, he was incarcerated in Butner, as you well
24 know, at the time that we took his deposition, and we had no
25 indication that he was going to be released and that we would

1　　have a trial after his release.

2　　　　　　　He is still technically incarcerated, in the sense
3　　that he is under supervision at this point in time.

4　　　　　　　We have some additional issues regarding his health
5　　that would also additionally prevent him from coming.

6　　　　　　　But when we took his deposition in Butner, at that
7　　point in time, I don't believe it was anyone's understanding
8　　he was going to be free to come into court and testify.

9　　　　　　　THE COURT:  Well, is it a mutual understanding that
10　　there will be a continued deposition about his financial
11　　situation, or are you objecting to that as well?

12　　　　　　　MS. EKL:  Your Honor, I have not confirmed yet with
13　　Mr. Burge that we will be asserting an inability to pay
14　　defense in relation to punitive damages.  I believe we will.
15　　And if that's the case, then we would be presenting him for a
16　　very limited deposition for that purpose.  But he has not
17　　confirmed yet that that's what he would like to do.

18　　　　　　　THE COURT:  Well, I think that would be important
19　　to know.  So why don't you figure that out.

20　　　　　　　MS. EKL:  I anticipate it's more likely than not
21　　that he will do that, your Honor.

22　　　　　　　THE COURT:  So if there is going to be further
23　　inquiry and you are going down to Florida to -- I mean, there
24　　is no good reason to prevent him from -- or to prevent the
25　　plaintiff from asking, as she says, a few additional

1    questions.  We will see.
2            MS. EKL:  Your Honor -- go ahead.
3            MR. SKARIN:  Your Honor, I would just say, from the
4    City's perspective, I think there is extreme prejudice, as we
5    have pointed out.
6            And just to clarify one point, it's not that they
7    have had this file for 14 months.  They have had this file
8    for 25 months at this point.  They redeposed three people,
9    and they tried to do a fourth.  He died, unfortunately.
10           Fifteen months ago, when fact discovery closed, we
11   have been preparing this case based on the decision that
12   plaintiff made in discovery, and so there is the -- there is
13   more than the, can you just do it?  Of course, you could
14   always have another deposition.
15           The problem is that the case -- what's really going
16   on here is that they don't like the case they have, because
17   they want to go and ask a series of "Did you shoot Kennedy?"
18   questions that they know that they will get a Fifth Amendment
19   inference to, and then use that to -- six weeks before trial;
20   and probably by the time Burge is redeposed, two weeks, three
21   weeks before trial -- rebuild their whole case that they
22   didn't do in the almost three years that this case has been
23   in fact discovery.
24           That's inherently prejudicial, and that's the
25   reason for our -- for the objection, from the City's

1 perspective.

2 MS. EKL: Your Honor, the individuals agree
3 completely. We believe that this deposition of Mr. Burge is
4 going to be used to bridge a gap in evidence that they know
5 is lacking, and that because of Mr. Burge's assertion of the
6 Fifth, as Mr. Skarin pointed out, they are going to use it to
7 ask him questions and to get an adverse inference where they
8 can't otherwise provide evidence to support their claim.

9 MS. MAZUR: Again, Judge, that point was made in
10 their briefs. And as I mentioned, that's really a question
11 about admissibility, if it's going to be used at trial in
12 this case.

13 What we are asking for right now is just, while we
14 are out there, which it seems like we are going to be, can we
15 ask these few questions? We all know what the answers are
16 going to be. That way we would have the record available
17 should your Honor decide that we are allowed to use it at
18 trial. Otherwise we would have no way of having that record
19 available.

20 THE COURT: So I am going to get a motion to bar
21 instead.

22 MS. EKL: Right. And, your Honor, we know what the
23 answer is going to be. I can tell you right now, Mr. Burge's
24 answer to any question about his employment is going to be,
25 "I assert my Fifth Amendment right." So any question that

1  they intend to ask him, that will be the answer.
2          MR. SKARIN: And they have known that will be the
3  answer since they took his deposition -- I can't remember --
4  something like two years ago. And if they wanted that, they
5  could have asked for it 15 months ago. They didn't, and
6  that's the cause for the prejudice.
7          It's not fair. We are getting sandbagged.
8          THE COURT: Well, I suppose that's true.
9          Do you have one final thing to say? It's your
10 motion.
11         MS. MAZUR: I guess, you know, Judge, we -- I don't
12 really understand the sandbagging argument. I mean, if he
13 was coming to testify live, we could just ask him these
14 questions.
15         We may have a motion to bar in advance of trial.
16 But really, I mean, it seems like Mr. Skarin's point is that
17 we should have asked for three depositions of Mr. Burge
18 instead of two. It just doesn't seem that there is any
19 prejudice in just getting a record that we may or may not be
20 able to use at court -- at trial.
21         THE COURT: Well, I know that I am just inviting
22 another motion, but I will grant the motion on the condition
23 that you are going to take a deposition as to his finances,
24 and then we will deal with it later.
25         I guess it's a question of whether his -- you know,

1  there is -- the statute of limitations has long since run,
2  but I guess he could be prosecuted again for perjury if he
3  answers, right?
4              MS. EKL:  Your Honor, the other concern is -- and
5  we raised this in relation to the other depositions.  We
6  didn't oppose them asking questions in a redeposition of
7  certain other defendants who arguably could have had some
8  contact with this file, but Judge Valdez, at the time of that
9  particular motion, agreed to limit the questions that could
10 be asked.  So again, they didn't go beyond asking
11 specifically about this new file.
12             So I know that it's been represented they only have
13 a few questions to ask.  We would just ask that there be some
14 sort of order defining what that means, I suppose.
15             MR. SKARIN:  And if I could suggest as one
16 possibility -- Judge Valdez limited them to three hours in
17 the redepositions of the other defendants.  At a minimum,
18 that, combined with a limit on questions related to the file
19 at issue itself, would probably be at least a reasonable
20 notion.
21             MS. EKL:  I think that would be more than enough
22 time to ask Mr. Burge two questions about whether or not he
23 had any contact with this file or was even employed in the
24 location where the file allegedly was in existence.  If they
25 can't -- I mean --

1  THE COURT: All right. So yes, a limit. Any
2  deposition will not exceed, what -- three hours should be
3  plenty of time for all matters.
4  And as to the scope of what you are talking about,
5  can you define it?
6  MS. MAZUR: Can we just agree that whatever the
7  limit was that -- I mean, I think we could work that out. We
8  do not anticipate on going into new territory or taking a
9  very long dep.
10  MS. EKL: My concern, quite honestly, on behalf of
11  Mr. Burge, is that I think three hours to ask about the new
12  file is extraordinarily excessive, given that --
13  THE COURT: I don't mean three hours about the new
14  file. Shall we say, what, 30 minutes? I mean. It depends
15  on how it goes. One hour. Okay?
16  MS. MAZUR: Fair enough.
17  THE COURT: All right.
18  MS. MAZUR: I think we had -- we don't want to hold
19  you, Judge, but there is a few little housekeeping things.
20  One is, there is a motion up on the page limit on
21  defendants' motion to bar.
22  THE COURT: I think I granted that.
23  MS. MAZUR: And then, we are in the middle -- we
24  are exchanging pretrial order materials. We had some
25  question about whether your Honor, first of all, would like

```
 1  trial briefs; and if so, if we should be exchanging them
 2  beforehand or if each side just files their own when we
 3  submit the final pretrial order?
 4          THE COURT:  I don't -- we didn't have a motion for
 5  summary judgment in this case.  So no, you don't have to
 6  exchange them beforehand, but give me -- I think I know what
 7  the law is, but you probably have it on your word processors.
 8  I think it comes out in the jury instructions, so don't
 9  bother with a trial brief.
10          MS. MAZUR:  Okay.
11          MR. SKARIN:  No trial brief?
12          THE COURT:  No trial brief.
13          MR. SKARIN:  Thank you, your Honor.
14          MS. MAZUR:  Thank you.
15          MS. EKL:  Thank you very much.
16                     *   *   *   *   *
17  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
18
19  /s/ Frances Ward                          October 26, 2016.
    Official Court Reporter
20  F/j
```