*Kluppelberg v. Burge, et al.*
Case No. 13 CV 3963
Our File No. 13-3050

# DEFENDANTS' RESPONSE TO PLAINTIFF'S MIL NO. 40 EXHIBIT A-1 (REDACTED)

# Replacing Dkt. 500-3

# Cavanaugh & Associates

# APPENDIX I

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| REVIEWER: | Aimée St. Pierre, M.D. |
| C&A DICTATION NUMBER: | 3073 |
| C&A FILE NAME: | James Kluppelberg v. Jon Burge, et al. |
| BRIEF CITATION: | Kluppelberg v. Burge |
| COURT NUMBER: | 13 CV 3693 |
| ATTORNEY NAME: | Elizabeth A. Ekl/Jaclyn L. McAndrew |
| ATTORNEY TELEPHONE: | 630.735.3370/630.735.3317 |

## TABLE OF CONTENTS

1. Defendants William Kelly and Michael Duffin's Answer to Plaintiff's Second Amended Complaint..................................................................................................................2
2. Defendant William Alletto's Answer to Plaintiff's Second Amended Complaint.......................6
3. Defendant Jon Burge's Answer to Plaintiff's Second Amended Complaint................................6
4. Defendant Leonard Rolston's Answer to Plaintiff's Second Amended Complaint .....................6
6. Answer to Second Amended Complaint [City of Chicago].........................................................6
7. Plaintiff's Second Supplemental Response to Defendant Olieveri's First Set of Interrogatories 7
8. Plaintiff's Response to Defendant William Kelly's First Set of Interrogatories..........................8
9. Plaintiff's Response to Defendant Wayne Micek's First Set of Interrogatories .......................10
10. Plaintiff's Response to Defendant Edwin Olivieri's First Set of Interrogatories ....................12
11. Plaintiff's Response to Defendant Lawrence Tuider's First Set of Interrogatories .................13
12. Plaintiff's Response to Defendant Victor Vega's First Set of Interrogatories .........................14
13. Plaintiff's Supplemental Response to Defendant William Kelly's First Set of Interrogatories15
14. Plaintiff's Supplemental Response to Defendant Oliveri's First Set of Interrogatories...........16
15. Plaintiff's Supplemental Response to Defendant Lawrence Tuider's First Set of Interrogatories .....................................................................................................................16
16. Letters to Sarah Brobst.............................................................................................................17
17. Certificates of Completion .......................................................................................................31
18. Cook County Divorce Records ................................................................................................31
19. Minister Certificate ..................................................................................................................32
20. Will County Divorce Records ..................................................................................................32
21. Education Records ....................................................................................................................32
22. Employment Records ...............................................................................................................33
23. IDOC Education and Disciplinary Reports...............................................................................34
24. Report of Proceedings, Illinois v. Kluppelberg, 6/22/84........................................................35
25. Report of Proceedings, Illinois v. Kluppelberg, 6/25/84........................................................36
26. Various Criminal Records.........................................................................................................38

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 1. Defendants William Kelly and Michael Duffin's Answer to Plaintiff's Second Amended Complaint.

*This document presents the Second Amended Complaint, which is summarized below. Defendants' responses to the complaint are not summarized.*

1.  Kluppelberg spent more than 2 decades in prison for an arson-murder that he did not commit.

2.  He was convicted after police manipulated witnesses, fabricated evidence and withheld information that would have demonstrated his innocence. Despite his innocence, Defendants beat a false confession out of him, hitting him so violently that he was urinating blood. Trial court ultimately suppressed Kluppelberg's confession, finding it was "obvious" that he has been severely mistreated, but not before the confession was used by Defendants to set in motion Kluppelberg's wrongful arrest and prosecution. To corroborate Kluppelberg's false confession, Defendants coerced false witness statements allegedly establishing how Kluppelberg purportedly set fire to a home in which 6 people were killed. Defendants knew these statements were false but nonetheless withheld that information from Kluppelberg.

3.  To buttress the false confession and witness statements the Defendants conspired to fabricate arson evidence. Although original fire investigators found that the origin and cause of the fire could not be determined, Defendants ignored this scientifically sound conclusion and instead manufactured bogus "findings" to corroborate the false witness statements. Well before Kluppelberg's arrest and conviction, Defendants were aware of a likely, alternative suspect for the arson. This person had admitted to setting fire to a nearby home and possibly having set the fire for which Kluppelberg was ultimately arrested and convicted. Despite the exculpatory value of this information, it was never disclosed to Kluppelberg or his attorneys nor even to the prosecutor.

4.  As a result of Defendants' misconduct, Kluppelberg was wrongfully convicted of arson and murder and sentenced to life in prison. After serving 24 years in prison, Kluppelberg was released when the State moved to dismiss all charges against him. He brings the instant action to seek redress for the violation of his rights.

5.  Plaintiff is a 47-yo father of three. Prior to his wrongful arrest, he worked in home remodeling and repair. Since his release, he has been working as a machine assistant. Each of the Defendant Officers is sued in his individual capacity and each acted in the scope of his employment in the actions alleged in this Complaint.

6.  On 3/24/84 a fire consumed the house at 4448 S. Hermitage, killing 6 people and injuring another. In addition, the fire burned the two adjacent houses. Plaintiff had nothing to do

2

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

with setting fire to the home. On the night of the fire, Kluppelberg had been hanging out with other people at his then-girlfriend Dawn Gramont's apartment. The Bomb and Arson Unit of the CPD conducted an investigation. Detectives involved in the investigation concluded that the cause and origin of the fire could not be determined due to the extensive burning and collapse of the building.

7.  Tests of debris from the fire to determine whether an accelerant was used came back negative. Therefore, in 4/84, the PD closed the case as "apparent accidental fire deaths." After the PD closed the case, there was no additional investigation into the fire for nearly 4 years, when another man was arrested and charged with burglary, theft, and violation of probation. When he was arrested, he was on probation and had 2 prior burglary charges. In an effort to avoid prison time on his own charges, the man falsely implicated Kluppelberg in the fire at 4448 S. Hermitage that had occurred years earlier.

8.  In 1/88 Kluppelberg was arrested and charged with arson and murder stemming from the 1984 fire. Rather than listen to his protestations of innocence, Defendants severely beat him: handcuffed behind his back and completely defenseless, Defendants threw Kluppelberg onto the floor and punched him in the back and kicked him in the kidney area. Defendant would not relent until Kluppelberg falsely confessed to having started the fire. As a result of this vicious attack, Kluppelberg was urinating blood; he was taken to the doctor after guards found him doubled over in the bathroom. The doctor who treated Kluppelberg diagnosed him with trauma and a hematoma to his lower back and kidneys.

9.  Faced with this evidence, the trial court suppressed the statement that Defendants beat out of Kluppelberg. The court held that it was "obvious" that Kluppelberg was "mistreated by the police."

    Rather than search for the true perpetrator, Defendants threatened and coerced witnesses into falsely implicating Kluppelberg. When he was arrested, his then girlfriend, Gramont, was also taken to the police station and held in custody until she testified before the grand jury. She told Defendants that Kluppelberg could not have started the fire because he was with her that night. Defendants, however, were not happy with that truth. As a result, when Gramont refused to go along with Defendants' fabricated story inculcating Kluppelberg, they pushed her head against the door, hit her with a flashlight and threatened to hurt her children. Defendants then told Gramont what they wanted her to say, i.e., that Plaintiff was involved in the fire. Because she was scared, Gramont parroted back the Defendants' fabricated story to the grand jury, but as soon as she was released from custody she went to the Office of Professional Standards to lodge a complaint.

10. In addition to beating Kluppelberg and threatening witnesses, Defendants also fabricated arson evidence to falsely implicate Kluppelberg in the crime. In 3/84, the Bomb and

3

**Cavanaugh 019**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

Arson Unit of the CPD investigated the fire at 4448 S. Hermitage. Although they found that the cause and origin could not be determined due to the extensive destruction of the building and the absence of an accelerant, Defendants refused to accept this scientifically sound conclusion. Instead, they conspired to manufacture arson evidence to corroborate Kluppelberg's false confession in the fabricated witness statements. To do so, Defendants enlisted the help of Defendants Burns and Alletto.

11.     In 3/84, Burns and Alletto were part of an organization, the Office of Fire Investigations, which had yet to become operational. They purportedly went to 4448 S. Hermitage with several apprentice fire investigators and performed a training exercise. Neither Burns nor Alletto took notes. Nor did either make a contemporaneous report of their findings. Nonetheless, 4 years later, they asserted that based on their experience and the alleged burn patterns of the house, the fire was arson. They knew that their "findings" were scientifically indefensible and wholly fabricated but did not disclose that fact to Kluppelberg or his attorney.

12.     Not only did Defendants fabricate evidence against Kluppelberg, they also withheld evidence that would have exculpated him, in particular, the confession of an alternate offender. About 15 hrs before the fire at 4448 S. Hermitage, a house nearby at 4504 S. Marshfield was burned to the ground. The parallels between the fires are striking. A woman admitted to setting fire at 4504 S. Marshfield, for which she was ultimately convicted. She said that she spent the next 12 hrs or more wandering around to different bars on Ashland Ave.

13.     She also told Defendants that she "may have set" the fire at 4448 S. Hermitage but "because of her intoxicated condition" she could not remember specifically having set it. None of this information was known to Kluppelberg at the time of his trial. Despite the manifest exculpatory value, Defendants failed to disclose either the fact of this confession or the attendant police report.

In 7/89, Plaintiff stood trial for arson and murder.

14.     Based upon the witnesses' coerced testimony, the manufactured arson evidence, and without access to the exculpatory police report, Kluppelberg was wrongfully convicted of arson and murder. During pretrial and trial, Defendants committed perjury, including stating that Kluppelberg was not beaten, that Gramont was not threatened, and by fabricating arson evidence. Kluppelberg was sentenced to life in prison. In 2008, he located previously undisclosed evidence establishing his innocence.

15.     Faced with this evidence, the State dismissed all charges against Kluppelberg in a manner indicative of his innocence.

4

**Cavanaugh 020**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

Kluppelberg spent more than 2 decades in prison for a crime he did not commit. He must now attempt to make a life for himself outside of prison without the benefit of 24 years of life experiences. The emotional pain and suffering caused by losing nearly 24 years in the prime of life has been substantial. During his wrongful incarceration, Kluppelberg was stripped of the pleasures of basic human experience. He missed out on the ability to share holidays, births, funerals and other life events with loved ones, the opportunity to pursue a career, and the fundamental freedom to live life as an autonomous human being. As a result, he has suffered tremendous damage, including physical suffering, all proximately caused by Defendants' misconduct.

5

Cavanaugh 021

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

2. **Defendant William Alletto's Answer to Plaintiff's Second Amended Complaint.**

   *This document presents the Second Amended Complaint, which is summarized in Section #1 above. Defendant's responses to the Second Amended Complaint are not summarized.*

3. **Defendant Jon Burge's Answer to Plaintiff's Second Amended Complaint.**

   *This document presents the Second Amended Complaint, which is summarized in Section #1 above. Burge asserts his Fifth Amendment rights.*

4. **Defendant Leonard Rolston's Answer to Plaintiff's Second Amended Complaint.**

   *This document presents the Second Amended Complaint, which is summarized in Section #1 above. Rolston asserts his Fifth Amendment rights.*

5. **Defendants Kenneth Urbon, Wayne Micek, John Nelson, Lawrence Tuider, George Jenkins, Victor Vega and Edwin Olivieri's Answer to Plaintiff's Second Amended Complaint.**

   *This document presents the Second Amended Complaint, which is summarized above in Section #1. Defendant's responses to the Second Amended Complaint are not summarized.*

6. **Answer to Second Amended Complaint [City of Chicago].**

   *This document presents the Second Amended Complaint, which is summarized above in Section #1. Defendant's responses to the Second Amended Complaint are not summarized.*

6

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

**7. Plaintiff's Second Supplemental Response to Defendant Olieveri's First Set of Interrogatories.**

1.  During incarceration in CCJ, IDOC or any other correctional institution were you admitted to any hospital or treated by any health care professional:

2.  Plaintiff refers Defendants to records from Cook County, Cermak and IDOC. Plaintiff states that in 10/89 he was admitted to a hospital in Macon, GA as he testified to in his deposition.

    Following release from custody, were you admitted to any hospital or clinic or treated by any health care professional:

3.  Plaintiff had an evaluation for back pain and a consultation with a pulmonologist. He has had routine medical care including routine eye exams and checkups with his family doctor. He has been treated on multiple occasions, had stitches in his forehead (4/13) and two hand surgeries, 5/27/14 for a carpal tunnel of the L hand and 7/2914 for carpal tunnel of the R hand. In 9/14 he had MCL surgery on his L knee. All surgeries were at Northwest Regional Surgery Center.

    Since his release, Plaintiff has seen the following doctors: Dr. Joseph Schwartz (hand surgeon); Dr. James Simantirakis (family doctor); Dr. Scott Andrews (knee injury); Walmart (eye doctor); Dr. Zeshan Hyder (back evaluation); Dr. Ranju Chandrashekariah (pulmonologist).

Cavanaugh 023

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

### 8. Plaintiff's Response to Defendant William Kelly's First Set of Interrogatories.

1.    Plaintiff states that Kelly withheld from him, his attorney and the Cook County State's Attys information indicating that Isabel Ramos and not Kluppelberg set the fire at 4448 S. Hermitage, including but not limited to the statement that Ramos made to Defendants on 3/24/84, memorialized in Defendant Micek's report as: "At this time she did not remember setting any other fires other than the one in her apartment but said she may have set some after viewing her burned down building.

2.    Because of her intoxicated condition, she does not remember what happened after finding her building burned down." Kelly also withheld: evidence that Duane Glassco's statements against Kluppelberg were false, fabricated and not sufficiently reliable or trustworthy; evidence that Kelly coerced, or witnessed his partner coercing, Glassco into making the following false claims to the prosecutor and jury: that Kluppelberg climbed up a light pole, that Glassco saw Kluppelberg entering and exiting 4448 S. Hermitage carrying newspapers and gasoline, and that Kluppelberg admitted to Glassco that he set the fire; evidence that Kelly or his partner in his presence, fed each of the foregoing facts and other facts consistent with this fabricated account to Glassco, which were not contained in Glassco's prior statements to the police, so that Glassco's statement would corroborate Gramont's coerced and fabricated statement, as well as Kluppelberg's coerced confession; evidence that other detectives, including but not limited to Bomb and Arson Detective Rolston, coerced Glassco into giving a false statement against Kluppelberg; evidence that he participated in threatening and physically attacking Gramont into giving a false statement against Kluppelberg, and that he fed information to Gramont, which he ordered her to parrot back to the state's attorney and jury; evidence that he knew other detectives, including but not limited to Det. Foley, threatened and physically attacked Gramont into giving a false statement against Kluppelberg; evidence that he conspired with Rolston to prosecute Kluppelberg for arson and murder, although he did not possess any creditable evidence that Kluppelberg was guilty of that crime; and evidence that he conspired with Defendants Burns and Alletto to provide a false opinion of arson.

4.    Plaintiff does not contend that Kelly physically beat him. He states that Kelly was aware of the exculpatory information relating to Ramos and aware that information was not disclosed to plaintiff, his attorney or the prosecutor. Kelly took no action to ensure that this information was disclosed.

5.    Kelly was aware of his partner's coercive tactics in procuring false inculpatory statements from Glassco, Gramont and Burns and Alletto yet failed to intervene.

Kelly and his partner, Foley, were advised by ASAs that they did not have adequate evidence with which to pursue charges against Kluppelberg. Rather than conduct an

8

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

earnest investigation, Kelly proceeded to generate corroborating evidence to fit his suspect.

7.     Kelly coerced witnesses into providing false accounts. Kelly, Foley, Rolston and Schmitz communicated frequently about the progress of the investigation and coordinated efforts to obtain inculpatory statements from witnesses and Burns and Alletto.

Sometime between 1/13/88 and Plaintiff's indictment, Kelly, together with Foley, Schmitz, and Rolston, approached Alletto and Burns to obtain an opinion that the fire at 4448 S. Hermitage was caused by arson, after the ASA had stated he could not prosecute Kluppelberg without evidence that a crime had been committed. Alletto and Burns provided information to Foley and Kelly about the cause and origin of the fire.

8.     Plaintiff states that the practice of withholding exculpatory information from the prosecution and defense, such as by placing information into "street files" and not into a police file that was disclosed to third parties was widespread during the investigation into the 4448 S. Hermitage fire and during the arrest and prosecution of Plaintiff.

12.     Plaintiff was incarcerated from ~1/85-4/87. He is currently unmarried. He was previously married to Donna Kluppelberg, and to Bonnie Kluppelberg at the time of his wrongful arrest. He received his GED and took courses while incarcerated by IDOC.

14.     Plaintiff was arrested for aggravated battery and armed violence in ~12/82; he was rearrested in 1/83, then acquitted by a jury. There was an armed robbery stop order placed in 1984, following which he was brought into custody but then released without charging. He was also arrested for theft of copper wire but believes the charges were dismissed (date unknown). On ~8/31/84 he was arrested and charged with burglary and attempt charges; he believes he pled to the burglaries and was sentenced to 5 years in IDOC, of which he served half and was given supervisory release.

15.     Plaintiff has never belonged to a gang. While incarcerated at IDOC, he believed he was identified as a friend of the Latin King gang.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

### 9. Plaintiff's Response to Defendant Wayne Micek's First Set of Interrogatories.

1. Plaintiff states that Micek withheld from him, his attorney and Cook County States Attys information indicating that Ramos and not Kluppelberg set the fire at 4448 S. Hermitage, including the statement that Ramos made on 3/24/84 which was memorialized in Micek's report as:

2. "She did not remember setting any other fires other than the one in her apartment and said she may have set some after viewing her burned down building. Because of her intoxicated condition, she does not remember what happened after finding her building burned down."

3. Plaintiff does not contend that Defendant Vega [sic] physically beat him.

   Micek interviewed Ramos regarding 3 unsolved fires that occurred in the same vicinity during the same period. He knew the interview of Ramos was a high priority because one of the 3 fires (4448 S. Hermitage) caused 6 deaths. During this interview, Micek obtained credible information indicating that Ramos may have set the fire. Yet he took no action to ensure this information was disclosed to the prosecutors or to the defense.

4. Micek was aware of (and shared in) the belief in the Bomb and Arson Unit that the 2 fires might be connected and indeed he has testified that Ramos was a suspect in the Hermitage fire.

5. Because the fires appeared to have been connected and because of the exculpatory nature of Ramos' statements relating to the 4448 S. Hermitage fire, her statements to Micek should have been included in the permanent retention file for 4448 S. Hermitage. Yet he took no steps to ensure that her statements were made part of the police file. Nor did he ensure that any of his notes or General Progress Reports were disclosed to the prosecution or defense. Ramos' statements were never placed in the permanent retention file, instead, they were included in a street file, knowing that as a result, they would never be produced to Plaintiff, his attorney, or the prosecutor.

7. The practice of withholding exculpatory information by placing such information into "street files" was widespread during the investigation into the 4448 S. Hermitage and 4504 S. Marshfield fires and Micek's withholding of evidence in this case was consistent with that widespread practice.

9. Deposition testimony in this case has established that it was the practice of Bomb and Arson detectives, including Micek, to keep personal working files, or "street files." He withheld information and conspired to frame Plaintiff for the Hermitage fire.

10

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

10.  Plaintiff is not presently taking any prescriptions for a condition resulting from the incidence alleged in the Complaint.

12.  Plaintiff spent ~24 years in prison, for a crime he did not commit. He experienced extreme emotional suffering, trauma, and the loss of family relationships and friendships; he was confined to life inside a jail cell; he lost the ability to raise or know his children; he endured tremendous fear and distress from having to live in a prison for 2½ decades; he was stigmatized because of his wrongful conviction; his transition back to the outside world has been a struggle in innumerable ways, including but not limited to his inability to find work and fight the stigma that came from his felony murder conviction.

11

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 10. Plaintiff's Response to Defendant Edwin Olivieri's First Set of Interrogatories.

1.  Olivieri withheld from Plaintiff, his attorney and Cook County States Attys information indicating that Ramos and not Kluppelberg set the fire at 4448 S. Hermitage, including the statement that Ramos made on 3/24/84.

2.  In addition, Olivieri was the supervisor of Bomb and Arson and was required to take steps to ensure that the Micek report, or information about Ramos' statement, were filed into the investigative file.

3.  Plaintiff does not contend that Olivieri physically beat him.  Olivieri was aware of exculpatory information and aware that it was not disclosed to Plaintiff, his attorney or the prosecutor.  Nonetheless, Olivieri took no action to ensure that this information was disclosed.

7.  Olivieri withheld information and conspired to frame Plaintiff for the Hermitage fire.

9.  Plaintiff injured his R hand in the late 1970s which required several operations and his pinky had to be removed.  In the mid-1980s, he fractured his ankle.  He also has had injuries that required stitches and normal childhood bumps and bruises.

12.  Plaintiff attempted to take his life in 10/89.

13.  Plaintiff has not received mental health treatment although he would like to do so in the future.

12

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 11. Plaintiff's Response to Defendant Lawrence Tuider's First Set of Interrogatories.

1.     Tuider withheld from Plaintiff, his attorney and Cook County States Attys information indicating that Ramos and not Kluppelberg set the fire at 4448 S. Hermitage, including the statement that Ramos made on 3/24/84.

3.     Plaintiff does not contend that Tuider physically beat him. Tuider learned that Ramos may have set the fire at 4448 S. Hermitage. Yet he took no action to ensure that this information was disclosed to prosecutors or the defense.

4.     Tuider was a detective in Area 3. He participated in the investigation of the fires at 4448 S. Hermitage and 4504 S. Marshfield. He learned that Ramos gave statements to the police and that she implicated herself in the Hermitage fire. He was aware of (and shared in) the belief in Area 3 that the two fires might be connected. Because the fires appeared to have been connected, and because of the obvious exculpatory nature of Ramos' statements relating to the 4448 S. Hermitage fire, her statements should have been included in the permanent retention file. Yet Tuider took no steps to ensure that her statements were made part of the police file.

5.     Nor did he ensure that any of his notes or General Progress Reports documenting his frequent communications with the Bomb and Arson unit were disclosed to the prosecution or defense. Ramos' statements were never placed in the permanent retention file; instead, they were included in a street file or the equivalent knowing that as a result, they would never be produced to Plaintiff, his attorney or the prosecutor.

9.     Tuider withheld information and conspired to frame Plaintiff for the Hermitage fire.

10.     Based on the scientific evidence presently available, namely the analyses done by Det. Jenkins and Urbon of the Bomb and Arson Unit and by Dr. Russ Ogle, there was insufficient evidence at the scene of the fire from which to make a determination that it was caused by a deliberate act, as opposed to being accidental. Ramos confessed to one or more Defendants that she set a nearby fire just hours before the Hermitage fire and further confessed that she may have set the Hermitage fire.

13.     Plaintiff has never started a fire for an improper purpose and prior to 1/13/88 he had never been arrested or charged with arson or any other fire-related crime.

13

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 12. Plaintiff's Response to Defendant Victor Vega's First Set of Interrogatories.

1.      Vega withheld from Plaintiff, his attorney and Cook County State's Attys information indicating that Ramos and not Kluppelberg set the fire at 4448 S. Hermitage, including the statement that Ramos made on 3/24/84.

3.      Plaintiff does not contend that Vega physically beat him.  Vega was aware of the exculpatory information relating to Ramos and aware that it was not disclosed to Plaintiff, his attorney or the prosecutor.  Nonetheless, he took no action to ensure that this information was disclosed.

4.      Vega was a detective in the Bomb and Arson unit in 1984.  He participated in the investigation of fires at 4448 S. Hermitage and 4504 S. Marshfield.  As a result he was aware of (and shared in) the belief that the two fires might be connected.  Because the fires appeared to have been connected, and because of the exculpatory nature of Ramos' statements relating to the 4448 S. Hermitage fire, her statement to Vega, and subsequent statement to Micek, should have been included in the permanent retention file.  Those statements were never placed in the permanent retention file, instead, were included in a street file or the equivalent knowing that they would never be produced to Plaintiff, his attorney or the prosecutor.

9.      Vega was aware that Plaintiff did not commit a crime as early as 3/84: the Bomb and Arson Unit determined that the cause and origin of the fire could not be determined, which he knew because he investigated the Hermitage fire; Ramos stated that she may have set the fire at 4448 S. Hermitage, which Vega knew because he interviewed her and because the Bomb and Arson Unit investigated her in connection with 3 fires that occurred in the same vicinity and time period as each other.

10.     Plaintiff believes he took a polygraph sometime in Jan. or Feb. 1998: to the best of his recollection, he was questioned about whether he provided narcotics to an inmate, and he believes he passed that investigation.  In connection with the 4448 S. Hermitage fire, Rolston and Schmitz asked him to submit to a polygraph and then revealed that it was in connection with the Hermitage fire, which happened nearly 4 years prior and which Plaintiff had no connection to; confused, Plaintiff asked for an attorney before they proceeded further.  Defendants responded by forcing Plaintiff into a separate room, where they physically beat and kicked him, causing him severe injuries.

11.     Finally, Plaintiff took a polygraph in 12/87 or 1/88 at work while employed as a security guard.  He does not believe he learned the results of that test.

On 10/7/89, Plaintiff was given court pass in jail which indicated he was being allowed to post bond.  His then wife Bonnie posted his bond and Plaintiff was released.  A few days

14

**Cavanaugh 030**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

later, he contacted the Cook County State's Attorney's office and agreed to turn himself in to the Sheriff's authorities. He was returned to CCJ. He does not believe that he was ever charged with any crime relating to his release from jail.

## 13. Plaintiff's Supplemental Response to Defendant William Kelly's First Set of Interrogatories.

1.   Employment from 5 years prior to 3/84 to the present: paid work for AAA Board-Up for a few months (dates unknown); during incarceration for burglary, working in the gym and kitchen; worked at McDonald's (dates unknown);

2.   worked for Bonnie Kluppelberg's father's remodeling and construction business (dates unknown). Worked in IDOC at the following positions: in Menard, doing maintenance, at Lifers Inc. where he sold snacks, at the law library; at Joliet, floor maintenance, data entry, mattress manufacturing, cleaning gallery; at Stateville, cell house help and commissary and the print shop. Following release, worked at Metal Matic ~4/13-7/13 performing work relating to the manufacturer of steel tubes. He then began working at Senior Lifestyle Corp. in 7/13 where he is still employed as a maintenance coordinator.

15

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

14. **Plaintiff's Supplemental Response to Defendant Oliveri's First Set of Interrogatories.**

1.   Treatment during incarceration by any health care professional or facility:

2.   Plaintiff refers Defendants to records from Cook County, Cermak and IDOC. In 10/89 he was admitted to a hospital in Macon, GA.

   Treatment since release from custody by any health care professional or facility:

3.   Plaintiff has had stitches in his forehead and 2 surgeries: 5/27/14 for carpal tunnel release of the L hand and 7/29/14 for carpal tunnel release of the R hand. In 9/14 Plaintiff had MCL surgery on L knee. Since release, Plaintiff has seen the following doctors: Dr. Joseph Schwartz; Dr. James Simantirakis; Dr. Scott Andrews.

15. **Plaintiff's Supplemental Response to Defendant Lawrence Tuider's First Set of Interrogatories.**

2.   Plaintiff has been contacted by numerous news agencies and publications relating to his wrongful conviction and subsequent exoneration. He has given interviews to the Chicago Tribune, Chicago Public Radio, ABC News, CBS News, and Fox 32 and possibly other media organizations. He gave several interviews to Allison Flowers of Chicago Public Radio, which were aired in a program entitled "Exoneree Diaries," available at www.wbez.org/series/exoneree-diaries. Plaintiff gave an interview to WBEZ's Morning Shift on 6/20/14 available at soundcloud.com/morningshiftwbez/exoneree-diaries-after.

16

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 16. Letters to Sarah Brobst.

1.    11/11/99. I am at a loss for words. I am pleased you decided to contact me, just sorry it took so many years. I'm sure Samantha has told you where I am. I don't know what your mom has told you about me. I do know I must have hurt her even though that was never what I intended.

3.    I met your mother in 1984 and we were together for a short time. I got married to Samantha's mother when I was 17. We stayed together from 7/82-1/84. We spent time together at a house rented by your brother's mother and her boyfriend. I made the mistake of sleeping with both of them [your mother and your brother's mother]. As I grew older I came to know how wrong I was to do that. I'm not sure how your mother found out about me and your brother's mother but it did not end well. I thought your brother's mother was the woman I was to spend life with. I was again wrong, there was so much I didn't know about her. Back then I had this bad problem with going shopping in stores after hours if you know what I mean. I was arrested in 8/84. I was given 5 years. From the time me and your mother split until 6/85 I had not heard from her and did not know she was carrying you. In 6/85 your brother's mother told me about your mother having a baby. I didn't believe her when she said you were mine.

5.    I was wrong about you being my daughter and for that I am sorry. I got out of jail in 5/86 and met my present wife in 8/86. I was trying to do right in life but my past came up. On 1/12/88 I was arrested for arson and murder. These crimes were said to have happened on 3/24/84. The guy who was the boyfriend of your brother's mother was arrested in 11/87 and was facing a lot of time so he said, "if you let me go I will get you a conviction where 6 people were killed." They gave him the deal and arrested me and he came to court and said he saw me go into the building that burned on 3/24/84 but that he did not see me do anything but go in and out 3 times. The judge found me guilty on his statement and gave me life and I have set since then for something I did not do. I admit I was into a lot of wrong things back then but I never went into peoples' homes, only into stores. I did a lot of those and that's why I am here now because when I got caught in 1984 the police were very upset that they could prove only 2 crimes, so when I only got 5 years and was out in 18 months they set out to put me away anyway they could and they did it with the help of a guy who was out to get even with me. I have faith in God that he will not let me stay here much longer for something I did not do.

7.    I have never smoked, drank or do drugs.

8.    I am hoping that after you read this you still want me in your life.

9.    I know you have done without me for 15 years but I am your father and really want to get to know you.

17

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

12.  11/30/99. You have no idea how great it was to receive your letter and card. Your photos and letter did bring me tears of joy and pain and even a bit of anger. The pain was the fact I had missed so much of your life to this point. I guess that was where the anger came from also. I got a visit from my wife. She really did not have much to say. I guess you could say we have a really weird marriage.

19.  12/22/99. I just wish I had not missed so much of your life but you seem to have grown into a fine young woman and for that I am so happy. I pray I will get to know everything about you and that we will be able to now have a very long life together as father and daughter even though I know that I cannot be the type of father I wish to be right now. I hope for this nightmare to end soon.

21.  12/31/99. I have asked Samantha if you by some chance had second thoughts about getting to know me more but she said you have just been busy. If I act funny at times it is only because I have lost so much time with you that I will never be able to replace.

22.  1/4/00. I received 2 letters from you today and they have really made my year so far. Thank you so much for the card. I send out cards this year to 12 people and only my two daughters thought enough of me to respond.

28.  1/14/00. About me getting out, if you were to ask the State they would tell you no but I honestly believe that when a man is not guilty of something that the truth will come out and I know that day will come for me. I just hope it is soon. In 8 days I will have finished my 12th year for something I did not do.

34.  1/24/00. I'm sorry I can't be the type of father I want to be from in here and I have missed so much of your life it gets to me at times. I feel so guilty for not being a part of your life sooner. It's something that will take a long time for me to forgive myself for. If you wanted to find out more about my case there is this homepage of the books which have the rulings in them, westgroup.com. You are looking for the Illinois Reporter, 628 N.E. 2d. 908 that will show you the appellate court ruling. I can answer any questions you have and maybe can explain what they did wrong and why I think that someday a higher court will overturn them.

39.  2/3/00. Not a day goes by that I am not thankful of the blessing of you finding me. In this place mail is life and your letters have meant so very much to me. When I get a letter from you the rest of my day is that much more livable.

40.  Letters are a link to the outside. That is very important if you want to stay sane. I know I don't seem sane at times but I am really better than most in this place.

41.  2/13/00. I am sorry I have not written you in the last 10 days. REDACTED
REDACTED

**Cavanaugh 034**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

50. 3/19/00. I may have a new job. I'm waiting to see if the paperwork will get approved. I am slowly going nuts sitting in the cell day in and day out.

55. 4/1/00. I have been married for 11 years and my wife although she does love me has not been the best of wives. When I first got locked up she would take James [Sarah's brother] a lot and then she got in trouble and got 8 years, did about 3, has been out for a little over 4 years now and has had James for the last 3. Before she got locked up she was living with this guy. Since she has got out she has been living with this new guy who is an asshole and racist and he thinks that she is true to him when in fact there are two other guys she sees from time to time as well as me when she can find the time, which is not all that often. The last time I saw your brother was before Christmas. When I ask my wife why James does not get along with Samantha and why he is unwilling to get to know you, he says that his sisters remind him of the fact that I am not around.

56. I want all 3 of you to get along, family means so very much to me. As long as I'm in here and he is more loyal to my wife than me, I don't know if I will get through to him. Me and my wife are slipping more apart each day. I have not seen her since before Christmas and she is only an hour away. She has not written in over a year. I have not talked to her in over 2 months. I don't know what's going on with her but I can't really blame her. It has been a long time that I have been gone. She has always said that she would never divorce me. I think that's just so she does not have to make a commitment to anyone else. Why do I stay with her? Even a part-time wife is better than being totally alone.

57. The good news is that I am working again. I hate sitting in the cell all day. If everything goes right I'll be able to send you $20 to pay for a phone call so we can finally talk. I got the transcripts from my last hearing where they dismissed my last petition. I am appealing it but that takes so long. I just want this to be over. I have missed so much of my life and the lives of my children.

67. 6/20/00. I have not been writing mostly because ████████ REDACTED ████████ It always happens around this time of the year. I guess with the start of summer, Father's Day and my birthday, all hitting within a few weeks. But I'm a lot better now.

78. 8/1/00. Thank you so much for the birthday card. You're the only one who even took the time to send me a card. It was great to get to talk with you. I can understand why you found it a bit weird. It was a lot to take in with just 30 min. to talk.

85. 8/13/00. I know this paternity stuff has you upset right now. You are my daughter, you know that in your heart, and so do I. Me and your mom were together and for the time that would have been needed to conceive you the dates are right. I don't believe your mother was sleeping with anyone else when she was with me. I hope that the affidavit will settle any questions that the courts may have. I plan to petition the Cook County court to have my name added to your birth certificate as your father.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

98.  9/24/00. We are on lockdown, have been for a week. We are locked in our cells and don't come out for anything.

106.  10/24/00. I'm so very sorry for what you're going through. I wish I could be by your side to help you. There is nothing in this life that is worth you hurting yourself.

107.  I hate that I'm not there, I wish I could change that. Know I'm working every day to do just that. I am very worried about you.

111.  5/7/01. As to your mother seeking custody, if that's what you want, and it seems to be, I will support it completely.

117.  7/22/01. It is so very hot here, about 100° in the cells. I got an email from the attorney who was working on my behalf in the custody and he said your mom regained custody.

119.  8/19/01. How am I doing, I guess pretty good. My divorce became final on the 10th and Donna was very happy about that, as was I.

122.  8/19/01. Letter to Cathy. There is no blame in our past, we were both young and made a few bad choices. I have worked very hard at becoming the man that I am now and feel that I am a much better one. I feel that with God and my family on my side there is nothing that I cannot do.

123.  I am divorced again and hope that things will go smoothly in me and Donna getting remarried again. My life has went like this since I last saw you. In 1/85 I went down for 5 years, did 18 months in and 12 on work release. While there I met the woman I just divorced, we were married 13 years. In 1/88 they picked me up on this stuff. The night they picked me up they beat me for about 3-4 hours till I admitted to doing what they say I did. I was bleeding inside and pretty messed up. When I went to court in 11/88 the judge agreed that they had beaten me and threw out what I said that night, saying it would not be used. In 7/89 I went to trial and Duane said that he saw me enter and leave the fire building 4 times. After less than a day of trial the judge found me guilty and in 3/90 gave me life after declining to give me the death penalty. So here I have sat since waiting for some court to admit that they were wrong so that I could go home to my family.

125.  1/20/02. My life has really been a mess as of late and it is not all that much better right now. I have no idea what the upcoming week will hold but I know that with God on my side I will be okay.

126.  My new address is Joliet. The mail here is really slow, 3-4 weeks for a letter to get here from Chicago.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

DATE OF RECORD REVIEW:      August 13, 2015
C&A DICTATION NUMBER:      3073
BRIEF CITATION:      Kluppelberg v. Burge

134.      9/25/04. Right now I am quite depressed. I saw Donna yesterday and she informed me that you were not coming. It really hurt. I know I was not there as you grew up but from the day you found me I have been overjoyed to know you. I know I do not write as much as I should but it gets hard sometimes writing one-way letters. Your graduation card came back because you moved with no forwarding address. I can't do much other than write, I would love nothing more than to be the one to come to you but I am afraid that is still a few years off at least.

129.      11/16/04. This is yet another day I have missed in your life and for that I truly am sorry. Believe me when I tell you I am trying everything I can to get out because I truly do not belong here. I have had my hands full this last month or so. A story came out in a newspaper the way they have been investigating fires for the last 30 years has been wrong and a lot of people have been falsely accused so I am trying to find out more about that. They have finally appointed an appellate attorney for my next stage of appeals and Donna received a call from a law school that is interested in looking into my case.

131.      1/9/05. Forgive me if I go into down times. This is a bad time of the year for me. Holidays always held a special meeting in our household and being in here takes all that away and top that with the fact that on 1/12 I will have completed 17 years in this system for something I did not do. That really stinks and it gets to me at times so that is why I act down and depressed at times. I try to control it but I slip at times. So is it going to be a church wedding? I truly wish I could be there. I have missed every important moment in your life. I'm so very sorry for that.

138.      1/29/05. The reporter that was looking to help me has since backed out. He gave a lame reason of talking to my ex and her telling him that I confessed to her that I was guilty. What I cannot get him to understand is that she did not make up this story until I left her and me and Donna got back together. She used the story to turn your brother against me. I do know God is on my side and he will make all right in his time. The reporter also found Duane Glassco, he is the guy who started all this. He is doing 8-15 years for child molestation in MI and since he was not willing to talk with the reporter he said there was nothing else he could do. Enough about all that, I just get excited at times when I write about being here for something I have not done.

140.      I am taking mail-order courses in Bible studies, 17 different schools. Most are courses that give certificates but two are for AA degrees. I enjoy them and am learning a lot.

144.      7/16/05. I received the photos you sent. I cannot begin to say how lovely you look in them. I very much wish I could have been there. I cannot wait to meet your husband.

145.      My next brief is now put into the court and now it is a waiting game to see what the State says. I am very much ready for this to be over. I so want to come home.

21

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

279.  2/19/07.  I know what you mean about depression, I was fighting it a bit myself, with the holidays and being alone, and then starting another year in this place on 1/12. Then I get a letter from the appellate court telling me on 12/29 they turned me down.

280.  Since I received the notice so late I had but a few days to get the next stage filed.  I just found out that on 2/6 they turned me down again which truly hurt.  This continued getting turned down stuff is getting so old.  Now I have until 3/12 to file the next stage.  The attorney who was looking into getting an expert in fire investigations to testify for me has said they are holding off on that because Northwestern might be interested in helping me. It just gets to me at times that I'm here because of the word of a guy who would not know the truth if it was standing right next to him.  I do feel very bad that I was not there for your life and that is something I can never reverse and for that I am truly sorry.

284.  4/28/07.  I got my results back on the test they did in Feb. and they were not good.

285.  There was a story Anderson Cooper did on 4/9/07 about there is believed to be thousands of people in prison for arsons that were not even arson fires.

178.  5/26/07.  As to why things here have been stinky, mostly the deadlock, we first went on 4/23 and stayed on until 5/19.  We are back on again now.  I did hear from the attorney who is currently working on my case.  She is still hoping Northwestern will take on my case but has not heard anything yet.  She did send the transcript from the Anderson Cooper show from 4/9 where he did a segment on arson and how they have been getting it wrong for over 3 decades.  It is interesting because the same opinion laden evidence they used against me is the stuff they are now saying does not rise to the level of proving a fire was arson.

263.  6/10/07.  It is one of those days where I am talking about what comes to mind.  It happens at times when this place gets me down.  It is that time of year, summer is starting, I miss the lake and going to ball games, swimming, fishing, cooking out, going to Great America.  Turning another year older in this place, it gets a bit lonely and I get down at times but it will pass.  I tell myself that just waking each day is a huge blessing. I got a letter from an attorney who says that Northwestern still seems very interested but has not made up their mind yet.  I pray they do take me on, I so very much want to be released.  I am so very tired of being here for something I had nothing to do with.

303.  6/15/07.  The Illinois Supreme Court turned down my request for review.  They will not even look at my case.  So now after almost 20 years of fighting in state court, I am on my way to start all over again in federal court.  It gets very hard at times when you know you do not belong here and this stuff keeps happening.

261.  8/19/07.  I received a visit from two students from Northwestern law school.  They asked a lot of questions and I answered the best I could.  Now it is a waiting game to see if they

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

are going to take me on. They tried to talk with Duane but he would not talk with them. They agreed that the physical evidence points clearly to this not being an arson fire and on that point they are sure I am innocent. They said the thing that makes this tough is what Donna and Duane have said. My next option is filing a federal petition to have my conviction reversed. So if they do not take me out I have a lot of law to learn in a small amount of time, but I am innocent and will not give up. I know the day will come when a court somewhere will listen and I will be free.

262. We are still on lockdown with no end in sight, it has been 6 weeks.

187. 4/6/08. I have been working so hard the last few months on paperwork concerning getting out. A law firm in conjunction with a law school have decided to work on proving I am innocent and get me released. They went to visit Duane where he is doing time and he admitted that he did lie and saw nothing that night. But he still refuses to go on record and admit he lied. Duane says he is scared of me. I truly do not know why, what is done is done.

189. I just want him to tell the truth, admit he lied, so I can get released. He has nothing to fear from me. I have spent over 20 years in prison for something I did not do, why would I even consider the risk of coming back. The public defender who was assigned to deal with my motion for a new trial before I was sentenced in 3/90 uncovered an aerial photo of how the buildings stood before the fire. With this photo we found out Duane could not have seen the building he claims he saw me enter that night. With this photo the new attorneys were able to get Duane to admit he lied. If the state's attorney in fact had this photo before trial and showed it to Duane like he claims they did to aid in his testimony, and didn't turn that photo over to us prior to trial, it is a huge rule infraction and 99 times out of 100 mandates a trial at the very least. That is all I ever asked for because my trial attorney did nothing but sit there and put on no defense. Things are looking better than they ever have right now.

It is a bit scary as well to think I might be released soon. What scares me most is I have nowhere to go if I am released. So much has changed in the world, I am going to be so far behind it's a scary thought.

195. If everything works out within the next 12-18 months I may be free. It may take another year or two but they will have to pay me for the time I have done wrongly, and it will be quite a lot. I think the biggest thing I am looking forward to spending time with you.

234. 5/17/08. Affidavit of Duane Glassco. I testified in the case, People v. Kluppelberg. I know Kluppelberg as Jim. I never liked him. Some of the testimony I gave in his case was not true. In particular, I didn't see him go back and forth from Dawn's house to 4448 S. Hermitage on the night of the fire. I didn't see anything about how the fire got started. In addition, you couldn't see from the attic window of Dawn's house to the backyard or

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

back door of 4448 S. Hermitage because there was a building in the way. Also, Jim never said anything to me about having set the fire. He never told me to shut my mouth or else, and never said, "You know how I am when I feel like I'm losing someone, I do stupid things." I only gave the testimony that I did so I could get a deal on my cases. Before I gave my testimony, I met with police and prosecutors. They told me what I needed to say. At some point when I was meeting with the prosecutor, a man came in and had aerial photographs. They took me out of the office but I overheard them talking about how the aerial photograph showed that you couldn't see from Dawn's house to 4448 S. Hermitage. I did what I had to do to get out.

249. 5/31/08. They have filed my federal court papers and now we have to wait and see what happens. The attorney says Duane's statement will help me get back into court. It may not go far once I am there because he is in prison. But what he says is the truth of that night and there is some evidence to back up what he has now confessed to.

227. 7/29/09. The biggest news would have to be I am extremely close to getting out. I had written you in 12/07 telling you the great news about this law firm that had heard about my plight and was willing to help me. In 1/08 they started this project at a law school in Chicago to help innocent people gain their freedom. I was one of their first cases. I was under a deadline to file in 6/08 but a lot of the issues these attorneys uncovered were never presented before the state court so by rule they get first shot at making things right.

229. So I had to file a new petition in state court, now I am waiting for the state's attorney to answer my petition. Duane has finally come clean and admitted he lied in court. Finally I have someone working to help me that believes in me. Some of the other information they found is about 15 hours before the fire I am charged with, 5 houses burnt down a block away, and the day after the fire I am accused of they arrested a woman who confessed to the first fire and when asked about the fire I am accused of, she said she was so drunk that night she don't remember, she might have. The State never told me about this woman, this is a huge constitutional violation. It really looks like I am finally going to be free, hopefully it will not be much longer.

231. While conducting their investigation the attorneys talked with Bonnie, my ex, and Donna, your brother's mother, and they told them out of hate and spite that I had sent a letter to James telling him I was guilty. I assured the attorneys this never happened. They went to see him and he assured them there was no letter.

235. 8/4/09. Correspondence from The Exoneration Project. The court docketed your successive post-conviction petition. The State now has 30 days to decide whether to answer the petition or move to dismiss it. We anticipate that the State will move to dismiss.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

197.   8/12/09. I am including the letter a professor at Northwestern law school sent me when she sent my case to the law firm asking they take me on. It shows how many people are starting to believe that I am innocent. These people have done an amazing job uncovering evidence that shows I am innocent. It is a bit scary knowing that I will be out soon, and everything I once had is gone, everyone I knew was no longer part of my life, the world has changed so much. I have no idea what is going to happen when I am released, where am I going to live, how do I get a job?

226.   8/31/09. It means so much to read where you tell me that you will help me adjust to being free. I am going to need lots of help. So much has changed, I am going to be so lost. Finding a job is what worries me most. How do I explain a 20+ void in my work history? Where to live is a big question. You say I will have to look at who is left for me in Chicago, well, no one. The last time I heard from any of my sisters was when my mom passed in 2004 and then it was just to tell me. If they were to pop up all of a sudden now with me so close to getting out I would have great doubt about their motives. The only way I can get released is if they prove I am innocent and once that happens it means I spent 20+ years of my life in prison for a crime I did not commit which means they will have to pay me for that time. No amount of money will ever replace what I have lost.

146.   11/1/09. I am okay, still holding on and waiting. The State told the court on the last date that they need more time to look at the photos. This is just a crock because there are 6 or 8 photos in my petition. They just do not want to answer my petition. My new date is 12/14/09. I am not very happy at all. I wish I could be there for your birthday but God willing maybe I will not miss next year. It is really getting hard to continue to be locked up for something you did not do and have the State play these games with my life.

147.   I know I am jumping around a lot tonight, it has been like that the last few weeks since I got the letter telling me another 60 days has been added to my wait. I did not take the news well.

241.   12/4/09. I agree my trial attorney was not on the ball. I think he was made a better deal on another client and just sat back and allowed the State to convict an innocent man. I paid him to defend me, over $5000, to end up sentenced to natural life for a crime I had nothing to do with. The reason I am sending this stuff to you is because it's extremely important to me that you know I am an innocent man. My fear is that I might not make it out of here before my name is cleared. I have some pressing health concerns and although I may still have a while before I really enter the danger zone, the health care in this place really stinks.

244.   The only thing I have coming by law is they have to give me $190,000 for the wrongful conviction and that takes 12-18 months to receive. Anything above that would have to come from a civil suit. The only reason this law firm even took me on is they see a chance to make big money in the end.

**Cavanaugh 041**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

148.    12/25/09. The state finally filed a motion to dismiss my claim that I am innocent. The state really unloaded on me. I knew they would not just rollover but they hit hard. They did not really address my issues to any degree but rather said it is my fault for not raising these issues sooner and because I have not raised them until now I should be denied my freedom. How is that justice? What has me most confused is the last paragraph on p.15 that states the following: "Whether Glasco could see the petitioner in the yard at 4448 S. Hermitage was an issue at trial and on direct appeal. His current recantation does not provide any new evidence that was not known at the time of trial. A recantation will not be considered newly discovered evidence where it offers nothing new." Now if Duane saying he committed perjury at trial is not new I do not know what is. Are they admitting that the State knew at trial he was committing perjury? That is the way it reads. I am so confused right now and have been fighting for my freedom for 22 years. It has been a bad few days because I although I knew they were going to fight hard I never saw this coming. I never claimed to have been an angel in my past but I have only taken a life once and that was to protect my mother and family and I was tried and found innocent. Nothing I may have done in my past amounts to the 22 years I have spent in prison for a crime I did not commit. I am sorry to be such a downer today, this is all just getting to me. Another Christmas here, and alone to add to the pain. I am so tired of all this, the fighting, the food, everything I have missed in your life as well as Samantha's and James'. I lost my mother while in here. I am tired of fighting to receive medical treatment, tired of no one listening or caring an innocent man is imprisoned for a crime he had nothing to do with.

150.    I was told I was scheduled to see the medical director on 1/27/11 so we will see what he says. Hopefully he will send me to a cardiac doctor. To these people here it is all about money and trying to save it at every turn. I have been keeping a very good paper trail in case something should happen to me and I pass due to the neglect of this place. I have been sending all of this to the attorneys. I am not getting any younger and the health care in this place is very very poor. In Oct. a guy I have known for 8 years died of a heart attack. He went to the hospital about noon the day he died with chest pains. They told him it was just gas and sent him back to his cell and by 6 PM he was gone.

152.    Your [Christmas] tree looks very nice. I wish I could have been there, I am missing so much it really hurts at times. I pray I do not miss much more, and that this will be over soon.

199.    7/9/10. My attorney spoke with me and said that the State is stalling but she hopes by the end of the year I may get my hearing and this might all be over. My next court date is 7/12/10, that is for the judge to decide discovery. Then in about a month both sides will have to produce what the judge says. Then it will be up to the State for when they answer ready. My attorneys are ready now.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

200.   One other favor I need. One of the attorneys on my case started working with a law firm but wanted to continue working on my case. They said he could continue if I agreed to allow their firm to join my defense team, so they sent paperwork for me to sign. I have enclosed a copy in this letter and would like you to put it in a safe place for me. In case my copy gets lost, when they shake down things get lost at times.

201.   9/12/10. The judge in July denied my request for copies of police records and reports because the State objected saying they gave them to my first attorney in 1988. That was like 10+ attorneys ago. So my attorneys asked the judge to reconsider his ruling and when the State said that they were going to be using some of the reports, the judge reversed himself and granted my request. Now all discovery has to be in by 10/21/10. Then it's expected the State will file their answer to my petition in Nov. and God willing I will get my hearing in Dec. If everything was to go my way all this could be over by next July or Aug. This waiting is really starting to get hard, it's so hard to know that they have the evidence to prove I am innocent and the State will not act on it. To make things worse, I was told last week that Duane is out once again. MI granted him early release.

204.   10/1/10. We are on lockdown now and have been for about 2 weeks. What I hate most about it is not being able to shower every day and not working. The other night I could not believe I have spent almost half my life in here for something I had nothing to do with. I have lost so very much that can never be replaced.

205.   12/5/10. I should have written sooner but I have not felt all that great. I had court on 11/18/10. These people are trying all they can to avoid the truth from coming out. The case was continued until 1/5/10 [sic] and that date will be continued again for at least another month. The holdup has been police reports from the CPD and some reports from this place. This place finally complied with their end of things but the police are playing games. In spring 2008 the new attorneys who are helping me requested by way of the FOIA copies of all the police reports concerning my case. They were given about 60 pages but they were about 80% blacked out, so when the judge in April granted me the hearing he also ordered the police to provide clean copies. This last court date they produced a one page report dealing with a fender bender that occurred in 2000 that has nothing whatsoever to do with my case. The police were so bold that you can see where they changed the report number to match mine. So now we have to start all over again with the request process. That will add another 2 or 3 months to my wait for my hearing. I am losing what little mind I have left. What more do they want from me? I know they do not want to admit that they made an error, mostly not because they think they are right but rather they do not want to have to pay me for all this time I have done. Honestly at this point money means nothing to me. You and Samantha and James have grown up without me being there, no amount of money can ever bring back what has been lost. I have no spouse waiting for me, everything I once owned and worked for is long gone. Now my granddaughter is going up without knowing me. I just want this to be over and that I be allowed to save what time I have left in this world.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

206.    I have been told that I have an attorney call set up for Mon. I am guessing it's just a call for him to tell me to stay calm, that this will happen soon. My ability to stay calm is fading very fast. I am innocent, they know it, I know they know it, and I just want my hearing so the judge can say you're right and let me go. I want to enjoy what days I have left free and not in this hellhole.

207.    12/18/10. My next court date is 1/5/11. The police reports were not delivered on the last court date. They are using every game they can think of to stall me from having my hearing. The hearing the judge granted me in April is like a mini trial, where I get to call witnesses and present evidence to show not only am I innocent but had this evidence been presented at my first trial I would not have been convicted. If the judge agrees, then things should move very fast toward me getting out. The state will have 30 days to file an appeal. If they don't, then they will have 120-150 days to take to trial again.

208.    At that point they will either have another trial or will just let me go. Either way, if the judge grants me the new trial I should be free by this summer. This waiting is getting so very hard. To know I am closer now than at any point in the past 23+ years is really starting to wear on the mind. The stress is getting to me a bit.

209.    3/18/11. As for court, the State is still not ready. They asked for and received a new date of 4/12/11. They claim they are shorthanded and low on funds and thus have not been able to fully investigate my claims. On 4/12 they claim they will file their answer and their witness list and set a date for the hearing the judge granted me almost a year ago. I did finally receive the police reports I had been waiting on. Nothing much new there but a few things my attorneys might be interested in.

210.    5/7/11. The last court date in April the State came in with another excuse. They have hired their own arson expert and wanted him to have time to look everything over and the new date is 5/24/11. I am so ready for all this to be over. I have lost so many years of my life to this madness. I pray this will be my last year, sadly only time will tell.

156.    7/9/11. It has been quite a while since I last heard from you. Or you could have written and it just never made it to me. I'm sure with the baby your days and nights are very busy. About 6 weeks ago I went for a stress test, felt like I was going to pass out. I am now waiting to see the cardiac doctor to see what the tests showed. My attorneys informed me that the State is still stalling and the judge is letting them do whatever they want. They have one excuse after another. My next date is 8/17/11 at which point they claim once again they will hand over all the paperwork we have been waiting for them to turn over since April of last year when the judge granted me my hearing.

157.    They think I will not get my hearing until Nov. What they do not understand is I have spent more than half my life in prison for a crime not only did I have nothing to do with but one that the State cannot even prove was a crime. My children have grown up

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

without me in their lives, something I can never make up for. Now my grandchildren are growing up not knowing me. Everything I once had is now gone, not to mention how lost I am going to be once released. Think about how much has changed in the past 20+ years but they do not care one bit. All they care about is keeping their conviction. No matter if I am innocent, they just want to win!

158.  9/8/11. I had court on 8/17/11 and my attorneys told me the following. When they got there hoping that the State would finally be ready to set a hearing date, they began by telling my attorneys that my case is very complex and that they have not been able to decide yet what they are going to do. The arson expert they hired has looked at everything put together by my team and even though he has not issued his report yet, he agrees there have been major changes in the past 20+ years in the way fires are investigated. Then they began to talk about what they say are the options they are looking at. The first being there going to file their answer to my Petition and fight the hearing the judge granted me in 4/10.

159.  Option #2 is where they concede the hearing because they know they are going to lose and the judge is going to grant me the new trial. Option #3 is the same but rather than take me back to trial they will just dismiss the case. My attorneys were full of caution because they say this could all be a stunt by the State to stall for more time. They don't have a good read as to what they are up to. So they go before the judge and before they talk about getting a new date, the State puts the whole conversation they had in the hall on the record. This really caught my attorneys offguard and they have no clue what is really planned by the State. I'm waiting for my next date of 9/22/11. All I know is I am getting so tired of waiting and waiting for others to decide what is going to happen with my life. I am innocent, they know I am, yet they still are playing these games with what I have left of my life.

160.  10/7/11. I did not ask for the move and did not know it was coming but am now in Menard. In Sept. the State told my attorneys nothing and just said they needed more time and my next date is 10/31/11. I just want something to happen. The evidence clearly shows that I am innocent and the State just does not care. The judge granted me a full hearing on my issues on 4/15/10 and here we are and I still have not had my hearing because the State is stalling.

162.  Thank you so much for the photo of ██████ granddaughter]. One of the things that hurts the most is that she is not going to have a clue as to who I am once I am free.

164.  There is a lot about this place that I will talk with you about but not now. I left here in 1998 to get away from a bunch of trouble but I am back now and this may not be the safest place for me. I am in protective custody while my status gets reviewed. My attorneys will have your contact information in case something goes wrong. The attorneys have instructions on what to do if the IDOC should be at fault. I may be going

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

a bit nuts locked in a cell all day, but I am safe at this point. The attorneys are working very hard to help me win my appeal for protection.

166.  12/25/11. I am so sad that once again I am not able to share in the holiday season with you and it hurts all that much more knowing this is another holiday season that is lost that I will never be able to get back. Life here has not been that great. I however keep waking each day and I do believe that God has a reason for allowing me to wake. I may not yet fully understand why I have had to live through this but I know there is some reason. I have to keep that faith that God would not have allowed me and my family to suffer the way everyone has because of me being here if not for some reason.

168.  The doctors ordered me to start medication to lower my triglycerides. I heard from my attorney about the court date. The State finally gave us their written answer. After a judge grants an evidence hearing as he did in my case on 4/15/10, the State must file an answer in 20 days. However, this was not done in my case and each time I asked to push the State my attorneys would tell me that they did not want to push the State because they would just give a standard answer not provide any information. I did as the attorneys said. Finally the state filed their answer: "The People enter their general denial of the allegations."

170.  That is it. Why they deny my claims or any other explanation, just that one line. I am quite livid right now. I think the attorneys knew I would be because they normally set up a call so we can talk about what happened in court but they just sent a letter. I wrote them and asked what this now means. I am looking at it two ways. Either the State has found nothing to challenge my claims, thus have nothing to write about and just cannot give in, or they think they have found something and don't want us to know what they found. So it was continued to 1/24/12. On that day the attorneys are going to exchange witness lists and then set a hearing date. The sad part is the court will only allow one or two days a month for such hearings, thus my hearing could take 2 or 3 months. But if nothing else goes wrong I should have a ruling by late May or June. God willing the judge will do what is right and vacate my conviction and order a new trial. I want so badly to use what time I have left not only to spend with family but also to do good in general.

174.  3/4/12. We are yet again on lockdown, it seems that is what this place is all about. I hated this place when I was here in the '90s and it has gotten nothing but worse since. I am in my 25th year for something I had nothing to do with. I follow the rules, stay out of trouble, but still can't work and am stuck in the cell day in day out. I heard from my attorney this week and he told me that yet again the State just walked in and told the judge they needed another 30 days with no reason why and the judge gave it to them with no trouble whatsoever, would not even let my attorney speak. My next date is 3/26/12. I continue to have faith and know the day is coming when God will touch the hearts of the judge and the State and I will be free.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 17. Certificates of Completion.

*This file contains ~120 certificates of completion of various Bible and other religious correspondence courses. The majority of the courses were completed in 2004 and 2005, with a few courses in 2001, 2006 and 2007.*

## 18. Cook County Divorce Records.

13.    6/9/87. In Re the Marriage of Donna M. Kluppelberg and James R. Kluppelberg. Judgment of Dissolution of Marriage.

14.    Parties were joined in marriage on 9/11/82. Defendant has been guilty of desertion. The following child was born of this marriage: Samantha, REDACTED Plaintiff shall be awarded sole custody of Samantha. Defendant shall have visitation.

15.    Defendant shall pay $61/month child support.

19.    5/30/12. Court order. It is ordered that the convictions and sentences are vacated. Inmate Kluppelberg currently at Menard is to be released from serving any remaining sentences under that indictment only after the case was dismissed by the State's motion.

6.    5/20/14. Motion to reduce or eliminate child support arrears. Pursuant to the Judgment of Dissolution of Marriage, James was to pay Donna $61/month child support. He paid through 1/88 at which time he was arrested and charged with arson and murder. In 1990 he was sentenced to life in prison without parole. In 5/09, the Exoneration Project filed a post-conviction petition on his behalf. On 5/30/12, prosecution moved to overturn his conviction, dismissed all charges against him and the Court ordered his immediate release.

7.    While incarcerated, James was unable to pay any support payments. Following his release, Donna never sought child support. Upon receipt of his Certificate of Innocence, James was to receive a statutory sum for his wrongful conviction. The State is holding his wrongful conviction monies for alleged past-due support owed to Donna. James seeks that this Court use its equity powers to terminate and/or reduce the child support arrears allegedly owed.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 19. Minister Certificate.

6405.    Universal Life Church certificate of ordination.

## 20. Will County Divorce Records.

23.    Undated. In Re the Marriage of James Kluppelberg and Bonnie Kluppelberg. Judgment of Dissolution of Marriage. The parties have been living apart for over 12 years and both agree that the marriage is irretrievably broken. There were no children conceived or adopted during this marriage. It is ordered that the marriage between the parties is hereby dissolved.

## 21. Education Records.

CCC6.    City Colleges of Chicago. Fall 1986. EMT – ambulance course. Grade = F.

507.    Family Radio School of the Bible. Four Bible courses taken Fall 2006, grade = A in all courses.

HHS5.    Harrison High School transcript. Attended 9/21/79-2/10/82; dropout. Grades are primarily F with a few D's.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 22. Employment Records.

BSCS4.  4/28/15.  Correspondence from Blue Sky Contractor Supply.  At no time has James Kluppelberg been an employee of this company.

1378.  Chicago Standard Decorating.  James was an employee 8/86-4/87 where he kept a very good work record.  After his full-time employment with us, he started his own construction company.  His business began in 4/87 and ran through 1/88.  He was an outstanding employee and very responsible for both our company and his own.

988-92.  Incident reports filed in 1987 by Kluppelberg while an employee of ELA Security.

MM01.  Metal-Matic Steel Tubing.  Kluppelberg was employed 6/10/13-7/15/13.

MM06.  7/15/13.  Separation notice.  Discharged.  Reason: unsatisfactory performance (Crane crashed.)

SLC90.  11/22/13.  Correspondence to Residents from Senior Suites.  Fox News will be visiting our community to do a feature on our new maintenance coordinator, James Kluppelberg.  As you may already know, he was wrongfully incarcerated for 25 years for a crime he was declared innocent of and released ~18 months ago.  Fox News is going to do "A day in the life of James" as he re-acclimates himself into society.

SLC121.  ████████████████████████████████████

SLC222.  7/2/14.  Email.  James' first day off was 5/27/14 ███████

SLC68.  10/14/14.  ████████████████████████████████

SLC77.  10/20/14.  Senior Lifestyle Corporation.  Termination form.  Last day worked: 5/27/14.  Termination date: 10/20/14.  *Form is not completed.*

SLC74.  10/20/14.  Correspondence from Kluppelberg.  It is with great regret that as of today's date I am resigning my position as maintenance coordinator at Senior Suites of Marquette Village.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

### 23. IDOC Education and Disciplinary Reports.

1147.  3/28/94.  Disciplinary report.  Drug or drug paraphernalia; unauthorized property. Kluppelberg asked officer to take 2 sodas and a bundle of markers to inmate Velez. Officer stripped open the markers and found in 2 of them a complete syringe with needle.

1143.  8/22/94. Adjustment committee summary.  7 homemade weapons were found in the cell. Inmate plea: guilty.  I've been here 4 ½ years, this is the first major ticket I've had.

1154.  4/19/95.  Incident report.  On routine shakedown officers found ~ 5 gallons of homemade intoxicant.

1139.  6/27/95.  Disciplinary report.  Unauthorized movement, violation of rules, disobeying a direct order, insolence, abusive privileges, forgery, damage, misuse of property. Observed Kluppelberg exiting visiting room.  He proceeded to remove his call pass ticket and began to scratch off the location of his return.  Told him he is not authorized to change an official call pass ticket.  He stated, "I'm a lifer, and I've got things to do."

1140.  He said, "You can give me a pass to go back, but I ain't going there.  They can find me if they want me."

1153.  9/23/95.  Incident report.  On shakedown found ~5 gallons of homemade liquid intoxicants, ~3' of plastic tubing, 1 small scale, 1 can of aerosol repellent, various plastic jugs and containers, 3 homemade or altered stingers.

1137.  12/7/95.  Disciplinary report.  Unauthorized movement.

1134.  7/7/96.  Disciplinary report.  Ofc. noted a large amount of water flooding the gallery. Ordered inmates Reitz and Kluppelberg to turn off the water, to which they complied.

1127.  5/21/97.  Disciplinary report.  Inmate observed wearing mirrored sunglasses on the yard.

1124.  1/13/98.  Disciplinary report.  Unauthorized movement, disobeying a direct order.  Given a direct order to grab your door and lock up.  Kluppelberg refused by missing his door.

1128.  2/18/99.  Adjustment committee summary.  Inmate admitted he failed to report to his data entry assignment.

1156-67.  7/14/05-5/30/12.  Cumulative Counseling Summary.  Documentation of counselor visits with Kluppelberg.  *There is no indication of any complaints related to his mental state except occasional expression of frustration with the progress of his case.*

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 24. Report of Proceedings, Illinois v. Kluppelberg, 6/22/84.

10491.    Examination of Estelle Kulikowski. As of 12/11/82 I was married to Joseph Kulikowski. He was 26 yo.

10492.    I last saw him at ~12 PM on that date.

10493.    He was going to a friend's to visit. The next day I received a call from Joe's brother. Joe was in the hospital in critical condition.

10494.    He was in the ICU in a coma on life support. He was in the hospital for 4 weeks. He never came out of the coma.

10495.    He died 1/9/83.

10496.    Examination of Chris Kolep.

10498.    I met Kluppelberg that day at the party.

10502.    Shortly before the party broke up I was upstairs. [Someone] came and told me that somebody was arguing and there might be a fight. I went downstairs. I saw Perez and Kulikowski.

10503.    They were exchanging words. Kluppelberg was standing in that area. I walked toward Kulikowski and Perez. Kulikowski hit me in the mouth.

10504.    As I was starting to get up, I seen Kluppelberg between the boards [sic]. Kluppelberg hit Kulikowski in the back of the head with what looked like a 2 x 4.

10505.    Kulikowski didn't have nothing in his hands. After he got hit with the board, he fell to the floor. He didn't move. Blood was coming out of the back of his head.

10519.    Examination of Alfred Perez.

10520.    I live with Dolores Perez. Her son is the defendant.

10521.    On 12/11/82 I had a party. At about 2:30 AM I told everybody they had to leave.

10522.    Kulikowski didn't want to leave. I told him he had to. He took a swing at me.

10523.    Then I ran upstairs. When I came back downstairs Kulikowski was laying on the floor.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

10524.   Kluppelberg was holding a board in his hands.

10530.   Kluppelberg doesn't drink. He was not drinking that night.

## 25. Report of Proceedings, Illinois v. Kluppelberg, 6/25/84.

10546.   Examination of Det. Duffin.

10547.   I was involved in an investigation of the beating of Kulikowski.

10548.   I interviewed Kluppelberg at Area 5 violent crimes.

10549.   At first he said that the victim was beaten up outside of the storefront, and then later explained that he had hit the defendant over the head with a board when the victim was choking his mother's husband Perez.

10550.   He said around 2:30 AM the party started getting a little out of hand with everybody a little intoxicated and they decided to end it at that time. He stated that Kulikowski was pretty intoxicated and started becoming belligerent and didn't want to leave. He stated that he and Perez forced Kulikowski out the door and he managed to come back in through a side door.

10551.   In the first conversation Kluppelberg said Kulikowski started choking Perez and that's when he hit him over the head.

10553.   I had a conversation on 1/10/83 with Kluppelberg. I told him the victim had died. I told him that he had told us that he hit the victim when he saw him choking Perez when, in fact, Perez had told us that he was upstairs at the time that the victim was hit over the head.

10554.   He changed his story then and stated that at the point he hit the victim with the board the victim was walking away from him and had turned his head toward him.

10560.   Examination of James Miles.

10561.   I was tending bar at the party.

10564.   I saw Kluppelberg hit Kulikowski in the back of the head.

10570.   I had about 16 cans of beer when I was observing this.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

10574.  I don't know what happened before Kulikowski got hit.

10578.  Statement by defense attorney. I would make a motion for a directed finding of not guilty as to all 4 counts, 2 counts alleging voluntary manslaughter, 2 counts alleging armed violence. I think through the State's case there has been established a self-defense defense.

10580.  The defendant is in his own home helping host a party but the party is over. The deceased is forcibly ejected. He then becomes violent.

10581.  He breaks in the side door and enters the premises. He makes an attack on one of the people who is assisting in the party, Chris, severe enough to knock him backwards over a radiator. He is threatening other members of the household at which time the defendant in defense of his own home and family takes the only object available, clearly not a weapon he had on him. He grabbed the first object that was handy, the board closing the door, and hit the decedent once. He wasn't trying to beat him to death. He wasn't trying to cause him great bodily harm. He was trying to stop the deceased from inflicting great bodily harm on everyone else.

10583.  I don't think the defendant intended to cause death. He struck him once just to stop him.

10587.  Direct examination of Kluppelberg. I'm 19 yo.

10588.  On the evening a question I didn't have anything to drink. I was helping host the party.

10589.  Between 2 and 2:30 AM it was announced by my mother that the party was over.

10590.  Kulikowski was reluctant to leave. My mother told him he had to leave. He wouldn't. Me and Perez put him out the side door. We locked the door.

10591.  He forced entry.

10592.  Chris told him the party was over. He punched Chris. He went toward Perez. Perez ran upstairs. My mother was yelling at him to get out. He started to turn toward my mother and I thought he was going to attack her.

10593.  I panicked, grabbed the board, and struck him one time.

10594.  I didn't intend to kill him. I was trying just to stop him. I was afraid for my safety as well.

10605.  When I hit him he was starting to turn toward me. He didn't say anything. He didn't have anything in his hands.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

10606.   Regarding that he didn't make any threats toward my mother, I wasn't sure what he was going to do after hitting Chris.

10608.   The first time I talked to the police I told them that Kulikowski was choking Perez. I lied because I was scared.

10616.   The Court: There will be finding of not guilty for voluntary manslaughter charges as well as the armed violence charges. Kluppelberg will be acquitted.

## 26.  Various Criminal Records.

1689.   3/15/84. Wanted: Kluppelberg. Weapon: handgun. Date: 1/12/84. Victim picked up a hitchhiker and offender displayed a handgun, demanded victim's money. Offender forced victim out of vehicle. Victim positively identified photo of Kluppelberg as the offender.

9679.   Defendant: Kluppelberg. Date sentenced: 1/14/85. 5 years IDOC. Charge: attempt burglary.

9680.   Statement of facts. On 8/9/84 after the Color Tile Store closed, the rear doors were pried open and entry was made. Offenders fled without taking anything. On 8/30/84 following his arrest, defendant confessed to having broken into the store in the mistaken belief that it was a RadioShack. Defendant and co-offenders were arrested after having committed at least 5 burglaries. Defendant should not be considered for early release even though he has no prior record.

9681.   CPD arrest record.

12/12/82:   Aggravated battery.   1/9/83: Voluntary manslaughter.   9/19/83: Theft. 8/30/84: Burglary (2 counts); Attempt burglary (2 counts).

9684.   8/30/84. Arrest report. Charge: Burglary (2 counts); 2 counts). Kluppelberg arrested for burglary at the Currency Exchange.

9685-93. 8/31/84. Listing of property stolen from RadioShack, seized from Kluppelberg and an associate.

9699-708.8/31/84.   Complaints filed for burglaries at RadioShack, Currency Exchange, Classic Sounds & Video.

9752.   1/14/85. Kluppelberg sentenced to a term of 5 years on the charge of Attempt Burglary.

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 13, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

1380.   10/9/89. Unlawful possession of ammunition. Bonnie Fitzpatrick was stopped driving her vehicle. She had been the subject of a "flash message," the alleged victim of a kidnapping. She informed officers that "it is all a mistake," she was not a kidnapping victim and the passenger with her is her husband James Kluppelberg who had just been released from jail.

1381.   Subjects gave evasive and inconsistent answers to our queries as to their destination and why Bonnie's family would report her being kidnapped. Search of her vehicle produced a Cook County Sheriff's (corrections) Star and 18 rounds of .357 caliber ammo. Both subjects were charged with unlawful possession of ammunition and failure to possess Illinois firearm card.

# Cavanaugh & Associates

# APPENDIX I

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 21, 2015 |
| REVIEWER: | Aimée St. Pierre, M.D. |
| C&A DICTATION NUMBER: | 3073 |
| C&A FILE NAME: | James Kluppelberg v. Jon Burge, et al. |
| BRIEF CITATION: | Kluppelberg v. Burge |
| COURT NUMBER: | 13 CV 3693 |
| ATTORNEY NAME: | Elizabeth A. Ekl/Jaclyn L. McAndrew |
| ATTORNEY TELEPHONE: | 630.735.3370/630.735.3317 |

## TABLE OF CONTENTS

1. Deposition of Thomas Snooks, 5/13/15 .......................................................................2
2. Sentry Insurance Records...........................................................................................6
3. Medical Records, Northwest Regional Surgery Center ...............................................6
4. Medical Records, Bone & Joint Specialists ................................................................6
5. Medical Records, Cermak Health Services.................................................................7
6. Medical Records, Crown Point Health Care ...............................................................9
7. Medical Records, James Simantirakis, D.O., Franciscan Point ................................10
8. Medical Records, Holy Cross Hospital .....................................................................11
9. Medical Records, IDOC............................................................................................12
10. Juvenile Protective Association Records ..................................................................17
11. Nexus Medical Consulting Records ..........................................................................19
12. Additional Medical Records, Northwest Regional Surgery Center ...........................19
13. Medical Records, Pulmonary Specialists of Northwest Indiana ...............................19
14. Medical Records, University of Illinois Hospital.......................................................20
15. Speaking Engagements and Donations ....................................................................21
16. Trial Transcripts and Other Reports of Proceedings.................................................24
    Report of Proceedings, People v. Kluppelberg, 7/13/89 ........................................24
    Report of Proceedings, People v. Kluppelberg, 7/14/89 ........................................26
    Motion for Cause for Substitution of Judges, 12/11/89 ..........................................31
    Continuance of Motion for Cause for Substitution of Judges, 12/11/89...................34
    Report of Proceedings, Sentencing Hearing, 3/21/90 ...........................................34
    Death Penalty Hearing in Aggravation and Mitigation, 3/22/90 .............................35
    Report of Proceedings, Petition for Certificate of Innocence, 7/9/13 .....................36
    Continued Report of Proceedings, Petition for Certificate of Innocence, 7/29/13.........38
    Continued Report of Proceedings, Petition for Certificate of Innocence, 8/5/13.........38
    Report of Proceedings, Motion to Suppress Confession, 11/9/88....................................38
    Continued Report of Proceedings, Motion to Suppress Confession, 11/15/88 ...............43

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 21, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

## 1. Deposition of Thomas Snooks, 5/13/15.

12.  1987-90 I was Director of Operations and home monitoring for CCDOC.

13.  I first heard about Kluppelberg when I received a call that we had an escape, a bad dude because of hideous crimes, and we had to find him.

16.  Exhibit 1 is an article from the Chicago Tribune, 10/12/89 that says, "Convicted killer freed by mistake." *Reading from the article:* "Kluppelberg, who had been held without bond in CCJ since his arrest in 1/98 was released Sat."

18.  I was called regarding Kluppelberg's escape on 10/5 or 10/6. I told staff to go to the inmate's cell and search for mail he would be sending out for addresses.

19.  He was conversing with a 14-yo female from the Canaryville area. I told my team to meet me at that address.

20.  I learned that she had some love for Kluppelberg and I think she was in the process of running away with him. Her bags were packed, and the mother and father knew that this was a friend of hers.

21.  She agreed that she had been in contact with him but would never admit she was leaving with him.

22.  Kluppelberg's mother bonded him out of jail.

23.  She was contacted by him and told that she can bond him out.

31.  Ofc. Velasquez lowered Kluppelberg's bond.

33.  He went from no bond to a D bond.

34.  Kluppelberg was talking to a lot of women. Bonnie Fitzpatrick was the contact with Velasquez. She was at Kluppelberg's mother's house when I went there.

35.  I informed Bonnie that I had reason to believe she aided and abetted in an escape. Kluppelberg's mother said, It was not an escape. I just paid the bond. I said, The bond was done fraudulently.

36.  It was not lowered by the judge. It was lowered by a conspiracy.

40.  In the 2nd visit with Kluppelberg's mother I told Bonnie I knew she was involved.

2

**Cavanaugh 057**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 21, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

43.    The computer sign-on showed that Velasquez signed on to lower Kluppelberg's bond.

48.    I told Bonnie to tell Kluppelberg to turn himself in.

49.    About 2 hours after my conversation with her, Kluppelberg called me.

51.    I told him Velasquez will go to jail.

55.    Bonnie told me that he was in Macon, GA.

56.    I had 5 or 6 phone conversations with Kluppelberg. The only thing he seemed to respect was his mother and some of his family and he was afraid they were going to jail.

59.    Kluppelberg called me and said, I'm in GA. He said, I want to get married today, consummate my marriage tonight, and I'll turn myself in tomorrow.

63.    Bonnie told me the address of the hotel where he was staying.

68.    He was taken into custody by the Macon County police.

73.    He told me his escape had to do with money and cocaine. He befriended Velasquez and Velasquez lowered his bond. He told me he never wanted to spend the rest of his life in jail for something stupid he did. I understood that he didn't want to spend the rest of his life in jail for something that he was accused of.

74.    I understood that to refer to the murders for the fire deaths.

75.    I believe he didn't want to serve time in jail for the rest of his life for the murders that he allegedly committed.

77.    He really got mad [at me]. It's almost like I doublecrossed him, he felt. He was saying, if you were in my position, you would have did the same thing. I asked you for the night to consummate my marriage.

78.    He said, If I can ever repay the favor, I'll have you fucked up. I believe his exact words were, "If I had the opportunity to kill you and your family, I would, I hope you know that." Regarding if I believed the threat to be real, he was in jail on 6 murders. Absolutely.

80.    When he got back to Chicago, we interviewed him. *Reference is made to Exhibit 3.*

81.    This is Kluppelberg's statement in regard to the Velasquez case.

3

**Cavanaugh 058**

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

---

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 21, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

---

85.  He told many lies.

89.  It isn't true that he turned himself in.

90.  Bonnie turned him in.

100.  Regarding whether Bonnie knew Velasquez prior to Kluppelberg's incarceration, Velasquez was dating one of her friends.

124.  Kluppelberg didn't ever tell me he had confessed to the arson for which he was convicted.

125.  He didn't tell me that he was innocent of the crimes for which he was convicted. He didn't ever allege to me that he had been mistreated by police officers or framed for the murders and arsons.

126.  He never told me he had been abused by Macon police. When I saw him in the hospital in Macon, he said he got injuries on his arms because he tried to hurt himself.

127.  He didn't tell me any Macon officers had injured him. I didn't ever become aware of anyone in the Cook County Sheriff's Dept who had gone to pick up Kluppelberg threatening him. I didn't ever learn of anyone telling him he might not get back to Chicago alive after his escape because it would save the state a lot of money since he had been convicted of a crime for which he was death eligible anyway.

154.  Kluppelberg said he did not want to go to jail for something stupid he had done and spend the rest of his life in jail.

188.  When Kluppelberg said, "I don't want to go back to jail for something stupid I did," I didn't ask him what he meant. I believe he was referring to the murder.


Exhibit 1.  10/12/89. Chicago Tribune article, Convicted killer freed by mistake.

1.  A 24-yo man who was awaiting sentencing after being convicted of 6 murders and arson was somehow released from CCJ last weekend and made his way to Macon, GA before being rearrested Wed. Spokesman for the Cook County Sheriff's Dept said investigators are treating the release "as negligence on the part of the bonding office." Kluppelberg was released after his mother posted 10% of a $25,000 bond. He was convicted of setting a 1984 fire that killed a mother and her 5 children and was scheduled to appear for a hearing last Fri. to decide if he should receive the death penalty, but the hearing was postponed. After his release Sat., he also was arrested by CPD on a minor weapons charge but was later released after he posted a $100 bond. Kluppelberg was found guilty mostly on the testimony of Duane Glassco, a 3-time convicted burglar who lived with

4

# Cavanaugh & Associates

300 South Ashland Avenue, Suite 207
Chicago, Illinois 60607

| | |
|---|---|
| DATE OF RECORD REVIEW: | August 21, 2015 |
| C&A DICTATION NUMBER: | 3073 |
| BRIEF CITATION: | Kluppelberg v. Burge |

Kluppelberg near the fire scene. He testified he saw Kluppelberg going in and out of the building on Hermitage Ave. where the blaze began and that Kluppelberg later told him he started the blaze.

Exhibit 2. Oct. 1989 calendar.

Exhibit 3. 10/17/89. Kluppelberg statement taken by Investigator Flynn of IAD.

5416.    I was released on bond, $25,000. I've been convicted on 18 counts of murder, a count of aggravated arson and 7 counts of attempted murder. I have a case pending in criminal court, auto arson. I turned myself in through Dir. Snooks and was picked up by the Macon County police. My mother posted bond.

5417.    I contacted her on 10/6 and asked her to see if I had bond. I thought I did because when I went to court on the 6th my court pass had only one charge, arson. Regarding that the no bond conviction was not part of the court record when I appeared in court on 10/6, I assume that it was missing due to the agreement I had with officer Velasquez. I met him in the receiving area of DOC in 2/88. He's a correctional officer. I contacted him on several occasions and explained that I wanted to get out of jail to get evidence for my defense. He said he could help by providing documents that would indicate my major charges were dropped. I would contact him through a 3-way call that my sister would make, usually to the Receiving pay phone. I would sometimes contact him at his residence. Regarding why he would provide documents, I became aware he had a cocaine problem. I asked him if in exchange for cocaine he would be willing to help me. I had my wife, Bonnie, supply him with cocaine.

5418.    My wife, Velasquez, and I talked through a 3-way conversation in late Sept. I asked if he was still going to help me out and he said that he was, he would put in the paperwork and I would be released. My wife supplied him with cocaine on 5 or 6 occasions, maybe $3000-4000 worth. My wife and I didn't know Velasquez prior to my incarceration.

5419.    When I was arrested by the CPD, a DOC star was taken from me. Velasquez told me in Aug. he could get me a correctional ID if I chose not to return to court. He hid it under the seat of my wife's van. I don't know of any other parties that participated in my release.

Exhibit 4. Miranda rights signed by Kluppelberg 10/17/89.

Exhibit 5. Petition for Dissolution of Marriage filed by Kluppelberg 2/22/01 regarding his marriage to Bonnie.

5

**Cavanaugh 060**