IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES KLUPPELBERG,  )<br>  )<br>       Plaintiff,  )<br>  )<br>  )<br>  )<br>JON BURGE, *et al.*,  )<br>  )<br>       Defendants.  ) | Case No.  13 cv 03963<br><br>Judge Joan H. Lefkow<br>Magistrate Judge Maria Valdez |

**DEFENDANTS BURGE AND ALLETTO'S L.R. 56.1 STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Jon Burge and William Alletto, by their attorneys, The Sotos Law Firm, P.C., submit this Local Rule 56. 1 Statement of Undisputed Facts in Support of Motion for Summary Judgment and state:[1]

**JURISDICTION AND VENUE**

1.     This matter is brought pursuant to 42 U.S.C. § 1983 and Illinois law. This Court has federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

2.     Venue is proper under 28 U.S.C. § 1391(b) because the acts giving rise to Plaintiff's claims occurred in this judicial district.

**THE PARTIES**

**Plaintiff**

3.     Plaintiff, James Kluppelberg, was arrested, prosecuted, and convicted in 1989 of murder and arson in connection with the 1984 fire-related deaths of a mother and her five

---

[1] The facts set forth herein are accepted as true for purposes of summary judgment only.

children. In May 2012, these convictions and Plaintiff's sentence were vacated, and he was released from prison. (Dkt. 148, 2d Am. Compl., ¶¶ 15, 20, 36, 37, 42; Ex. 1, Order (May 30, 2012).

**Defendants**

4. Lawrence Tuider was a detective in the Chicago Police Department's ("CPD") Area Three Violent Crimes Unit in March 1984 and January 1988. (Ex. 2, Tuider Dep. Tr. (Apr. 18, 2014), pp. 11:19–13:21, 35:5-8.)

5. Leonard Rolston was a detective in the Bomb and Arson ("B&A") Unit in January 1988. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 36.)

6. William Kelly was a detective in the Area Three Violent Crimes Unit in January of 1988. (Ex. 4, Kelly Employment Form, Ex. 5, CPD Reports, p. City-Klup_00574 (Kelly Rpt.)

7. In 1984, Jon Burge was a lieutenant of CPD's Area Two Violent Crimes Unit. He was promoted to Commander of B&A on August 11, 1986, and was promoted to Commander of Area Three Violent Crimes on January 27, 1988. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 113; Group Ex. 6, Employment Transfer History and Personnel Action Request.)

8. On February 1, 1984, William Alletto was appointed Director of the Chicago Fire Department's ("CFD") Office of Fire Investigations ("OFI"), which became operational on April 1, 1984. He became Deputy Fire Commissioner on May 15, 1989. (Ex. 7, Alletto Dep. Tr. (May 13, 2014), pp. 11:11-21, 39:6–10, 42:2–8.)

## THE UNDERLYING MATERIAL FACTS

**The Hermitage Fire and 1984 Investigation**

9. At approximately 4:08 a.m. on March 24, 1984, a fire ignited at 4448 South Hermitage Avenue in Chicago, Illinois ("the Hermitage Fire"), killing Elva Lupercio and her five children. (Dkt. 148, 2d Am. Compl., ¶ 15; Ex. 5, Reports, City-Klup_000539-556.)

10. At the time of the fire, the B&A Unit was tasked with making cause and origin determinations for all of Chicago. (Dkt. 148, 2d Am. Compl., ¶ 27; Ex. 8, Urbon Dep. Tr. (Jul. 2, 2014), pp. 8:19-23.)

11. B&A Detectives George Jenkins and Kenneth Urbon (both deceased) examined the Hermitage Fire but were unable to determine its cause and origin due to "extensive" damage to the structure. They wrote reports documenting their findings. ("Jenkins Report" and "Urbon Report," respectively). (Dkt. 148, 2d Am. Compl., ¶ 17; Ex. 5, CPD Report, pp. City-Klup_000548-52 (Jenkins Report) and City-Klup_00553-56 (Urbon Rpt.); Ex. 9, Jenkins Dep. Tr. (May 12, 2014), pp. 27:10–28:14; Ex. 8, Urbon Dep. Tr. (July 2, 2014), pp. 8:16-18, 120:16–121:18.)

12. Defendant Alletto and OFI Assistant Director Francis Patrick Burns (now deceased) went to the scene of the Hermitage Fire to conduct a training exercise with newly appointed fire investigators at approximately 8:00 a.m. on March 24, 1984. Based on his investigation, Burns determined the Hermitage Fire was intentionally set in the rear of the first floor of 4448 South Hermitage ("the Hermitage building") (Ex. 10, Criminal Trial Tr. (July 13, 1989), pp. 34, 40:9–41:24, 62:19–63:17; Ex. 7, Alletto Dep. Tr. (May 13, 2014), pp. 164:24–165:24; 169:22-170:1.)

3

13. On or about March 25, 1984, an anonymous "WE-TIP" was received by CPD, stating that Plaintiff "was seen going in and out of the house all night long before the fire started" and was "seen cutting the cords to the street lights." (Ex. 11, WE-TIP (Mar. 25, 1984); Ex. 12, O'Donnell Dep. Tr. (July 15, 2014), p. 12:6-9.)

14. B&A Detective Edward O'Donnell was assigned to investigate the "WE-TIP" and, in turn, interviewed Plaintiff about the Hermitage Fire on or about April 4, 1984. (Ex. 12, O'Donnell Dep. Tr. (July 15, 2014), pp. 12:6-9; 29:19-31:15, 50:1- 54:12, 59:5-8.)

15. Plaintiff admitted to O'Donnell that on March 23–24, 1984, he was staying at his girlfriend, Dawn Gramont's residence, which was located at 1748 West 45th Street in Chicago, Illinois. (Ex. 12, O'Donnell Dep. Tr. (July 15, 2014), pp. 71:9-15; 93:13-18; Ex. 13, Criminal Trial Tr., Gramont Test. (Jul. 14, 1989), pp. 430-437; Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 29.)

16. Gramont's residence was located a few houses away from the Hermitage Fire scene. (Dkt. 397, p. 1.)

17. Plaintiff further admitted to O'Donnell that while staying at Gramont's residence, he disconnected the street light shining into her home, but denied any knowledge or information about the Hermitage Fire. Plaintiff was released without charging. (Ex. 12, O'Donnell Dep. Tr. (Jul. 15, 2014), pp. 29:19–31:15, 93:13-18, 95:1-96:13; Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 126:10–128:19; Ex. 5, CPD Reports, pp. City-Klup_000557-59; Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 30.)

18. Defendant Tuider investigated the Hermitage Fire in 1984 on behalf of the Area 3 Violent Crimes Unit. Violent Crimes was responsible for the investigation of, amongst other serious crimes, homicides. (Ex. 2, Tuider Dep. Tr. (Apr. 18, 2014), pp. 12:12-13:20; 50:1-11.)

19. On or about April 14, 1984, Tuider wrote a report documenting his findings and recommending the case be closed as "apparent accidental fire deaths". (Ex. 5, CPD Reports, pp. City_Klup_000562-64 (Tuider Rpt.); Ex. 2, Tuider Dep. Tr. (Apr. 18, 2014), pp. 149:22–150:15; Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 31.)

20. Defendant Burge did not investigate or supervise the detectives investigating the Hermitage Fire in 1984. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶¶ 108, 109, 113, 114.)

**The Marshfield Fire Investigation**

21. On March 23, 1984, approximately 15 hours before the Hermitage Fire, a fire broke out at an apartment located at 4504 South Marshfield in Chicago and occupied by Isabel Ramos. ("the Marshfield Fire"). The Marshfield Fire was within a few blocks of the Hermitage Fire. (Dkt. 148, 2d Am. Compl. ¶ 31; Ex. 15, CPD Report re: Ramos (Mar. 24, 1984); Ex. 16, Micek Dep. Tr. (Apr. 16, 2014), pp. 263:17–264:3; Ex. 17, Ramos Written Stmt., pp. City-Klup_00926-27; Dkt. 397 at 2.)

22. On or about March 24, 1984, Isabel Ramos was charged in connection with the Marshfield Fire and the investigation was closed and cleared by arrest. (Ex. 15, CPD Report re: Ramos (Mar. 24, 1984); Ex. 16, Micek Dep. Tr. , pp. 188:14-189:14, 263:17–264:3.)

23.     Burge did not investigate or supervise the detectives investigating the Marshfield Fire in 1984. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶¶ 109, 115.)

**Plaintiff's Discovery of Other Fires in 1987**

24.     In December 1987, Plaintiff was employed by Ewing-Lundberg & Associates, Inc. ("ELA") as a security guard and assigned to guard, among other locations, a garage at an apartment complex located at 820 West Belle Plaine in Chicago ("Belle Plaine"). (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 23:20–26:1, 52:1-24.)

25.     Between about December 20-26, 1987, Plaintiff discovered several fires at his job site and wrote reports documenting each for his employer. (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 53:12–57:16, 57:22-67:9, 69:19-71:24; Ex. 18, ELA Reports, pp. City-Klup_000998 (garbage chute fire on December 20), 00098-990 (two separate fires consuming two automobiles on December 24, 1987 ("the Car Fires"), 00091-92 (beeping sound emanating from the trunk of an automobile on December 26).)

26.     In addition to writing a report of the Car Fires incident for his supervisor, in which he reported observing a black man running out the back end of the garage, Plaintiff called 911 prompting CFD and CPD's investigation into the matter. (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 57:22–67:9; Ex. 18, ELA Reports, pp. City-Klup_000998-990; Ex. 19, CPD Report re: Car Fires (Dec. 24, 1987).)

**Plaintiff's Confession to the Hermitage Fire**

27.     In January 1988, Plaintiff received a call from a person from CPD, requesting Plaintiff come to the police station to view photographs in an effort to identify the man he

6

observed fleeing from the Belle Plaine garage. Plaintiff declined. After "a couple calls" back and forth, Plaintiff agreed to view the photographs at his mother's building, where he was working at the time. (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 73:14–76:10.)

28. Shortly thereafter, B&A Detectives John Schmitz (now deceased) and his partner, Defendant Leonard Rolston, arrived at Plaintiff's mother's building. When Plaintiff asked to see the photographs, Schmitz and Rolston said the photographs were at the police station and Plaintiff "was coming with them one way or another" and placed Plaintiff in their vehicle and drove to 11th and State. (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 76:21–79:10.)

29. At 11th and State, Schmitz and Rolston questioned Plaintiff about the Car Fires and told Plaintiff that a witness observed Plaintiff set the cars on fire. Plaintiff denied involvement and agreed to submit to a polygraph examination because "[he] was innocent." (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 79:11–24; Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 37.)

30. Schmitz and Rolston escorted Plaintiff to an interview room, where Plaintiff was asked to sign a polygraph examination waiver. Because the waiver showed that he was about to be questioned about the Hermitage Fire, rather than the Car Fires. Plaintiff refused to sign the waiver. (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 80:1–82:2.)

31. At that point, Schmitz and Rolston entered the interview room, brought Plaintiff into a second room, and started accusing Plaintiff of murdering a family. After Plaintiff insisted he did "nothing of the sort," Schmitz and Rolston threw Plaintiff to the floor and beat him in his lower back, vowing to stop if Plaintiff confessed. As a result, Plaintiff repeatedly stated he "did

it" and Schmitz and Rolston stopped beating Plaintiff, handcuffed him to the wall, and exited the room. (Ex. 14, Pl. Dep. Tr. (Mar. 31, 2015), pp. 82:5–86:8.)

32. Following Plaintiff's confession to Schmitz and Rolston, ASA Larry Axelrood of the Cook County Felony Review Unit was called to the Bomb & Arson Unit. He interviewed Plaintiff for about two hours, during which time the two were intermittently alone. (Ex. 20, Axelrood Dep. (Feb. 3, 2015), pp. 71:23-72:2; 72:13-21.)

33. Plaintiff admitted to ASA Axelrood that he started the Car Fires when he was a security guard so that he would look good to his boss. He also admitted starting the fire at 4448 South Hermitage that killed six people. (Ex. 20, Axelrood Dep. (Feb. 3, 2015), pp. 18:22-20:9; 13:10-14:12.)

34. At the conclusion of the interview, Axelrood approved charges for the Car Fires and continued the murder investigation. (Ex. 20, Axelrood Dep. (Feb. 3, 2015), pp. 22:23-24:3, 26:3-7, 51:4-22.)

35. Plaintiff did not interact with nor was he interviewed about the Hermitage Fire by Defendant Burge. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶¶ 2, 4, 5, 6, 9, 109, 111, 112.)

**Re-Investigation of the Hermitage Fire**

36. After Plaintiff's confession, Area 3 Violent Crimes detectives, Defendant Kelly and his partner Detective William Foley (now deceased) were contacted to investigate. (Ex. ___, Kelly Dep. Tr. (May 14, 2014), pp. 171:9-173:20.)

37. Detectives Foley and Kelly interviewed witnesses, including Gramont, Glassco, Burns, and Defendant Alletto, to gather additional information to corroborate Plaintiff's

confession. (Ex. 5, CPD Reports, pp. City-Klup_000567–74, 576–82; Ex. 21, Kelly Dep. Tr. (May 14, 2014), pp. 175:14-178:5; 204:1-24.)

38. A report authored by Foley and Kelly (the "Foley/Kelly Report"), documented Foley and Kelly's attendance at a conference with ASA Warnick of the State's Attorney's Office Arson Task Force, ASA Bruce Rather, B&A Detectives Schmitz and Rolston. (Ex. 5, CPD Report (Jan. 29, 1988), pp. City-Klup_000576-82; Ex. 21, Kelly Dep. Tr. (May 14, 2014), pp. 272:16–273:22 (May 14, 2014).)

39. The Foley/Kelly Report also documented a subsequent interview of Defendant Alletto and Assistant Director Burns. During the interview, Alletto and Burns advised that OFI unofficially investigated the Hermitage Fire on March 24, 1984, and concluded the fire was incendiary based on burn patterns, the absence of a fire load, the volume, intensity and speed of the fire, and the elimination of all other causes, and the fire originated in the rear of the first floor. (Ex. 5, CPD Report (Jan. 29, 1988), pp. City_Klup_000576-82; Ex. 21, Kelly Dep. Tr. (May 14, 2014), pp. 272:16–273:22.)

40. Defendant Burge did not have any interaction with Duane Glassco prior to and including May 30, 2012. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 11.)

41. Defendant Burge did not have any interaction with Dawn Gramont prior to and including May 30, 2012. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 20.)

**Grand Jury Indictment**

42.     Between January 21 and 27, 1988, a Cook County grand jury heard testimony from Michelle Brittain, Gramont, Glassco, and Detectives Rolston and Foley. (Group Ex. 22, Grand Jury Transcripts (Jan. 21, 25-27, 1988).

43.     On January 27, 1988, the grand jury returned a true bill and an arrest warrant issued, charging Plaintiff with murder, attempt murder, and arson in connection with the Hermitage Fire. (Ex. 23, Indictment; Ex. 24, Arrest Warrant (Jan. 27, 1988); Ex. 22, Grand Jury Transcript (Jan. 27, 1988) (CONFIDENTIAL), p. 13.)

44.     Defendant Burge did not arrest Plaintiff for the Hermitage Fire. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶ 112.)

**Burge Transfer to Commander of Area 3 Violent Crimes**

45.     On January 27, 1988, Defendant Burge was transferred to the position of Commander of Area 3 Violent Crimes. (Group Ex. 6, Employment Transfer History & Personnel Action Request.)

46.     According to a Chicago Tribune article dated January 30, 1988 and titled, "Man Faces Murder Charges in '84 Fire", Burge stated "Kluppelberg told us he had been setting fires since he was 9 years old[.]" (Ex. 25, Chi. Trib. Article (Jan. 30, 1988).)

**Gramont Complaint**

47.     On or about January 22, 1988, following her testimony before the grand jury, Gramont filed a Complaint Register ("CR") with the Office of Professional Standards ("OPS") alleging Detective Foley threatened to hurt Gramont and her children if she did not testify against

10

Plaintiff before the grand jury, pushed her head against a door and struck her right hand with a flashlight. (Ex. 26, Gramont CR (CONFIDENTIAL), pp. JGS 3195-96.)

48. On February 25, 1988, Defendant Kelly provided a To/From report to OPS as a witness officer regarding his knowledge of the allegations made by Gramont in her CR. The To/From report was approved by Defendant Burge. (Ex. 26, Gramont CR (CONFIDENTIAL), p. JGS 3221.)

49. The CR was not sustained. Defendant Burge was one of five commanding officers who concurred in the decision. (Ex. 26, Gramont CR (CONFIDENTIAL), pp. JGS 3193-3194.)

**Pre-Trial Suppression of Plaintiff's Confession**

50. On or about May 27, 1988, Plaintiff's counsel, Marshall Weinberg filed a motion to suppress Plaintiff's confession, which was heard on November 9th and 15th, 1988. The motion alleges Plaintiff's confession was the product of abusive treatment by police. (Ex. 27, Mot. to Suppress Stmts. (May 27, 1988); Ex. 28, Weinberg Dep. Tr., pp. 129:9–130:18; Ex. 27, Mot. to Suppress Hr'g Tr. (Nov. 9 and 15, 1988).)

51. On November 15, 1988, Cook County Circuit Court Judge Robert Collins granted the motion to suppress. (Ex. 29, Mot. to Suppress Hr'g Tr. (Nov. 15, 1988), pp. JGS 971:6–972:14.)

**Plaintiff's Bench Criminal Trial**

52. Prior to his criminal trial, Plaintiff received the 1984 Jenkins and Urbon Reports, classifying the cause and origin of the Hermitage Fire as undetermined. (Ex. 3, Pl.'s 2d Am. Resps. to Individ. Defs.' 1st Set of Reqs. for Admis., ¶¶ 39–41.)

11

53. On July 13, 1989, Plaintiff's two-day bench criminal trial began. (Ex. 10, Criminal Trial Tr. (Jul. 13, 1989); Ex. 13, Criminal Trial Tr. (Jul. 14, 1989).)

54. On July 13, 1989, OFI Deputy Director Burns testified as a witness for the prosecution, explaining his investigation into the Hermitage Fire and his opinion that the fire was set as a result of arson. (Ex. 10, Criminal Trial Tr. (Jul. 13, 1989), pp. 32:16–80:8.)

55. Plaintiff's attorney did not impeach Burns during cross-examination with police reports from 1984, including the Urbon and Jenkins report. (Ex. 10, Criminal Trial Tr. (Jul. 13, 1989), pp. 32:16–80:8.)

56. The prosecution introduced Glassco and Gramont's testimony at trial but did not introduce Plaintiff's suppressed statements. (Exs. 10 and 13, Criminal Trial Tr.s (Jul. 13, 1989 and Jul. 14, 1989, respectively.))

57. At the close of the case, the presiding judge, Cook County Circuit Court Judge Loretta Hall Morgan (now deceased), found that the Hermitage Fire was the result of arson and found Plaintiff guilty of Counts 1 through 18 and Counts 26 through 28 contained in the indictment (murder and arson). (Ex. 13, Criminal Trial Tr. (Jul. 14, 1989), pp. P000562:14–571:2; Ex. 23, Grand Jury Indictment (Jan. 27, 1988).)

58. Plaintiff was sentenced to life imprisonment. (Dkt. 148, ¶ 39.)

**Dismissal of Plaintiff's Claims**

59. On May 30, 2012, the prosecution moved to *nolle prosequi* Plaintiff's case, and Cook County Circuit Court Judge Rickey Jones entered an order, vacating Plaintiff's convictions and sentence in connection with the Hermitage Fire. (Ex. 30, Post-Conviction Hr'g Tr. (May 30, 2012); Ex. 1, Order (May 30, 2012).)

**The 1984 Area Three Violent Crime File**

60. In August 2014, more than one year after Plaintiff filed his initial Complaint, an investigative file created in 1984, and stamped "Area Three Violent Crime Unit" (hereinafter "the 1984 Area Three Violent Crimes File," also referred to in this litigation as the "New File") was located in a CPD warehouse among four pallets of boxes in a box marked "Cleared Cases 1984 F–000001." (Ex. 31, City's 4th Am. Objections and Resps. to Pl.'s 7th Set of Interrogs., ¶¶ 3, 10 (Jun. 26, 2015); Ex. 32, 1984 Violent Crimes Unit Investigative File, pp. CPD-ORIG-FILE-4 01-58.)

61. The date of the last entry in the File Inventory Log for the 1984 Area Three Violent Crimes File is April 20, 1984. (Ex. 32, 1984 Area Three Violent Crimes Unit File, pp. CPD-ORIG-FILE-04-2-3.)

**Opinion of Plaintiff's Fire Expert**

62. Among other opinions, Plaintiff's fire expert, Dr. Russell Ogle, opines that the cause and origin of the Hermitage Fire is undetermined, consistent with Detective Urbon's conclusion in 1984; that Burns's cause and origin conclusions were incorrect; and that Burns relied upon an erroneous interpretation of fire patterns in classifying the Hermitage Fire as incendiary. (Ex. 33, Ogle Report, pp. 18–19.)

63. During his deposition, Ogle provided the following testimony:

> Q: Is it possible for two investigators to conduct a cause and origin examination and reach different conclusions?
> A: Sure. Just like Pat Burns and I did. And he's wrong, and I'm right.
> Q: Okay. Is it possible for two investigators to have reached differing opinions without one lying or fabricating evidence?

> A: Oh, yeah. I hope I didn't say anything to suggest that I thought that Pat Burns was lying or doctoring evidence or anything. I never meant to suggest that. He's just wrong.

(Ex. 34, Ogle Dep. Tr. (Nov. 5, 2015), pp. 287:21–288:8.)

64. In addition, Ogle testified that current fire investigation is not an exact science; in 1984, fire investigation was not an exact science; in the course of the last 30 years, fire investigation has evolved; the NFPA 921 is a guideline for conducting fire and explosion investigations; the NFPA 921 was promulgated to correct common misconceptions about fire science or fire investigation; and the first edition of the NFPA 921 was not published until 1992. (Ex. 34, Ogle Dep. Tr.(Nov. 5, 2015), pp. 288:9–290:8.)

Dated: December 6, 2016           Respectfully submitted,

/s/ Elizabeth A. Ekl
Elizabeth A. Ekl, Attorney No. 06242840
*One of the Attorneys for Defendants*
*Jon Burge and William Alletto*

James G. Sotos
Elizabeth A. Ekl
Jeffrey R. Kivetz
Sara J. Schroeder
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
eekl@jsotoslaw.com

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C.A. § 1746, that I electronically filed a complete copy of the foregoing **Defendants Burge and Alletto's L.R. 56.1 Statement of Undisputed Material Facts in Support of Their Partial Motion for Summary Judgment** with the Clerk of the Court on Tuesday, December 6, 2016, using the CM/ECF system, which will send notification of such filing to the below service list.

*Attorneys for Plaintiff James Kluppelberg*:

Jonathan I. Loevy
Arthur R. Loevy
Gayle M. Horn
Michael I. Kanovitz
Roshna Bala Keen
Tara E. Thompson
Joel Feldman
Scott Rauscher
Gretchen Helfrich
Steven E. Art
Sarah L. Grusin
Elizabeth Mazur
Russell Ainsworth
LOEVY & LOEVY
312 N. May Street, Ste. 100
Chicago, IL 60607
312-243-5900
jon@loevy.com
loevylaw@loevy.com
gayle@loevy.com
mike@loevy.com
roshna@loevy.com
tara@loevy.com
Joel@loevy.com
scott@loevy.com
gretchen@loevy.com
steve@loevy.com
grusin@loevy.com
elizabethm@loevy.com
russell@loevy.com

*Attorneys for Defendant City of Chicago*:

Daniel E. Reidy
Chaka M. Patterson
Scott B. Elmer
Elizabeth E. Manning
Brian J. Murray
Christopher A. Hall
JONES DAY
77 W. Wacker, #3500
Chicago, IL 60601
312-782-3939
dereidy@jonesday.com
cpatterson@jonesday.com
selmer@jonesday.com
emanning@jonesday.com
bjmurray@jonesday.com
chall@jonesday.com

/s/ Elizabeth A. Ekl
Elizabeth A. Ekl, Attorney No. 06242840
*One of the Attorneys for Defendants*
*Jon Burge and William Alletto*