**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES KLUPPELBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 03963 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| JON BURGE, et al., | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

After his multiple murder convictions were vacated and he was released, having served almost 23 years of a life sentence, James Kluppelberg filed this civil rights action against the City of Chicago and a number of individual defendants, including Jon Burge and William Alletto.[1] He alleges that Burge and Alletto, who were high-ranking officials in the police and fire departments, respectively, are liable as participants in his wrongful conviction.[2] The two move for summary judgment on all claims. (Dkt. 545.) For the reasons stated below, the motion is denied in part and granted in part.

---

[1] A suggestion of death was filed on June 21, 2017 (dkt. 605), representing that Alletto died on April 28, 2017. The court decides this motion as it was briefed and leaves it to the parties to determine whether a motion under Federal Rule of Civil Procedure 25(a) is necessary.

[2] The court's jurisdiction rests on 28 U.S.C. §§ 1331 and 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND[3]

Kluppelberg's lawsuit alleges misconduct leading to his arrest, prosecution, and conviction for a 1984 arson that killed six people. He was granted a certificate of innocence in 2012, in part due to the alleged misconduct at issue in this case. When the undisputed facts, including those that Burge and Alletto have admitted only for the purposes of summary judgment, are considered, the following narrative emerges.

The morning of March 24, 1984, a house fire at 4448 Hermitage Avenue killed a mother and her five children (referred to herein interchangeably as the fire or the Hermitage fire). That same day Alletto, the Director of the Chicago Fire Department's not-yet-operational Office of Fire Investigations (OFI),[4] went to the scene of the fire with OFI's Assistant Director, Pat Burns,[5] and a group of fire investigators to conduct a training exercise. Alletto did not conduct a field examination, take photographs or notes, or make a cause and origin determination, and neither Alletto nor Burns filed a report commemorating findings they made at the time or participated in the investigation that followed. The official investigation was conducted by investigators from the Bomb & Arson Unit (B&A) of the Chicago Police Department (CPD) but, due to extensive damage to the structure, B&A was unable to determine its cause and origin. In

---

[3] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements, and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

[4] OFI became operational on April 1, 1984, one week after the fire occurred.

[5] Pat Burns is deceased, and his estate has not been named as a party to this lawsuit.

1984, Burge was a lieutenant in CPD's Area Two Violent Crimes Unit (Area 2) and did not participate in the original investigation of the fire. The case was closed as "apparent accidental fire deaths" in April 1984. In August 1986, Burge was promoted to Commander of B&A, where he supervised defendant detectives Leonard Rolston and John Schmitz.[6]

In late 1987, Duane Glassco, who was in custody at Cook County Jail, approached the police with an offer to inculpate Kluppelberg in the fire in exchange for a deal on pending burglary charges against him. Rolston and Schmitz spoke with Glassco, but they did not file a report of the conversation. In January 1988, Rolston and Schmitz brought Kluppelberg to Eleventh and State (police headquarters) under the pretense of asking him questions about two incidents he had reported while working as a security guard. Instead, Rolston and Schmitz beat Kluppelberg until he confessed to setting the fire. Rolston and Schmitz took Kluppelberg's confession to Assistant State's Attorney (ASA) Larry Axelrood, who interviewed Kluppelberg and instructed the officers to continue investigating because corroborating evidence was necessary before charges could be brought. Rolston and Schmitz advised defendant detective William Kelly and his partner, William Foley,[7] who were detectives in CPD's Area Three Violent Crimes Unit (Area 3), of the confession and they joined the investigation.

As part of this investigation the detectives spoke with Glassco on multiple occasions, and Kelly and Foley prepared a report of his statements inculpating Kluppelberg. Glassco testified in accordance with that report both before the grand jury in January 1988 and at Kluppelberg's trial in July 1989. Glassco later admitted his testimony was false and that he only testified in order to

---

[6] John Schmitz is deceased. Meghan Schmitz has been named as a defendant to this lawsuit in her capacity as personal representative of his estate.

[7] William Foley is deceased, and his estate has not been named as a party to this lawsuit.

receive favorable treatment in his own pending case.

Rolston, Schmitz, Kelly, and Foley met with ASAs Jeffrey Warnick and Bruce Rather to discuss bringing murder charges against Kluppelberg. But they were told that, in addition to needing corroborating evidence, a determination that the fire was arson was necessary because the original investigators had been unable to determine the cause and origin and the case was closed as "apparent accidental fire deaths." Despite the fact that B&A had sole authority to investigate the fire,[8] the detectives approached Alletto and Burns regarding the cause and origin of the fire. Alletto and Burns told the detectives that they believed the fire had been incendiary, which is how OFI labeled fires started by people. This opinion directly contradicted B&A's 1984 opinion that the cause of the fire could not be determined. Nonetheless, Alletto and Burns shared their opinion at a meeting with ASAs Warnick and Rather. When the grand jury was empaneled, Foley testified that Burns had investigated the fire and determined it was arson. Burns then testified as to this opinion for the prosecution at Kluppelberg's trial.

Kelly and Foley also brought in Dawn Gramont, at whose apartment Kluppelberg had been staying the night of the fire, for questioning. Kelly and Foley made threats against her and her children in order to force her to testify against Kluppelberg before the grand jury. Gramont did so, but called CPD's Office of Professional Standards (OPS) that same day to report the detectives' threats and state that her grand jury testimony had been false. Burge later received a copy of Gramont's OPS report and was one of five commanding officers who concurred in finding it "not sustained"[9] and declining to discipline Kelly or Foley.

---

[8] This is because OFI was not in operation at the time of the fire.

[9] "Not sustained" is the term used by OPS when there is not sufficient evidence to either prove or disprove allegations.

Kluppelberg was indicted in January 1988, and Burge, who had been promoted to Commander of Area 3 the same day the grand jury returned the indictment, announced the indictment at a press conference where he answered questions and repeated portions of Kluppelberg's confession and Gramont's statement. Kluppelberg's case went to a bench trial in July 1989. The court granted the defense's motion to suppress Kluppelberg's confession but heard testimony by Glassco and Gramont inculpating Kluppelberg and gave great weight to Burns's finding that the fire was arson. Kluppelberg was convicted of murder, attempted murder, and arson, and sentenced to life in prison. In May 2012, these convictions and the sentence were vacated after the prosecution moved to *nolle prosequi* them, and Kluppelberg was released from prison after serving almost 23 years.

In August 2014, a file stamped "Area Three Violent Crime Unit" was found in a CPD warehouse in a box marked "Cleared Cases 1984 F-000001." This file, created in 1984 and referred to in this lawsuit as the "New File," contained several reports from B&A regarding the fire. The New File contained exculpatory evidence, including notes identifying two alternate suspects who had admitted setting other fires near the Hermitage fire the same night, notes identifying other alternate suspects who had argued with the victims of the fire, and notes that a witness had told detectives of dangerous wiring in the building's basement that regularly got wet when it rained, suggesting a possible non-human cause of the fire. The New File was not produced to the State's Attorney or to the defense before or during Kluppelberg's trial, despite the fact that in 1988–89 it was stored in a filing cabinet in Area 3, easily accessible to Burge. In fact, Kelly and Foley, after being assigned to the case in 1988, retrieved all the files and reports related to the 1984 investigation, including the New File.

After his conviction was vacated, Kluppelberg filed suit against the City of Chicago and a

number of individual defendants alleging violations of 42 U.S.C. § 1983 and malicious prosecution. Kluppelberg's claims against Burge include that Burge (1) deprived him of due process by participating in the fabrication and suppression of evidence (count I); (2) is liable under a theory of supervisory liability for the actions of Rolston, Schmitz, Kelly, and Foley in fabricating evidence and coercing witnesses (count IV); (3) failed to intervene in the constitutional violations against him by other defendants (count II); (4) conspired with other defendants to deprive him of due process (count III); and (5) participated in the malicious prosecution of him for the fire (count VI). Kluppelberg's claims against Alletto include that Alletto (1) deprived him of due process by participating in the fabrication of evidence (count I); (2) failed to intervene in the constitutional violations committed by Burns (count II); (3) conspired with other defendants to fabricate evidence (count III); and (4) participated in the malicious prosecution of him for the fire (count VI). Burge and Alletto move now for summary judgment arguing that the record does not contain sufficient evidence to support Kluppelberg's claims against them or, in the alternative, that they are entitled to qualified immunity.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and

draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Day* v. *N. Ind. Pub. Serv. Co.*, 987 F. Supp. 1105, 1109 (N.D. Ind. 1997); *see also Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

When a defendant has invoked his Fifth Amendment right against self-incrimination, as Burge has consistently done during this case, adverse factual inferences may be drawn from the choice to remain silent. *La-Salle Bank Lake View* v. *Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). At the same time, a plaintiff may not rest solely on the defendant's assertion of privilege to establish liability based on refusal to answer a complaint or to testify at a disciplinary hearing if there is no other evidence supporting liability. *Id.* at 391 (quoting *National Acceptance Co. of America* v. *Bathalter*, 705 F.2d 924, 932 (7th Cir. 1983)); *see also Baxter* v. *Palmigiano*, 425 U.S. 308, 316, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976). Burge relies on this doctrine, not to establish liability, but to be exonerated from it, contending that there is no other evidence in the record from which a reasonable jury could infer liability.

To prevent the case from going to the jury undermines the jury's ability to draw adverse inferences that could establish the elements of the claim. Nonetheless, the courts that have addressed the issue in the context of a defendant's seeking summary judgment have held that the

7

non-movant must point to some evidence in addition to defendant's silence to avoid summary judgment. *See, e.g., Logan* v. *City of Chi.*, 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012) ("[A] party's refusal to answer questions during discovery is not enough to create an issue of fact to avoid summary judgment.") (internal quotation marks omitted); *Thompson* v. *City of Chi.*, 2009 WL 674353, *3 (N.D. Ill. March 12, 2009) (reciting that other evidence is necessary for plaintiff to show an issue of fact). This court accepts that view on the assumption that the Seventh Circuit would agree, and that the same rule would justify judgment as a matter of law at the close of the plaintiff's case.

## ANALYSIS

**I. Count I (deprivation of due process by suppressing material evidence, fabricating evidence, and coercing witnesses)[10]**

**A. Burge**

Kluppelberg acknowledges that Burge did not directly participate in (1) coercing his confession; (2) eliciting Glassco's false testimony against him; or (3) intimidating Gramont into testifying against him. As such, Kluppelberg's only claim for direct deprivation of due process against Burge appears to be his *Brady* claim related to the failure to produce the New File.

Kluppelberg claims that Burge suppressed the New File, and by extension, exculpatory evidence favorable to him. To establish a *Brady* violation, Kluppelberg must show that (1) evidence favorable to him, either exculpatory or impeaching, (2) was suppressed by the government, either willfully or inadvertently, and (3) there is a reasonable probability that prejudice ensued. *See Carvajal* v. *Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). A "*Brady*

---

[10] In addition to count I, which claims direct deprivation of due process by Burge and Alletto, Kluppelberg also brought a supervisory liability claim against Burge (count IV). Thus, allegations against Burge implicating supervisory liability will be addressed in a later section.

8

violation occurs when the government fails to disclose evidence materially favorable to the accused . . . even evidence that is known only to police investigators and not to the prosecutor." *Steidl* v. *Fermon*, 494 F.3d 623, 631 (7th Cir. 2007) (emphasis omitted) (quoting *Youngblood* v. *West Virginia*, 547 U.S. 867, 869, 126 S. Ct. 2188, 165 L. Ed. 2d 269 (2006)) (internal quotation marks omitted). While an officer need not have deliberately withheld or concealed exculpatory evidence in order to be liable for a *Brady* violation, he must at least have known about it. *Cf. Steidl*, 494 F.3d at 631.

For summary judgment purposes, Burge does not dispute that the first and third elements of a *Brady* violation occurred. Rather, he argues that the evidence in the record does not show that he knew about the New File. The record supports this argument.

A reasonable jury could only find for Kluppelberg if the undisputed facts give rise to a reasonable inference that Burge personally knew about the New File before Kluppelberg's trial. Viewing the undisputed facts in the light most favorable to Kluppelberg, a reasonable jury could infer that Kelly and Foley had personal knowledge of the existence and contents of the New File because they retrieved all files and reports related to the 1984 investigation when they were assigned to the case in 1988. With regard to Burge's personal knowledge of the New File, however, the only evidence Kluppelberg can point to is Burge's silence. Because "the direct inference of guilt from silence is forbidden," *Seguban*, 54 F.3d at 390, this is insufficient to avoid summary judgment.

### B.     Alletto

Kluppelberg claims that Alletto fabricated a false opinion that the fire was arson, which was used both to indict and convict him. An officer "who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of

9

her liberty in some way." *Whitlock* v. *Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

Alletto argues that even if Kluppelberg can show that the arson opinion was knowingly false, that opinion was not used to indict, arrest, or prosecute Kluppelberg and, therefore, was not used to deprive him of his liberty. The record supports this argument.

Alletto acknowledges that he attended meetings with Foley, Kelly, Warnick, and Rather, where he agreed with Burns that the fire was probably arson. But there is nothing in the record to indicate that Alletto's opinion was relied on in securing the indictment or conviction of Kluppelberg. Rather, the indictment was returned after Foley testified before the grand jury that *Burns* had investigated the Hermitage fire and determined that it was arson. And it was Burns who testified at Kluppelberg's trial that the fire was arson. Even viewed in the light most favorable to Kluppelberg, the actions of Burns resulted in the indictment and conviction, not those of Alletto.[11] As a matter of law, no reasonable jury could find in favor of Kluppelberg on his claim that Alletto deprived him of due process.

## II.  Count II (failure to intervene) and Count III (conspiracy)

Both defendants argue that Kluppelberg cannot establish their personal involvement in the constitutional violations he suffered, and therefore his claims for failure to intervene and conspiracy must be dismissed. Defendants do not support this cursory argument with pertinent authority. The court therefore considers the argument waived. *See Smith* v. *Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (holding that undeveloped argument constitutes waiver); *Tyler* v. *Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it

---

[11] Kluppelberg did not bring a claim for supervisory liability against Alletto; thus, whether Alletto condoned, facilitated, or approved Burns' actions in this regard is not at issue as it is with Burge's supervision of Rolston, Schmitz, Foley, and Kelly.

is sound despite a lack of supporting authority, forfeits the point."); see also *Otto* v. *Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir. 1998) (refusing to consider unsupported or cursory arguments); *United States* v. *Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (stating that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived).[12] As such, summary judgment is not appropriate on counts II and III as to both Burge and Alletto. The motion for summary judgment as to these two claims is denied.

## III. Count IV (supervisory liability)

Kluppelberg claims that Burge is liable for the constitutional violations of his subordinates who (1) coerced Kluppelberg's confession, (2) elicited false testimony from Glassco and intimidated Gramont into implicating Kluppelberg, and (3) suppressed the New File. To establish supervisory liability for the constitutional violations of subordinates, Kluppelberg must show Burge "kn[ew] about the unconstitutional conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what" he might see. *T.E.* v. *Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones* v. *City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)). In other words, "to establish a claim against a supervisory official, there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon* v. *Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

### A. Kluppelberg's coerced confession

Burge argues that, because the confession was not used against Kluppelberg at his trial,

---

[12] Beyond being cursory, defendants' argument, at least with respect to the failure to intervene claim, is incorrect. An officer may be liable under § 1983 for failing to intervene if that officer had reason to know (1) that any constitutional violation has been committed by a law enforcement official; and (2) the officer had a realistic opportunity to intervene to prevent the harm from occurring. *See Yang* v. *Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Because "section 1983 may result in the imposition of liability in damages both for misfeasance and for nonfeasance," *Byrd* v. *Brishke*, 466 F.2d 6, 10 (7th Cir. 1972), such liability does not require personal involvement in the constitutional violation committed.

11

he was not harmed by it and, therefore, there is no constitutional tort. *See Fields* v. *Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014). Additionally, Burge argues any claim is barred by the two-year statute of limitations because the confession was last used against Kluppelberg in November 1988.[13] *See Chavez* v. *Martinez*, 538 U.S. 760, 767, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003). Kluppelberg fails to respond to these arguments and, therefore, apparently acquiesces to their merit. *See Palmer* v. *Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (reciting that claims not addressed in a summary judgment opposition brief are abandoned).

### B. Fabricated evidence

Burge argues that there is insufficient evidence in the record to show that he is liable for any constitutional violations perpetrated by Rolston, Schmitz, Foley, and Kelly related to the fabrication of inculpating testimony by Glassco and Gramont. This is true with regard to Kluppelberg's claims about the actions of Foley and Kelly. In order for Burge to be liable for their actions, he would had to have both known about the actions and been in a supervisory position from which he could facilitate, approve, condone, or turn a blind eye to them. *See Grindle*, 599 F.3d at 588; *Rascon*, 803 F.2d at 274; *Almarez* v. *Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008) (noting that the focus of supervisory liability is the supervisor's "personal knowledge of the policies and practices that affected plaintiff and whether [the supervisor was] personally responsible for those policies and practices"). Burge was the commander of B&A until January 27, 1988, the date the indictment was returned. Thus, irrespective of whether Kluppelberg could show that Burge was aware of Foley and Kelly's actions, Kluppelberg has pointed to no evidence of Burge's personal responsibility for them.

---

[13] Burge argues the statute of limitations was not tolled under *Heck* v. *Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), because Kluppelberg's conviction did not depend on his confession. Therefore, he could have brought a § 1983 claim immediately without implying the invalidity of his criminal conviction, which he failed to do within two years.

With regard to the actions of Rolston and Schmitz, who reopened the Hermitage fire investigation after interviewing Glassco, Kluppelberg alleges that the detectives told Glassco what to say, adding inculpatory details to his initial story. Kluppelberg further alleges that Burge was either aware of what Rolston and Schmitz were doing and approved or condoned it or that he created a custom and practice of fabricating evidence knowing, or at least recklessly disregarding, that doing so would cause the constitutional violations by his subordinates that occurred.

Kluppelberg argues that because Burge was Rolston and Schmitz's supervisor he was, therefore, responsible for monitoring them. He further points out that the fire was a high-profile case, which Kluppelberg's police-practices expert opines indicates that Burge would have been kept up to date about important investigative developments as they occurred and would have spoken to the investigators and familiarized himself with the facts of the investigation. Kluppelberg also points to past testimony by Burge in which he described himself as a hands-on supervisor, who would routinely look in on suspect interrogations at the police station. Finally, Kluppelberg points to evidence of Burge's participation in the abuse and torture of suspects during his tenure as a Lieutenant in Area 2.

Although circumstantial, a reasonable jury could conclude from this evidence that Burge knew of or turned a blind eye to the actions of Rolston and Schmitz. As such, summary judgment is inappropriate on the issue of whether Burge may be liable in his supervisory capacity for Glassco's fabricated testimony.

### C. Suppression of the New File

In addition to arguing that Burge directly suppressed the New File, Kluppelberg also argues that Burge is liable for the suppression on a theory of supervisory liability. Kluppelberg

13

argues that Burge encouraged and condoned the practice of keeping and not producing so-called "street files," which led to the New File being suppressed. In support, Kluppelberg points to the fact that Burge was aware both of the practice of keeping street files, and that such a practice led to *Brady* materials being withheld from prosecutors and the defense. Kluppelberg also points to a review done by his police practices expert that showed the practice of keeping street files remained widespread in Area 3 into the 1990s. Finally, Kluppelberg argues that this evidence should be combined with an adverse inference arising from Burge's invocation of his Fifth Amendment right in response to questions regarding his knowledge of and participation in the suppression of the New File.

Burge does not respond and, therefore, has waived any argument regarding his supervisory liability for the suppression of the New File. *See Roe-Midgett* v. *CC Services, Inc.*, 512 F.3d 865, 876 (7th Cir. 2008); *Palmer*, 327 F.3d at 597–98. Moreover, Kluppelberg has pointed to sufficient evidence in the record from which a reasonable jury could infer that Burge either expressly condoned the practice of keeping and withholding street files, which led to the suppression of the New File, or that he "turn[ed] a blind eye [to the practice] for fear of what" he might see. *Grindle*, 599 F.3d at 588 (quoting *Jones*, 856 F.2d at 992).

### IV.     Count VI (malicious prosecution)

Kluppelberg claims Burge and Alletto are liable for malicious prosecution against him because they participated in fabricating evidence that was presented to prosecutors to secure probable cause to charge him while also withholding exculpatory evidence. To establish a claim for malicious prosecution, Kluppelberg must establish five elements: "(1) commencement or continuation of an original proceeding [by the defendant]; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Colbert* v.

14

*City of Chi.*, 851 F.3d 649, 655 (7th Cir. 2017) (alteration in original) (internal quotation marks omitted). If a plaintiff fails to establish any one of these elements, the claim fails. *Holland* v. *City of Chi.*, 643 F.3d 248, 254 (7th Cir. 2011). Defendants challenge only the first and fourth elements.

### A. Burge

As discussed in section I.A, there is not sufficient evidence in the record to support a finding that Burge directly participated in fabricating evidence that was used to convince a prosecutor of probable cause. Moreover, "the chain of causation [in a malicious prosecution case] is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor." *Colbert*, 851 F.3d at 655 (emphasis omitted) (quoting *Reed* v. *City of Chi.*, 77 F.3d 1049, 1053 (7th Cir. 1996)) (internal quotation marks omitted). Kluppelberg points to no evidence in the record of exertion of influence or knowing misstatements by Burge to the prosecutors. Without such evidence no reasonable jury could find that Burge commenced or continued an original proceeding against Kluppelberg and, therefore, no reasonable jury could find for Kluppelberg on his malicious prosecution claim against Burge.

### B. Alletto

Liability in a malicious prosecution case only extends to those persons who played a "significant role" in causing the prosecution of the plaintiff to be commenced or continued. *Bianchi* v. *McQueen*, 58 N.E.3d 680, 698, 2016 IL App (2d) 150646, 405 Ill. Dec. 419 (Ill. App. 2d Dist. 2016). "A criminal proceeding is commenced when a complaint, an information, or an indictment is filed." *Szczesniak* v. *CJC Auto Parts, Inc.*, 21 N.E.3d 486, 491, 2014 IL App (2d) 130636, 386 Ill. Dec. 723 (Ill. App. 2d Dist. 2014) (citing 725 ILCS 5/111–1).

Kluppelberg acknowledges that Alletto did not testify before the grand jury that returned the indictment. Additionally, Alletto's opinion was not presented to the grand jury; rather, Foley testified before the grand jury that Burns had determined that the fire was arson. The evidence in the record thus shows that the grand jury indictment issued independently of Alletto. *See Colbert*, 851 F.3d at 655 (finding no malicious prosecution where prosecutor did not rely on misstatement to obtain indictment). As such, Alletto cannot be liable for malicious prosecution based only on having shared the arson opinion at the meeting with Rather and Warnick, regardless of whether he knew it to be incorrect.

## V.     Qualified Immunity

Finally, Burge and Alletto argue that they are entitled to qualified immunity. An officer is entitled to qualified immunity unless his conduct violated a plaintiff's constitutional right, and the right was clearly established at the time of the conduct. *Steidl* v. *Fermon*, 494 F.3d 623, 627 (7th Cir. 2007).

Kluppelberg claims Burge and Alletto suppressed exculpatory evidence, failed to intervene to prevent the use of fabricated evidence against him, and conspired to fabricate such evidence and/or withhold exculpatory evidence from him. That a failure to intervene could constitute an independent violation of a plaintiff's constitutional rights under § 1983 was clearly established prior to 1988. *See, e.g.*, *Byrd* v. *Brishke*, 466 F.2d 6, 10 (7th Cir. 1972) (holding that damages are recoverable under § 1983 both for misfeasance and nonfeasance). Likewise, the constitutional right to have exculpatory evidence produced and the constitutional prohibition against fabricating evidence were also well established by 1988. *See, e.g.*, *Steidl*, 494 F.3d at 632–33 (holding that the duty to disclose exculpatory evidence was clearly established prior to Steidl's trial in 1987); *Fields* v. *Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("[I]t was

16

established law by 1985 (indeed long before), . . . that a government lawyer's fabricating evidence against a criminal defendant was a violation of due process."); *Smith* v. *Springer*, 859 F.2d 31, 34 (7th Cir. 1988) (holding that plaintiff could prevail on a § 1983 claim if he showed that the defendant officers fabricated evidence leading to his arrest and prosecution), *overruled on other grounds by Heck* v. *Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). Thus, because the constitutional violations alleged by Kluppelberg were clearly established at the time Burge and Alletto were acting in 1988, they are not entitled to qualified immunity.

## CONCLUSION AND ORDER

For the foregoing reasons, Burge and Alletto's motion for summary judgment (dkt. 545) is granted as to counts I and VI, granted as to count IV regarding Kluppelberg's claims against Burge for supervisory liability for his coerced confession, denied as to count IV regarding Kluppelberg's claim against Burge for supervisory liability for suppression of the New File and fabrication of evidence, and denied without prejudice as to counts II and III.

Date: July 25, 2017

_____
U.S. District Judge Joan H. Lefkow