IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES KLUPPELBERG, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13 CV 3963 |
| JON BURGE et al., | ) Judge Joan H. Lefkow |
| Defendant. | ) |

# OPINION AND ORDER

Plaintiff James Kluppelberg has filed a motion to apply collateral estoppel to the City of Chicago's argument contesting its liability under *Monell* v. *Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), by arguing it did not have a policy of concealing material exculpatory and/or impeachment evidence contained in so-called "street files" in the late 1980s. For the reasons set forth herein, the court grants Plaintiff's motion.

## BACKGROUND

Early in the morning of March 24, 1984, a fire at 4448 South Hermitage in Chicago, Illinois, killed a mother and her five children. The Chicago Police Department (CPD) investigated the fire deaths, and, in 1989, James Kluppelberg was prosecuted, convicted, and sentenced to life in prison. Kluppelberg served almost 23 years of that sentence before being granted a Certificate of Innocence and released in 2012. In an unrelated incident on April 28, 1984, Jerome Smith and Talman Hickman were shot and killed in front of a housing project in Chicago. CPD investigated the Smith-Hickman murders, resulting in a man named Nate Fields

being prosecuted, convicted, and sentenced to death. Fields's conviction was vacated in 2009, after which he was retried and acquitted. These two cases have followed a parallel track for the past 33 years.

In 2010, Fields filed a civil suit alleging that his due process rights were violated in connection with his trials, including by the detectives from CPD Area One Violent Crimes (Area 1) who investigated the Smith-Hickman murders. Fields alleged that material exculpatory and/or impeachment evidence was withheld from his defense and that these violations were caused by an official policy or practice of the City of Chicago, thus subjecting the City to liability under *Monell*. *Fields* v. *City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *2 (N.D. Ill. Feb. 6, 2014). In 2011, during discovery in Fields's civil suit, a file separate from the official investigation file, commonly known as "street file," concerning the Smith-Hickman murders that was never disclosed during Fields's trial was found in a file cabinet in Area 1. *Fields*, 2014 WL 477394, at *6–7.[1] Fields's *Monell* claim was submitted to the jury, and the jury ultimately found for Fields and against the City.

Kluppelberg alleges that his due process rights were violated in his 1988 arrest and 1989 criminal trial, including by the withholding of material exculpatory and/or impeachment evidence, and that these violations were caused by the City's official policy or practice of concealing such evidence. (*Id.* at 4.) In August 2014, during discovery in this case, a street file concerning the 1984 investigation of the fire deaths by detectives in CPD's Area Three Violent

---

[1] The street file was one of at least ten types of evidence that Fields argued at trial were withheld from him by the individual defendants in violation of his due process rights. Other evidence included police notes contained in the street file but never found; detectives' failure to take notes concerning the results of photo arrays; and detectives' failure to document what photos were used during photo arrays.

Crimes Unit (Area 3)[2] was found in the CPD records warehouse and produced to Kluppelberg. (*Id.* at 3; Dkt. 547 at 13.)[3]

Kluppelberg now seeks to estop the City from contesting that it had a policy or practice of withholding material exculpatory and/or impeachment information.[4] He argues that, "having already litigated the street file *Monell* claim and lost, the law now prevents the City from re-litigating the same issue that was decided against it." (Dkt. 586 at 2.)

## LEGAL STANDARD

Offensive collateral estoppel, also known as issue preclusion, is when a plaintiff seeks to estop a defendant from relitigating issues that the defendant previously litigated and lost in a prior proceeding. *Parklane Hosiery Co., Inc.* v. *Shore*, 439 U.S. 322, 329, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). Issue preclusion is generally appropriate if (1) the issue sought to be litigated is the same as the one involved in the prior action; (2) that issue was actually litigated in the first action; (3) the determination of the issue was essential to the final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action. *Chicago Truck Drivers* v. *Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997).

Collateral estoppel is properly applied to factual inferences drawn from a general jury verdict where such findings are necessarily implied by the prior verdict. *Ohio-Sealy Mattress*

---

[2] Referred to here as the "New File."

[3] In both cases, the plaintiffs retained the same expert (Michael Brasfield), and deposed the same witness designated by the City (James Hickey).

[4] Kluppelberg does not appear to argue, and the court does not find, that the *Fields* jury reached any conclusion regarding whether the City had a policy or practice of fabricating evidence, or coercing suspects or witnesses. As such, the City remains free to contest any claims regarding such policies or practices.

*Mfg. Co.* v. *Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978); *see also Ag Servs. of Am., Inc.* v. *Nielsen*, 231 F.3d 726, 731 (10th Cir. 2000). Inferences are implied by a prior verdict if they are necessary to support that verdict, and a rational jury thus must have made such findings. *Id.*

If the four prerequisites for collateral estoppel are met, the court must then consider whether the use of collateral estoppel would be unfair to the defendant. *See Parklane*, 439 U.S. at 331. Collateral estoppel "should not be applied unless it is clear that no unfairness will result to the party that would be estopped from re-litigating the issue." *Goodwin* v. *Board of Trustees of Univ. of Ill.*, 442 F.3d 611, 621 (7th Cir. 2006). When considering fairness, courts in this district have considered whether "(1) the defendant may have been sued in the first action for 'small or nominal damages' for which 'he may have [had] little incentive to defend vigorously'; (2) the 'judgment relied upon as a basis for estoppel is itself inconsistent with one or more previous judgments in favor of the defendant'; or (3) 'the second action affords the defendant procedural opportunities . . . unavailable in the first action that could readily cause a different result." *Petit* v. *City of Chicago*, 90 C 950, 2001 WL 914457, at *5–6 (N.D. Ill. Aug. 13, 2000) (quoting *Parklane*, 439 U.S. at 330).

The City argues that it is impossible for the court to determine from a general jury verdict whether the issues are the same and whether determination of the issue was essential to the final judgment in the first action. The City further argues that, even if the requirements for collateral estoppel are met, it would be unfair to apply it here.

## ANALYSIS

To establish that the issues are the same and were necessarily decided, Kluppelberg must show that the jury in *Fields*, in order to have reached its verdict, had to have found that the City had a policy or practice of withholding material exculpatory and/or impeachment evidence,

specifically street files.[5] (In other words, if the jury could have found that the policy was to withhold a different type of evidence not at issue in this case, the court could not conclude that the verdict depended on street files.) The court finds that Kluppelberg has met that burden.

That the jury must have found a policy or practice of withholding evidence is clear from the jury instructions in *Fields*, which stated that, to succeed on his *Monell* claim, Fields must prove by a preponderance of the evidence that "it was the policy of the City of Chicago to conceal material exculpatory and/or impeachment evidence." (*See* Dkt. 600-1, at 14.)

The City argues that it was not necessary for the jury to find specifically that the withheld evidence was street files. The City argues it might have been other exculpatory evidence Fields claimed the individual defendants withheld, arguing that the fact that there was a general verdict in *Fields* means the jury may have "only found Fields' rights were violated by detectives' failure to record the details of photo arrays," or by withholding one of the other ten types of evidence presented, rather than the street file. (Dkt. 599 at 8.) Kluppelberg counters that all of Fields's evidence in support of the policy or practice claim solely addressed the maintenance of street files.

With respect to the jury's *Monell* finding, there is no other policy or practice that would have supported the verdict, because all the *Monell* evidence and argument related to CPD's use of street files.[6] In fact, Fields never suggested that the ten other types of evidence that supported

---

[5] Because Kluppelberg argues in his reply brief that "the evidence presented on the *Monell* claim related exclusively to the City's use of street files," (dkt. 600, at 1), the court construes his request for collateral estoppel to be similarly limited.

[6] The City appears to make an additional argument that the issues are not necessarily the same because there are differences in the detective areas and the time frames referred to in the street files in each case, which it argues could have been crucial to the jury's finding. In *Fields*, Brasfield, Kluppelberg's and Fields's police practices expert, reviewed homicide files found in the basement of Area 1, which covered Areas 1 through 4 from 1983 to 1989, and 1999 to 2006. Here, Brasfield reviewed homicide files found in the CPD warehouse from Area 3, dated 1983 to 1991. The City claims that these

his due process claims were also evidence for his *Monell* claim. (*See* Dkt. 600-2, at 135:10–11 ("The last claim in the case I want to talk about is the city's policy claim. This is the street file claim."); *see also* Dkt. 600-4, at 248–49 ("Let's talk about the policy claim . . . The policy problem is the [police] didn't replace the decentralized system. So the detective's notes never got turned over because the subpoena people didn't know what to do. And then of course they missed the real pointed [sic] which was the policy didn't cover the street file.").)

As such, while Fields may have proven additional constitutional violations by the individual defendants with other exculpatory evidence, for his *Monell* claim he must have proven that the City had a policy or practice concerning street files, because that is the only evidence he presented for it. Thus, because determining whether the City had a policy or practice of withholding street files was necessary to the jury's finding of liability, the general verdict in *Fields* is sufficient for purposes of collateral estoppel.

The City additionally argues that applying collateral estoppel would be unfair, and therefore the court should exercise its discretion not to do so. (Dkt. 599, at 11–15.) The City does not argue the *Fields* litigation did not have sufficiently high stakes, nor that the City has additional procedural opportunities it lacked in *Fields*. Rather, the City argues collateral estoppel would be unfair because (1) there are inconsistent rulings pertaining to the street files issue, and

---

differences are significant because they could be critical to determining the policy the jury actually found in *Fields*, and whether that policy has any relevance to the instant case. (Dkt. 599 at 7.) As to the difference in the areas at issue, James Hickey, the Rule 30(b)(6) witness designated by the City in both cases, described in *Fields* how he conducted an audit of investigative files throughout each CPD area and determined that file production problems were present citywide. (Dkt. 586-6, at 17:7–19:5; *see also* Dkt 586-2, at 149:5–150:17 (stating that practices across the different areas Dickey audited were similar and the major difference was the terminology used).) The difference in the overlapping time frame is also not a material difference. There has been no suggestion in this case or in *Fields* that the City's policies or practices were different from 1999 to 2006 than they were from 1983 to 1989. (*See* Dkt. 600-6 at 107:20–108:2 (policies regarding investigative files unchanged through the 2000s); Dkt. 586-6 at 40:17-23.) Nor has the City argued that the policy or practice changed between when *Fields* was convicted and when *Kluppelberg* went to trial.

Thus, the similarity between the policy or practice issue in *Fields* and the policy or practice issue raised by Kluppelberg is sufficient for purposes of collateral estoppel when applying a general verdict.

(2) the jury would be unfairly prejudiced against the individual defendants. (*Id.* at 13–14.) Neither of these arguments is persuasive.

The City points to two rulings it argues are inconsistent with the jury verdict in *Fields*.[7] The first, *Palmer* v. *City of Chicago*, 806 F.2d 1316, 1324 (7th Cir. 1986), is inapposite. As an initial matter, it focuses on a judicial ruling regarding attorney's fees, not a jury verdict. Moreover, the Seventh Circuit did not hold that there was no policy or practice of withholding exculpatory material found in street files, but rather that the street files examined in that case contained no exculpatory material. This is a different issue than the one in this litigation. The second case cited by the City is the original jury verdict in *Fields*, which found no *Monell* liability. *See Fields* v. *City of Chicago*, 10 C 1168, Dkt. 695 (May 1, 2014). The City's argument ignores two important facts, however: (1) the verdict was vacated and the *Monell* case retried, and (2) the court granted a new trial on the *Monell* claims because it found that Fields was "unfairly prejudiced at trial by rulings the Court made during the discovery process that effectively prevented him from ascertaining whether evidence . . . had been withheld from criminal defense attorneys in other cases." *See Fields*, 10 C 1168, slip op at 10 (April 7, 2015). Thus, because the court in *Fields* determined that its earlier ruling had "rendered it impossible for Fields to attempt to show that the Chicago Police Department's practice of file maintenance and disclosure affected anyone other than him," *id.*, it granted a new trial, which resulted in the verdict at issue here. Thus, while the prior verdict in *Fields* was inconsistent with the final verdict in *Fields*, it was vacated explicitly because the court had erred in a way that prevented Fields from having a fair opportunity to make his policy and practice case, therefore rendering the "inconsistency" essentially moot.

---

[7] The court does not address the third case cited by the City, *Wardell* v. *City of Chicago*, 98 C 8002, 2001 WL 1345960 (N.D. Ill. Oct. 31, 2001), because it does not involve the use of street files.

The City additionally argues that granting collateral estoppel will cause the jury to be prejudiced against the individual defendants. The court disagrees. Kluppelberg will still have to convince the jury that individual defendants had knowledge of the New File's existence. Additionally, individual defendants will have the opportunity to argue that the non-production of the New File was not caused by the policy or practice in question. Finally, the defendants may propose a jury instruction to help limit potential prejudice if necessary. The court does not conclude that granting collateral estoppel against the City on whether it had a policy or practice of withholding exculpatory material contained in street files will be unfair to the individual defendants.

**ORDER**

For the foregoing reasons, Kluppelberg's motion to apply collateral estoppel barring the City from arguing that it did not have a policy or practice of withholding material exculpatory and/or impeachment evidence contained in street files is granted.

Date: August 7, 2017

_____
U.S. District Judge Joan H. Lefkow