IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JAMES KLUPPELBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JON BURGE, LEONARD ROLSTON #11935, | ) | Case No. 13 CV 3963 |
| WILLIAM KELLY #3644, DETECTIVE L. | ) | |
| TUIDER #5648, Catherine Alletto | ) | Hon. Joan H. Lefkow |
| Brown, as Special Representative of | ) | |
| the Estate of William Alletto, | ) | |
| as-of-yet UNKNOWN | ) | JURY TRIAL DEMANDED |
| EMPLOYEES OF THE CITY OF CHICAGO and | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

NOW COMES Plaintiff, JAMES KLUPPELBERG, by and through his attorneys, LOEVY & LOEVY, complaining of Defendants, JON BURGE, LEONARD ROLSTON #11935, WILLIAM KELLY #3644, DETECTIVE L. TUIDER #5648, Catherine Alletto Brown, as Special Representative of the Estate of William Alletto, as-of-yet UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO (collectively "Defendants"), and THE CITY OF CHICAGO, and alleges as follows:

**Introduction**

1. Plaintiff James Kluppelberg spent more than two decades in prison for an arson-murder that he did not commit.

2.    Mr. Kluppelberg was convicted after the police manipulated witnesses, fabricated evidence and withheld information that would have demonstrated his absolute innocence of this crime.

3.    Despite Mr. Kluppelberg's innocence, Chicago police officers beat a false confession out of him, hitting him so violently that he was urinating blood.  The trial court ultimately suppressed Mr. Kluppelberg's confession, finding that it was "obvious" that Mr. Kluppelberg had been severely mistreated, but not before the confession was used by the Defendants to set in motion Mr. Kluppelberg's wrongful arrest and prosecution.

4.    To corroborate Mr. Kluppelberg's false confession, the Defendants coerced false witness statements allegedly establishing how Mr. Kluppelberg purportedly set fire to a home, in which six people were killed.  The Defendants knew that these statements were absolutely false and the by-product of their coercion, but nonetheless withheld that information from Mr. Kluppelberg.

5.    Additionally, to buttress the false confession and witness statements, the Defendants conspired to fabricate arson evidence.  Although the original fire investigators found that the origin and cause of the fire could not be determined because of the complete destruction of the building and the absence of

2

any accelerant, the Defendants ignored this scientifically sound conclusion and instead manufactured bogus "findings" to corroborate the false witness statements. Just as with the confession and statements, the Defendants knew that this evidence was false but nonetheless used it to wrongfully convict Mr. Kluppelberg.

6.    Indeed, well before Mr. Kluppelberg's arrest and conviction, the Defendants were aware of a likely, alternative suspect for the arson. This person had admitted to setting fire to a nearby home and to possibly having set the fire for which Mr. Kluppelberg was ultimately arrested and wrongfully convicted. Despite the obvious exculpatory value of this information, it was never disclosed to Mr. Kluppelberg or his defense attorneys nor even to the prosecutor. It was intentionally buried in violation of Mr. Kluppelberg's constitutional rights.

7.    As a result of the Defendants' misconduct, Mr. Kluppelberg was wrongfully convicted of arson and murder and sentenced to life in prison.

8.    After serving 24 years in prison for crimes that he did not commit, Mr. Kluppelberg was eventually released when the State moved to dismiss all charges against him. He brings the instant action to seek redress for the violation of his rights.

## Jurisdiction and Venue

9.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

10.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(b).  The events giving rise to this complaint occurred in this judicial district.

## The Parties

11.   Plaintiff is a 47 year-old father of three children. Prior to his wrongful arrest for this murder, Plaintiff worked in home remodeling and repair for Chicago Standard Decorating and Remodeling, and for his own company.  Since his release, Plaintiff has been working as a machine assistant.

12.   Defendants Jon Burge, Leonard Rolston #11935, William Kelly #3644, Detective L. Tuider #5648 are current or former police officers with the City of Chicago Police Department ("Department").  Each of the Defendant Officers is sued in his individual capacity, and each acted under color of law and in the scope of his employment in engaging in the actions alleged in this Complaint.

13.   Defendant Catherine Alletto Brown is sued in her capacity as Special Representative of the Estate of William Alletto.  At time relevant to this complaint, William Alletto

4

was an employee of the Chicago Fire Department and was acting under color of law and in the scope of his employment.[1]

14. Defendant City of Chicago is a municipal entity that employs or employed the Defendants, including the as-of-yet unknown Defendants.

## The Fire

15. On March 24, 1984, a fire consumed the house at 4448 South Hermitage, killing six people and injuring another. In addition, the fire burned the two adjacent houses.

16. Plaintiff had absolutely nothing whatsoever to do with setting fire to the home. To the contrary, on the night of the fire, Mr. Kluppelberg had been hanging out with other people at his then-girlfriend Dawn Gramont's apartment.

17. At the time of the fire, the Bomb and Arson Unit of the Chicago Police Department – then the official and only fire investigation unit in the City – conducted an investigation. The detectives involved in the investigation concluded that the cause and origin of the fire could not be determined due to the extensive burning and collapse of the building. Further, tests of the debris from the fire to determine whether a fire accelerant was used came back negative. Therefore, in April

---

[1] Unless otherwise stated, subsequent references to "Defendants" in this complaint extends to the actions taken by William Alletto as opposed to actions taken by Special Representative Catherine Alletto Brown.

1984, the police department closed the case as "apparent accidental fire deaths."

## Plaintiff's False Confession

18. After the police department closed the case, there was no additional investigation into the fire for nearly four years, when another man was arrested and charged with burglary, theft, and violation of probation. When that man was arrested, he was on probation and had two prior burglary charges.

19. In an effort to avoid prison time on his own charges, the man referenced in the preceding paragraph falsely implicated Mr. Kluppelberg in the fire at 4448 South Hermitage that had occurred years earlier.

20. Thereafter, in January 1988, Mr. Kluppelberg was arrested and charged with arson and murder stemming from the 1984 fire.

21. When Mr. Kluppelberg spoke to the police, rather than listen to his protestations of innocence, the Defendants severely beat him: handcuffed behind his back and completely defenseless, the Defendants threw Mr. Kluppelberg onto the floor and punched him in the back and kicked him in the kidney area. The Defendants would not relent until Mr. Kluppelberg falsely confessed to having started the fire at 4448 South Hermitage.

22. As a result of this vicious attack by the Defendants, Mr. Kluppelberg was urinating blood; he was taken to the doctor

after the guards in the jail found him doubled over in the bathroom.  The doctor who treated Mr. Kluppelberg diagnosed him with trauma and a hematoma to his lower back and kidneys.

23.  Faced with this evidence, the trial court suppressed the statement that the Defendants beat out of Mr. Kluppelberg. The court held that it was "obvious" that Mr. Kluppelberg "was mistreated by the police."

### The Defendants Coerce Witnesses

24.  Mr. Kluppelberg, however, was not the only person who was mistreated by the Defendants.  Indeed, rather than search for the true perpetrator, the Defendants threatened and coerced witnesses into falsely implicating Mr. Kluppelberg.

25.  When Mr. Kluppelberg was arrested, his then-girlfriend, Dawn Gramont, was also taken to the police station and held in custody there until she testified before the grand jury.  Ms. Gramont told the Defendants that Mr. Kluppelberg could not have started the fire at 4448 South Hermitage because he was with her that night.  The Defendants, however, were not happy with that truth.  As a result, when Ms. Gramont refused to go along with the Defendants' fabricated story inculpating Mr. Kluppelberg, the Defendants pushed her head against the door, hit her with a flashlight and threatened to hurt her children. The Defendants then told Ms. Gramont what they wanted her to say – *i.e.*, that Plaintiff was involved in the fire.  Because she

7

was scared, Ms. Gramont parroted back the Defendants' fabricated story to the grand jury, but as soon as she was released from custody she went to the Office of Professional Standards ("OPS") to lodge a complaint.

### The Defendants Conspire
### to Fabricate Arson Evidence

26. In addition to beating Mr. Kluppelberg and threatening witnesses, the Defendants also fabricated arson evidence to falsely implicate Mr. Kluppelberg in the crime.

27. In March 1984, the Bomb and Arson Unit of the Chicago Police Department was charged with investigating fires and, as such, investigated the fire at 4448 South Hermitage. Although the Bomb and Arson Unit found that the cause and origin of the fire at 4448 South Hermitage could not be determined due to the extensive destruction of the building and the absence of an accelerant, the Defendants refused to accept this scientifically sound conclusion.

28. Instead, the Defendants conspired to manufacture arson evidence to corroborate Mr. Kluppelberg's false confession and the fabricated witness statements. To do so, the Defendants enlisted the help of Chicago Fire Department employees Francis Burns and William Alletto.

29. In March 1984, Burns and Alletto were part of an organization, the Office of Fire Investigations ("OFI"), which

had yet to become operational. Burns and Alletto purportedly went to 4448 South Hermitage with several apprentice fire investigators and performed a training exercise. Neither Burns nor Alletto took notes. Nor did either make a contemporaneous report of their findings. Nonetheless, four years later, Burns and Alletto asserted that based on their experience and the alleged burn patterns at the house, they determined that the fire was an arson. Burns and Alletto knew that their "findings" were scientifically indefensible and wholly fabricated, but did not disclose that fact to Mr. Kluppelberg or his defense attorney.

### The Defendants Withhold
### Critical Exculpatory Evidence

30. Not only did the Defendants fabricate evidence against Mr. Kluppelberg, they also withheld evidence that would have exculpated him; in particular, the confession of an alternate offender.

31. About 15 hours before the fire at 4448 South Hermitage broke out, a house nearby at 4504 South Marshfield was burned to the ground. The fire communicated to the buildings adjacent to 4504 South Marshfield.

32. The parallels between the fire at 4504 South Marshfield and 4448 South Hermitage are striking.

33.   A woman admitted to setting the fire at 4504 South Marshfield, for which she was ultimately convicted. She said that she spent the next 12 hours or more wandering around to different bars on Ashland Avenue.

34.   She also told the Defendants that she "may have set" the fire at 4448 South Hermitage but "[b]ecause of her intoxicated condition" she could not remember specifically having set it.

35.   None of this critical information was known to Mr. Kluppelberg at the time of his criminal trial.  Despite the manifest exculpatory value, the Defendants failed to disclose either the fact of this confession or the attendant police report.  This failure to disclose is particularly egregious since a number of the Defendants responsible for investigating the fire on Hermitage were also responsible for investigating the fire on Marshfield.

## The Malicious Prosecution

36.   In July 1989, Plaintiff stood trial for arson and murder.

37.   Based upon the witnesses' coerced testimony, and the manufactured arson evidence, and without access to the exculpatory police report that demonstrated that someone other than Mr. Kluppelberg was responsible for this crime, Mr. Kluppelberg was wrongfully convicted of arson and murder.

10

38.   During pretrial and trial proceedings, the Defendants committed perjury, including stating that Mr. Kluppelberg was not beaten, that Ms. Gramont was not threatened and by outright fabricating arson evidence.

39.   Mr. Kluppelberg was sentenced to life in prison.

### Plaintiff's Exoneration

40.   Throughout his incarceration, Mr. Kluppelberg was steadfast in his efforts to prove his innocence.

41.   In 2008, Mr. Kluppelberg located previously undisclosed evidence establishing his innocence.

42.   Faced with this evidence, the State dismissed all charges against Mr. Kluppelberg in a manner indicative of his innocence.  After spending 24 years incarcerated for a crime that he did not commit, Plaintiff was finally free.

### Plaintiff's Injuries

43.   Mr. Kluppelberg spent more than two decades in prison for a crime that he did not commit.  Plaintiff must now attempt to make a life for himself outside of prison without the benefit of 24 years of life experiences, which normally equip adults for that task.

44.   Additionally, the emotional pain and suffering caused by losing nearly 24 years in the prime of life has been substantial.  During his wrongful incarceration, Mr. Kluppelberg was stripped of the various pleasures of basic human experience,

11

from the simplest to the most important, which all free people enjoy as a matter of right.  He missed out on the ability to share holidays, births, funerals and other life events with loved ones, the opportunity to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

45.  As a result of the foregoing, Plaintiff has suffered tremendous damage, including physical suffering, all proximately caused by Defendants' misconduct.

## Count I -- 42 U.S.C. § 1983

### Due Process

46.  Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

47.  As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

48.  In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, wrongfully coerced incriminating statements, and fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution.  Absent the totality of this misconduct, Plaintiff could not and would not have been prosecuted.

49. The Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

50. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to, emotional distress more fully alleged above.

51. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

52. The misconduct described in this Count was undertaken by employees and agents of the City of Chicago, including but not limited to the Defendants, pursuant to the policies and practices of the Chicago Police Department and Chicago Fire Department to pursue wrongful convictions through profoundly flawed investigations. This includes but is not limited to coercing false statements through violent and unduly coercive interrogations, which include threats and violence, consistent with the manner in which Plaintiff and Ms. Gramont were interrogated. It also includes system-wide use of bogus arson science to manufacture false, inculpatory evidence, such as relying on "burn patterns," which were debunked well before the fire for which Mr. Kluppelberg was wrongfully convicted.

53.   In this way, the City of Chicago violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

54.   These widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department and Chicago Fire Department, were able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

55.   The widespread practices described in the preceding paragraphs were allowed to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

## Count II – 42 U.S.C. § 1983

### Failure to Intervene

56.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

57.   In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.

58.   As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional

14

distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

59.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

60.  The misconduct described in this Count was undertaken pursuant to the City of Chicago's policies and practices in the manner described in the preceding paragraphs.

## Count III -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

61.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

62.  After the murder at issue, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

63.  Independently, before and after Plaintiff's conviction, each of the Defendants further conspired, and continued to conspire, to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

64.  In this manner, the Defendants, acting in concert with other unknown co-conspirators, including persons who are not

members of the Chicago Police Department or Chicago Fire Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

65. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

66. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

67. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

68. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago in the manner described more fully in preceding paragraphs, and was tacitly ratified by policymakers for the City of Chicago with final policymaking authority.

### Count IV -- 42 U.S.C. § 1983

### Supervisor Liability

69. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

70. The constitutional injuries complained of here were proximately caused by a pattern and practice of misconduct,

which occurred with the knowledge and consent of those of the Defendants who acted in a supervisory capacity, such that these officers personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

71. Defendant Burge was personally involved in the investigation at issue here and made public comments falsely attributing the crime to Mr. Kluppelberg. He also supervised some, if not all, of the Defendants who committed the constitutional violations at issue here.

72. Defendant Burge knew that the practice at Area Three and of these Defendants was to falsely inculpate suspects by coercing and fabricating false, incriminating statements. Nonetheless, Defendant Burge turned a blind eye to this practice, and let it continue under his supervision.

73. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

74. The misconduct described in this Count was undertaken pursuant to the City's policies and practices in the manner more fully described above.

75.  As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

### Count V– State Law Claim

### Malicious Prosecution

76.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

77.  Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

78.  Defendants accused Plaintiff of criminal activities knowing those accusations to be without genuine probable cause, and made statements to the police and/or prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

79.  Defendants also fabricated evidence and failed to disclose the manner in which that evidence was fabricated. Additionally, the Defendants withheld evidence that would have proven Plaintiff's innocence.

80. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

81. As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as more fully alleged above.

### Count VI -- State Law Claim

### Respondeat Superior

82. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

83. In committing the acts alleged in the preceding paragraphs, Defendants were members and agents of the Chicago Police Department and/or Chicago Fire Department, acting at all relevant times within the scope of their employment.

84. Defendant City of Chicago is liable as the principal for all torts committed by its agents.

### Count VII -- State Law Claim

### Indemnification

85. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

86. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

87.   The Defendants are or were employees of the Chicago Police Department and/or the Chicago Fire Department, and acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, JAMES KLUPPELBERG, respectfully requests that this Court enter judgment in his favor and against the Defendants, JON BURGE, LEONARD ROLSTON #11935, WILLIAM KELLY #3644, DETECTIVE L. TUIDER #5648, CATHERINE ALLETTO BROWN, as Special Representative of the Estate of WILLIAM ALLETTO, and AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO AND THE CITY OF CHICAGO, and awarding compensatory damages, costs and attorneys' fees, along with punitive damages as allowed by law along with whatever additional relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, JAMES KLUPPELBERG, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/Elizabeth Mazur

Arthur Loevy
Jon Loevy
Michael Kanovitz
Gayle Horn
Elizabeth Mazur
Katie Roche
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Ph: (312) 243-5900
Fx: (312) 243-5902

<u>**CERTIFICATE OF SERVICE**</u>

  I, Elizabeth Mazur, an attorney, certify that on August 8, 2017, I filed a copy of the attached Third Amended Complaint via the Court's electronic filing system and thereby served a copy on all counsel of record.

<u>/s/ Elizabeth Mazur</u>