IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JAMES KLUPPELBERG, | ) | |
| | ) | |
| Plaintiff, | ) | 13 CV 3963 |
| | ) | |
| v. | ) | JUDGE LEFKOW |
| | ) | |
| JON BURGE et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO STRIKE AND FOR OTHER RELIEF
RELATING TO DEFENDANTS' UNJUSTIFIED LATE DISCLOSURE
OF NEW WITNESSES AND AFFIDAVITS**

Plaintiff James Kluppelberg, by and through his counsel, respectfully moves this Court for

an order to strike Defendants' disclosure of Victoria Sircher and for other relief relating to

Defendants' Unjustified Late Disclosure of New Witnesses and Affidavits, and in support states:

**Introduction**

On the eve of the latest trial date, the Defendants disclosed a brand new witness, Victoria

Sircher, along with salacious (and entirely false) affidavits from Sircher and another witness in this

case, Bonnie Hileman. *See* Ex. A, Sircher Declaration, Ex. B, Hileman Declaration.

Hileman is Plaintiff's ex-wife. Unlike Sircher, Hileman was timely disclosed in this case, and

she gave a deposition in 2015. In that deposition Hileman testified, among other things, that

Plaintiff never told her that he committed the fire at 4448 S. Hermitage ("Hermitage Fire") and that

while she paid for Plaintiff's criminal defense attorney back in 1988, Plaintiff never made any

promise that she would be paid back.

Two years later, on the eve of this trial, defense counsel prepared and typed an affidavit for

Hileman to sign that is completely at odds with her prior sworn deposition testimony. This typed

affidavit thus plainly exposes Hileman to perjury charges. Most significantly, and in opposition to

her deposition testimony, Hileman's newly typed affidavit states that Plaintiff *did* confess to her not only that he started the Hermitage Fire, but also that he supposedly self-inflicted the injuries that he sustained during his interrogation. The Affidavit then goes a step further, listing all sorts of terrible (but plainly irrelevant) accusations about her ex-husband.

In addition to Hileman's perjured affidavit, the Defendants also disclosed an affidavit they prepared and typed up for a close associate of Hileman, namely, Plaintiff's estranged sister, Victoria Sircher. Sircher has been known to defense counsel throughout this case, but the Defendants never bothered to interview or depose her during the discovery period. Sircher repeats Hileman's lies, throwing any and all kind of dirt at Plaintiff—none of which is admissible.

As far as Plaintiff can tell without formal discovery, the affidavits arose after Hileman unsuccessfully tried to shake Plaintiff down for $10,000—a *modus operandi* Hileman has repeatedly used over the course of Plaintiff's criminal and civil case.[1]

These belated disclosures raise a number of issues that require this Court's adjudication. First, the disclosure of Victoria Sircher as a witness is untimely. On that basis alone, the Defendants' disclosure should be stricken and Sircher should be barred from testifying. Second, disclosure issues aside, the new proffered testimony from these witnesses has no relevance to any issue to be decided by the jury, and should be barred on that basis as well. Third, the new proffered testimony from Hileman is such a sea change from her prior deposition testimony that Plaintiff must be afforded the opportunity to conduct discovery in order to adequately cross examine Hileman on it at trial.

---

[1] For example, Hileman tried to bribe Michelle Brittain during Plaintiff's criminal proceedings, offering her money in exchange for Brittain's refusal to testify against Plaintiff; Brittain refused. Likewise, Hileman bribed the Cook County Sheriff's with cocaine to falsely secure Plaintiff's release from jail; and she bribed the deputies in Judge Morgan's courtroom with money so that she and Plaintiff could have conjugal visits during Plaintiff's criminal proceedings.

**Argument**

**I.     Victoria Sircher Should Be Barred Because She Was Not Properly Disclosed and the Failure Was Neither Justified Nor Harmless Under the Seventh Circuit's Standard**

"[T]he goal of discovery . . . is to enable both sides to make effective preparation for trial" and avoid "unfair surprise." *Zingerman v. Freeman Decorating Co.*, No. 02 C 6050, 2003 WL 22057032, at *4 (N.D. Ill. Sept. 3, 2003). To that end, Rule 26 requires the parties to disclose the name and identity of any potential witnesses, as well as to timely supplement its disclosures where incomplete. "Supplementation of initial disclosures after the close of discovery . . . cannot be considered 'timely.'" *Mitchell v. Iowa Interstate RR Ltd.*, No. 07-1351, 2010 WL 2089305, at *2 (C.D. Ill. May 25, 2010).

Failure to timely disclose witnesses is sanctionable under Rule 37. That Rule provides that if a party fails to disclose or supplement a disclosure, "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37; s*ee also Owens v. Ellson*, No. 13 CV 7658, 2017 WL 1251694, at *2 (N.D. Ill. Mar. 31, 2017). The Seventh Circuit has identified four factors relevant to a court's determination about whether the failure to disclose was justified or harmless: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence earlier. *See System Dev. Integration, LLC v. Computer Scis. Corp.*, No. 09 CV 4008, 2012 WL 2953063, at *1-3 (N.D. Ill. July 19, 2012). The burden is on the offending party to justify non-disclosure or to show that non-disclosure was harmless. *Benders v. Bellows & Bellows P.C.*, No. 04 C 7326, 2009 WL 1177066, at *5 (N.D. Ill. April 29, 2009).

When Defendants emailed over the new affidavits on the eve of the upcoming trial (many months after the trial was originally supposed to have started), Defendants offered no justification whatsoever for the late disclosure of Sircher. The discovery period in this case spanned more than

two full years, and it involved extensive litigation and conferral over Defendants' Rule 26(a)(1) disclosures. In particular, Plaintiff moved to compel the Defendants to comply with Rule 26, and identify among the 168 witnesses they listed, those persons who had knowledge and who might testify, explaining that Plaintiff "intend[ed] to depose the witnesses on whom the Defendants will rely at trial to properly prepare his case" and avoid surprise. Dckt No. 171, Pltf. Mot. Compel, at 2. Judge Valdez agreed that the Defendants' Rule 26(a)(1) disclosures were deficient, and ordered the Defendants to "undertake a reasonable investigation" and review their Rule 26(a)(1) disclosures. Dckt No. 178. Although the Defendants continued to identify over 100 people as witnesses in those disclosures, including Plaintiff's family, none of the subsequent disclosures that the Defendants served ever included Plaintiff's sister, Victoria Sircher. There is no justification for this belated disclosure (and if Defendants articulate one for the first time in reply, Plaintiff reserves the right to respond to it).

Nor should Defendants be permitted to assert that they did not know about Sircher's alleged knowledge until recently. As always, the Defendants made the choice to investigate some members of Plaintiff's family—*e.g.*, his ex-wife Donna Kluppelberg, who had no knowledge of the fire, or Plaintiff's arrest or prosecution—and not others. The Defendants' focus on Plaintiff's ex-wife to the exclusion of his sisters was likely because they thought a divorcee might share whatever dirty laundry she knew about Plaintiff. But the Defendants certainly knew about Sircher and had every opportunity to depose her. At Plaintiff's deposition, defense counsel expressly asked Plaintiff about his relationship with Sircher. Sircher was also identified as one of the people present when Plaintiff was arrested by Defendant Rolston and taken to the police station under the false pretense of identifying possible perpetrators of the car fires. Although the reason for and nature of Plaintiff's contact with Rolston on the night of his arrest is very much in dispute, the Defendants still chose not to identify or investigate any knowledge that Sircher may have had. Finally, Sircher was

4

identified as someone Dr. Savarese spoke to and relied on in drafting his 1989 mitigation report for Plaintiff's sentencing. *See* Dckt No. 435-53, Savarese Report. The Defendants nonetheless elected to do no investigation into Sircher's knowledge.

Defendants' belated disclosure is not only unexcused, it is deeply prejudicial to Plaintiff. Sircher is a new witness making explosive and far reaching false allegations about Plaintiff, which she never asserted against him in the more than 30 years since this crime occurred or even in the four years since this litigation has been pending.[2] In particular, Sircher's affidavit alleges somewhat ambiguously that after he escaped Plaintiff told her "he knew he did *it* but he didn't want to go back to prison for the rest of his life" and that Plaintiff confessed to their mother that he self-inflicted his injuries to his back and kidneys. Ex. A, ¶¶ 3, 5.[3]

Assuming the "it" in the affidavit's "confession" paragraph refers to the murder rather than the escape, if Plaintiff had known during discovery that Sircher would say such things at trial in this case, he would have spent considerable time and effort developing a record upon which she could be impeached. For example, Plaintiff would have conducted discovery on Sircher's relationship with Hileman, Sircher's financial motivations to lie, how her very serious substance abuse problems affect her veracity and memory, and her interactions with Hileman and defense counsel who typed up this affidavit. Plaintiff would have also conducted interviews of witnesses who could undermine Sircher's account, including people who knew Sircher and Plaintiff during their childhood, people who were

---

[2] Sircher's silence up until now is particularly striking given that this case has been investigated over the course of more than three decades—the original 1984 criminal investigation, the 1988 re-investigation, the post-conviction investigation conducted by the State, and the two-year discovery period in this case. It was not until defense counsel spoke to her several weeks before this trial that she for the first time claimed to have relevant knowledge.

[3] As described more fully below, this statement is inadmissible hearsay because Sircher does not contend she heard Plaintiff confess, or even that she heard her stepfather and mother talking about Plaintiff confessing to self-inflicting his injuries. Instead, it is simply information that she allegedly knows from an unidentified source.

present when Sircher alleges that Plaintiff confessed to starting the fire, and people with knowledge of other false allegations Sircher has made about supposed molestation. *See System Dev. Integration, LLC*, 2012 WL 3953063, at *3 ("SDI did not have the opportunity to depose CSC's newly-disclosed witnesses, or to question CSC's witnesses regarding the newly-disclosed financial information."). Plaintiff will be seriously prejudiced if Sircher is allowed to hurl the false and inflammatory accusations at him at trial that Sircher makes (for the first time ever) in her late-July 2017 affidavit.

Moreover, prior to Sircher's (and Hileman's) affidavits, no witness has ever once previously alleged that Plaintiff supposedly self-inflicted his injuries—a feat only a contortionist could master. Not only has Plaintiff, therefore, not conducted any discovery to rebut this belated fabrication, but also it is not even clear from Sircher's affidavit how she learned this information—in short, it is not even clear at this point what discovery Plaintiff needs to conduct. On that score, Sircher alleges that Plaintiff called home while in jail (on a monitored line) and confessed that he self-inflicted his wounds not to Sircher, but to his mother, who then told his stepfather. Ex. A, ¶ 5. Sircher does not say that she was present on the phone when Plaintiff supposedly admitted he injured himself nor does she even say that she was present when her mother spoke to her stepfather about it. Notwithstanding the obvious hearsay problems, this allegation is a good example of how unwieldy discovery could be to try to rebut Sircher's allegations: Plaintiff would first need to depose Sircher, and then based on that, follow up with written and/or oral discovery, potentially identifying witnesses who could disprove her allegations.

But Plaintiff is less than two weeks away from the start of trial and such discovery cannot come close to being completed by August 21, 2017—particularly, while counsel also takes the ordinary steps necessary to prepare for trial. *See System Dev. Integration, LLC*, 2012 WL 2953063, at *3 ("Moreover, if the Court were allow CSC to use the newly-disclosed evidence, it would need to grant SDI an opportunity to depose additional witnesses and possibly allow SDI's expert to issue a new

damages report. This would certainly disrupt the parties' preparation for the impending trial, and would likely result in yet another request for an extension of the trial date for this case, which has been pending for more than three years."); *see also Thomas v. Big Lots Stores, Inc.*, No. 10 CV 342-JEM, 2016 WL 1756366, at *2-3 (N.D. Ind. May 3, 2016) (finding incurable prejudice where there was no time to depose witnesses prior to the trial). There is no way that prejudice of this late disclosure can be cured without disrupting the trial date.

In addition, having Sircher testify would unnecessarily and improperly complicate the trial with this newly-injected sideshow. In the short time that has passed since Defendants disclosed Sircher's affidavit, Plaintiff's counsel has been able to interview at least one witness who undermines Sircher's affidavit. See Ex. C, Declaration of Laura Cook. As the Court can see from reviewing this affidavit, Cook is another of Plaintiff and Sircher's sisters, and she has given a declaration that confirms what Plaintiff is contending: that further discovery would prove that Sircher is lying about everything. *Id.* Plaintiff would have to discover, and then put on this evidence to meet Sircher's accusations, but all of it would be a sideshow to an already long trial with multiple issues.

Finally, although Plaintiff does not contend that the Defendants intentionally delayed disclosing Sircher (in fact, Sircher likely was not telling her false story about Plaintiff during the discovery period, and she only came up with this story recently, after Hileman decided to lie and, according to the Defendants, recruited Sircher as someone who could corroborate her story), Defendants consciously chose not to disclose Sircher. Courts repeatedly hold parties to their strategic choices, and this should be no different. *See* Dckt No. 273, Order denying Pltfs Mot. to Extend Discovery (Valdez, J.), at 7-8 (denying Plaintiff's motion to extend discovery because Plaintiff could have deposed a witness and asked for more time sooner, explaining "Plaintiff must bear the consequences of these tactical decisions"); *see also Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1223 (7th Cir. 1990) (noting that litigants are saddled with the consequences of their

tactical decisions when they fail to take advantage of opportunities to conduct discovery).

Defendants' late disclosure of Sircher should be stricken, and she should be barred as a witness.[4]

## II.      Disclosure Issues Aside, Defendants' Proffered Testimony Is Separately Inadmissible

Although Sircher's testimony can and should be completely barred based on the disclosure issue alone, the proffered testimony is also inadmissible.

As an initial matter, Sircher lacks foundation to testify about the other fires that "she knows" Plaintiff started. Notably, Sircher does not claim that she actually saw Plaintiff start any of these fires nor does she lay a foundation for any of the alleged garbage cans or toilet plungers that Plaintiff would set on fire. Ex. A, ¶¶ 4, 6, 7. Moreover, for the two house fires that she identifies—one on New Year's Eve when she was 13 and one at a house on 48th and Racine—there is no evidence that the fire was an arson, that Plaintiff had anything to do with either fire, or even that Sircher witnessed the fires. For example, all she says about the New Year's Eve fire is that she remembers there being a fire. As for the Racine fire, Sircher says she is "certain he burned [the house] down" based on alleged hearsay that she heard regarding financial problems. *Id.* ¶¶ 6, 7. This evidence reeks of propensity for all of the reasons stated in Plaintiff's motion *in limine* no. 9. And that assumes it was true, which it is not. *See* Ex. C, Cook Declaration.

More importantly, because Plaintiff has withdrawn his malicious prosecution claim, there can be no legitimate argument that the Defendants (who never knew about these fires anyway) somehow

---

[4]      As Plaintiff argued in Court on August 3, 2017, Defendants filed a misleading supplemental Proposed Final Pretrial Order on August 1, 2017 listing Sircher as a witness. Dckt. 631. Unlike every other Proposed Final Pretrial Order, this document was not submitted jointly by the parties, and Defendants did not share the document with Plaintiff prior to filing it. As a result, the document fails to note Plaintiff's objection to Sircher as a witness. This omission is especially misleading because Defendants did seek Plaintiff's response to the new exhibits (Sircher's and Hileman's affidavits), but not the new witnesses (Sircher), so a reader is likely to incorrectly assume that Defendants gave Plaintiff an opportunity to weigh in on Sircher and that Plaintiff did not object. The whole submission should be stricken, and Defendants should be admonished that Proposed Final Pretrial Orders should be filed jointly.

relied on them for probable cause. Dckt No. 638. All testimony by Sircher about other alleged fires Plaintiff was supposedly involved in should be barred. *See United States v. Lee*, 724 F.3d 968, 976-77 (7th Cir. 2013); *United States v. Miller*, 673 F.3d 688, 698-99 (7th Cir. 2012).

So too for any testimony about Plaintiff's prior arrests or convictions. Sircher discussed in her affidavit both Plaintiff's prior arrest and conviction for burglary, as well as Plaintiff's arrest (and ultimate **acquittal**) for the death of Joseph Kulikowski. Plaintiff has explained at length why neither his convictions nor his arrests are relevant or admissible. *See* Dckt No. 403, Plaintiff's Motion *in Limine* No. 6; Dckt No. 638, Plaintiff's Motion to Supplement. Indeed, just as is true for testimony relating to Plaintiff's alleged "fire starting," testimony about Plaintiff's "prior bad acts" criminal history is pure propensity evidence with no exception: It was not part of the Defendants' calculus for probable cause nor is probable cause an element in the case any longer. To the contrary, evidence about Plaintiff's alleged bad acts—be they arrests, convictions or fires—would simply serve to prejudice the jury against him. *See Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001); *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990).

In addition, Sircher should be barred from testifying about Plaintiff having cut himself or having injured himself in custody "to blame it on police brutality" both as a general matter and as it specifically pertains to this case. Ex. A, ¶¶ 5, 8. The testimony Sircher offered about Plaintiff cutting himself is hearsay without exception; so too for her testimony about Plaintiff supposedly self-inflicting his injuries. According to her affidavit, Sircher learned about Plaintiff injuring himself second- or third-hand from either her mother or stepfather, or from some other unidentified source. Sircher's related testimony about Plaintiff boasting about injuring himself and blaming it on the police generally also is inadmissible: It lacks foundation and relevance; and would be highly prejudicial balanced out against any probative value.

Last, Sircher should be barred from testifying about her or other family members supposedly being molested by Plaintiff. Ex. A, Sircher Aff. ¶ 9. To be clear, Plaintiff denies this outrageously false accusation. But the real point is that this highly inflammatory and salacious allegation has no place in this trial: It is an issue that has heretofore never been raised by any witness; it has no probative value or relevance to any of the issues before the jury; and would serve only to inflame the passions of the jury against Plaintiff to such an extreme extent that the Rule 403 balancing becomes an easy call. *See*, *e.g.*, *Earl v. Denny's, Inc.*, No. 01 C 5182, 2002 WL 31819021, at *2-3 (N.D. Ill. Dec. 13, 2002).

Finally, although Hileman was disclosed—and deposed—in this litigation, it is worth noting here that the same deficiencies infect Hileman's affidavit. For all of the same reasons identified above, Hileman too should be barred from testifying about: Plaintiff's prior arrests or convictions; Plaintiff's supposed proclivity for starting fires; and Plaintiff's supposed molestation of his family. Ex. B, ¶¶ 4, 6, 7, 8, 9. The fire starting evidence is particularly inadmissible: Defendants wish to inform the jury that Plaintiff allegedly started a fire on another occasion. The inference they intend to ask the jury to draw is that Plaintiff's propensity for starting fires makes it more likely he committed the arson for which he was convicted. This is not admissible evidence, and Hileman's testimony on this subject should be barred.

### III. Plaintiff Needs to Conduct Additional Discovery Relating to Hileman's Affidavit, and, If She's Permitted To Testify, Sircher's Affidavit

Unlike Sircher, Hileman was properly disclosed and she gave a deposition during the discovery period. The problem, however, is that her testimony at her deposition is the exact opposite of what she claims in the affidavit Defendants have recently served. Plaintiff has no idea how she came to commit perjury (after all, both stories cannot be true), and Plaintiff requires additional discovery so that he can develop evidence to meet her new accusations.

10

As described above, Plaintiff was completely surprised by the assertions that Hileman and Sircher are making against him. Hileman in particular gave deposition testimony in this case that could not be more at odds with the content of her affidavit. As the following chart shows, there is simply no way to square Hileman's 2015 sworn testimony with her 2017 affidavit:

| On the December 24, 1987 car fires: | |
| --- | --- |
| **Hileman Dep. at 45:7-10** <br><br> Q. Did James ever say anything to you about -- did James ever tell you that he had started the car fires? <br><br> A. No. | **Hileman Decl. ¶ 4** <br><br> Kluppelberg admitted to me that he had set the cars on fire because he was upset he was not invited to [a] Christmas party. |
| **On Plaintiff allegedly setting other fires:** | |
| **Hileman Dep. at 57:6-9** <br><br> Q. Had you ever known prior to [January 1988] James to start any fires, even if it was fires that didn't result in injury to any people? <br><br> A. Only on accident. | **Hileman Decl. at ¶¶ 4, 8** <br><br> [In December 1987] Kluppelberg admitted to me that he had set the cars on fire because he was upset he was not invited to [a] Christmas party. <br><br> He also told me he had started a fire in the garbage chute at the premises of the company where he worked at a different time, when he was upset about something else <br><br> His family told stories that when he was younger, he would wrap toilet paper in the toilet plunger, set it on fire and run through the house whenever he was upset <br><br> When he was younger he burned won the house where his family was living in Racine Street in Chicago |

11

| On Plaintiff's Innocence: | |
| --- | --- |
| **Hileman Dep at 164:8-11, 166:2-6, 172:18-20**<br><br>Q. When James was locked up in the Department of Corrections, did you continue to believe that he was innocent?<br><br>A. Yes.<br><br>***<br>Q. Do you still believe with the same amount of certainty or as you did before that James is innocent or is there something that makes you think -- have some doubt as to that?<br><br>A. No, not really.<br><br>***<br>Q.  Was there any truth to the statement that James had told you that he set the fire?<br><br>A.  No. | **Hileman Decl. at ¶ 5**<br><br>[When James was in jail after he was sentenced] I would visit him regularly in jail.  During a visit one day, Kluppelberg admitted to me that he had started the fire in the building at Hermitage that killed that family. |
| On Plaintiff's alleged promises to Hileman | |
| **Hileman Dep. at 176:3-11, 189:16-24**<br><br>Q. Do you expect that if James were to get a lot of money from his lawsuit, that he would give you some?<br><br>A. No. Would I want some? Yes, after everything I went through, yes. But, no, he hasn't promised me anything, no.<br><br>Q. Has he told you anything about what he plans to do with any money that he may receive?<br><br>A. No.<br><br>*** | **Hileman Decl. at ¶ 9**<br><br>When he was released, I asked Kluppelberg what he was planning to do.  He told me he would make it all up to me, pay me back the money he owed me.. . . He promised to give me my money back. |

| | |
|---|---|
| Q. Whatever your beliefs about whether -- whether it would be fair to reimburse you for all that you've put into James, is it fair to say that you're testifying here under oath truthfully regardless of whether James ever recovers any money in this lawsuit? That was a long question. Do you want me to ask that again?<br><br>A. No. He didn't promise me nothing. I expect nothing. And everything I said was truth. | |

Plaintiff's counsel has attempted to talk to Hileman about her new affidavit, but Hileman was extremely hostile and hung up the phone after making only a few statements. Plaintiff must have the opportunity to depose Hileman so that he can know which story she is going to tell at trial, or whether she is going to give substantive testimony at all (even Defendants would have to acknowledge that Hileman has plainly committed perjury).

In addition to deposing Hileman, Plaintiff also requests to re-depose Cook County State's Attorney investigator Daniel Brannigan and depose Assistant Cook County State's Attorney Carol Rogala. In Hileman's affidavit, she alleges for the first time ever that she was present for Brannigan's and Rogala's interview of Dawn Gramont, which occurred as part of the post-conviction investigation, and that she told Brannigan and Rogala about Plaintiff admitting to committing the Hermitage Fire.[5] Ex. A, Hileman Aff. ¶ 5. Brannigan's memorandum, however, makes no such mention of either Hileman being present or providing them with information; in fact that report on its face suggests that Hileman was not present for that interview. Plaintiff therefore seeks to know whether Brannigan and Rogala are going to corroborate Hileman's account, or whether they are going to impeach her.

---

[5] It is unclear whether she told them that Plaintiff admitted to her that he committed the crimes, or that he admitted to both her and Sircher. According to defense counsel, Hileman is the person that directed them to Sircher to corroborate Hileman's allegations against Plaintiff, including that Plaintiff allegedly confessed to her.

Plaintiff is also seeking leave to serve subpoenas for medical records relating to Hileman's Alzheimer's and dementia, which she has admitted has affected her memory. *See* Ex. D, Hileman Dep. at 102. As Plaintiff's counsel understands it, Hileman has received treatment for these conditions at St. Anthony's Medical Center, Mt. Sinai, and Access Cabrini Medical Center, and possibly other treaters as well. As Plaintiff's counsel further understands it, Hileman sometimes wears a "memory patch" to assist her, and possibly requires other pharmaceutical assistance.

But if Hileman's recollection is to become the central defense at this trial, Plaintiff should be permitted to conduct limited discovery as to her medical condition. Indeed, Plaintiff cannot fathom why Hileman has given two sworn statements in this case that are so diametrically opposed, but perhaps her dementia and memory issues are at least partly at play. Given the seriousness of Hileman's new allegations against Plaintiff, he must be allowed to explore cognitive issues that could explain her about-face and/or help the jury to decide what weight to give Hileman's testimony. To that end, Plaintiff asks that the Court enter the proposed order attached to this motion at Exhibit E and that Plaintiff be granted leave to serve subpoenas for Hileman's medical records on her providers.

Finally, given that Hileman's and Sircher's new affidavits are coming out of nowhere, Plaintiff is entitled to discover the foundation for Sircher's statements and identify any additional discovery (witnesses, documents, etc.) that may be able to rebut her assertions to the extent that any foundation exists. Plaintiff is also seeking leave to serve discovery requests on the Defendants for (a) all communications with Hileman and Sircher relating to Plaintiff; (b) any drafts of the Hileman and Sircher affidavits that were executed; (c) the identity of the person or person(s) who assisted in

preparing the affidavits; (d) the opportunity to depose that person; and (e) any criminal history relating to either Hileman or Sircher.[6]

Plaintiff has already served Hileman with a subpoena to re-depose her, and if the deposition proceeds as noticed, Plaintiff believes that he could get this discovery done within weeks. Unlike Sircher, Hileman was previously disclosed as a witness, and will therefore definitely testify. To meet this testimony, Plaintiff is asking that this Court postpone the trial by two weeks to enable Plaintiff to properly defend against the new evidence proffered by Defendants on the eve of trial.

### Conclusion

For all of the reasons stated above, Plaintiff respectfully requests that this Court (A) strike Defendants' late disclosure of Victoria Sircher, and bar Victoria Sircher as a witness in the upcoming trial; (B) allow Plaintiff time to conduct discovery so that he can rebut Hileman's new false allegation that he allegedly confessed to her; and (C) bar all of the other allegations in Hileman's affidavit on the grounds of hearsay, unfair prejudice, and total lack of relevance, all as discussed above.

Respectfully submitted,

/s/ Gayle Horn
One of Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Gayle Horn
Elizabeth Mazur
Katie Roche
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

---

[6] Plaintiff has an old rap sheet for Hileman that was produced during fact discovery in this case, but on information and belief, Hileman has been arrested and possibly convicted for another offense since that time.

15

## CERTIFICATE OF SERVICE

I, Gayle Horn, an attorney, hereby certify that on August 9, 2017, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Gayle Horn