UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES KLUPPELBERG,

        Plaintiff,

    v.

JON BURGE et al.,

        Defendants.

Civil Action No. 13 cv 3963

Judge Joan Humphrey Lefkow

Magistrate Judge Maria Valdez

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION TO STRIKE AND FOR OTHER RELIEF AND TO
PLAINTIFF'S MOTION FOR EXTENSION OF TRIAL DATE**

On July 28, 2017, Defendants disclosed affidavits obtained from Plaintiff's ex-wife, Bonnie Hileman, and sister, Veronica Sircher. Both Hileman and Sircher testify that Plaintiff admitted to them, on separate occasions in the late 1980's, that he had started the fire at 4448 S. Hermitage that resulted in the deaths of Elva Lupercio and her five children in March 1984 (the "Hermitage Fire"). In the face of such relevant and damaging evidence, Plaintiff has filed a Motion to Strike and for Other Relief (Dkt. 640) and Motion for Extension of Trial (Dkt. 642, and collectively with Dkt. 640 "Motions") asking this Court to bar Sircher's testimony altogether, bar certain testimony from Hileman, allow additional discovery including a deposition of Hileman (who was previously deposed in this case), and delay trial by two weeks.

Both of Plaintiff's Motions should be denied. As to Sircher, Defendants had no reason to know that she had relevant testimony prior to obtaining her affidavit, and Plaintiff even admits that he is "not contending that Defendants intentionally delayed disclosing Sircher." (Dkt 640 at 7.) Sircher's testimony that Plaintiff admitted to her that he started the Hermitage Fire is unquestionably relevant and admissible. Defendants have previously advised Plaintiff that they

1

have no objection to a deposition of Sircher before trial, something that can easily be accomplished before August 21.

As to Hileman, Plaintiff's admissions to her that he: (1) started the Hermitage Fire, (2) self-inflicted his injuries the night he confessed that he started the Hermitage Fire to police and prosecutors, injuries he later falsely claimed were inflicted by police, and (3) started the car fires in December 1987 on Belle Plaine Avenue (the "Belle Plaine Fires") which led to police having renewed contact with him and investigating his possible role in the Hermitage Fire, are all relevant and admissible admissions, and Plaintiff does not argue otherwise. There is absolutely no basis nor authority for Plaintiff to obtain additional discovery of Hileman, as she was long ago deposed in this case and Plaintiff had every opportunity to ask her any questions he saw fit.[1] The fact that she apparently has decided to now come forward with truthful testimony concerning Plaintiff's admissions is not grounds for reopening discovery; indeed she could have simply appeared at trial and provided that same testimony without the disclosure Plaintiff has now received.

Plaintiff's attempts to bar other, specific testimony contained in Sircher and Hileman's testimony can be dealt with through the Court's *in limine* orders and evidentiary rulings at trial; indeed Defendants admit that many of the statements in those affidavits are likely inadmissible and do not intend to elicit testimony from those affidavits beyond the testimony described above. Finally, there is no basis to delay trial. Plaintiff already succeeded in one last-minute delay this past November, necessitating a 10-month postponement. Having accommodated Plaintiff's last request, any further delay is both unwarranted and unnecessary, as the deposition of Sircher

---

[1] Defendants are filing, at the same time as the instant brief, a Motion to Quash a deposition subpoena served on Hileman.

2

could already have occurred during the past two weeks, can still easily be accomplished before trial, and there is no basis to obtain additional discovery concerning Hileman.

Plaintiff does not like Sircher's and Hileman's testimony, which adds important present and former family members to the already lengthy list of witnesses to whom Plaintiff has acknowledged his guilt in starting the Hermitage Fire. But damage to Plaintiff's case is not a basis to bar or exclude that testimony, obtain additional discovery concerning Hileman, or delay this trial any further. Plaintiff's Motion to Strike and for Other Relief and Motion for Extension of the Trial Date should be denied.

## BACKGROUND

In June of 2017, Defendants began the process of preparing for trial, including contacting various witnesses to inform them of the start date of trial and requesting that they contact Defendants' counsel to provide information necessary to serve trial subpoenas. Among the individuals contacted by Defendants was Plaintiff's ex-wife, Bonnie Hileman, who was married to Plaintiff from approximately 1989-2004, and was his girlfriend at the time of his arrest, trial, and conviction for the Hermitage Fire. On June 29, 2017, Hileman spoke to Jeffrey Kivetz, counsel for the Individual Defendants, and volunteered that she intended to testify that Plaintiff admitted to setting the Hermitage Fire. On July 26, 2017, Defendants sent an investigator to speak with Hileman who provided additional, never before disclosed bombshell evidence. Specifically, Hileman told the investigator that Plaintiff admitted to Hileman that he self-inflicted the injuries that Plaintiff has forever alleged were inflicted by Defendant Rolston and Detective Schmitz in January 1988. Hileman further confirmed that Plaintiff admitted to her that he started the Hermitage Fire, along with the Belle Plaine Fires. At the conclusion of the meeting, Hileman swore an affidavit which, contrary to Plaintiff's unsupported assertions, Defendants' counsel played no role in preparing. During the discussion, Hileman also suggested

to the investigator that Victoria Sircher, Plaintiff's sister, may have corroborating, relevant information. Following this new lead, on July 28, 2017, Defendants sent the investigator to speak with Sircher and, in a similar fashion, obtained an affidavit from Sircher. That same day, Defendants served Plaintiff with both affidavits along with an updated Rule 26(a)(1) disclosure, listing both Hileman and Sircher. On August 1, 2017, Defendants filed a supplement to the pretrial order which added Sircher to their witness lists and both affidavits to their joint exhibits. Over a week later, and having taken no steps to undertake the discovery he now claims is necessary to avoid prejudice, Plaintiff filed the instant Motions.

## **ARGUMENT**

### I. THE TIMING OF DEFENDANTS' DISCLOSURE OF VICTORIA SIRCHER DOES NOT JUSTIFY BARRING HER TRIAL TESTIMONY.

Plaintiff's Motions argue that Defendant's failure to timely disclose Sircher as an "individual likely to have discoverable information . . . [Defendants] may use to support [their] claims or defenses," bars Defendants from calling her as a witness at trial. Fed. R. Civ. P. 26(a)(1). "Rule 37[, however] precludes the trial judge from imposing the exclusion sanction unless it finds the party's failure to comply with Rule 26(a) was *both* unjustified and harmful to the opposing party." *Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000) (emphasis added). Neither element is present here. Nothing in the record suggests that Defendants should have known during discovery that Sircher would have information relevant to their defenses. Nor can Plaintiff claim that he has been harmed by the timing of the disclosure when he has had personal knowledge regarding the substance of Sircher's testimony for nearly 30 years. The only thing he did not know is that she would come forward. Accordingly, the timing of Sircher's disclosure should not bar her testimony.

**A.      The Timing of Defendants' Disclosure of Victoria Sircher Is Justified.**

Plaintiff has already acknowledged that Defendants did not "intentionally delay[] disclosing Sircher." (Dkt 640 at 7.)  Having conceded that there was no bad faith by Defendants, Plaintiff retreats to the argument that Defendants' delay was unjustified because they "knew about Sircher and had every opportunity to depose her." (*Id.* at 4.)  But none of the supposed sources Plaintiff identifies as providing notice of Sircher would ever give Defendants cause to believe that she might have information relevant to this case.  And it is not enough that Defendants knew that Sircher existed, Defendants must have had some basis to believe that Sircher had *relevant* information to support *Defendants'* defenses.  *See e.g. Diaz-Garcia v. Surillo-Ruiz*, 98 F. Supp. 3d 396, 402 (D.P.R. 2015) ("Therefore, plaintiffs argue, 'no matter how diligent [they] could have been, there is no way [plaintiffs] could have identified Dr. Laborde as having relevant information, much less being a possible witness' until after the discovery deadline had expired. Plaintiffs offer a legitimate reason for the late disclosure.") (alterations in original); *Sophia & Chloe, Inc. v. Brighton Collectibles, LLC,* No. 12CV2472 AJB (KSC), 2015 WL 10990262, at *8 (S.D. Cal. Mar. 26, 2015) ("Defendant asserts all of the declarations should be struck because the witnesses were not disclosed. . . .  Plaintiff argued the witnesses were seasonably disclosed once information relevant to the claims came to light. While the circumstances may not have been ideal, Plaintiff did not fail to disclose but instead offered a late disclosure. The Court is persuaded that the late disclosure was substantially justified.")  Here, none of the information identified by Plaintiff comes close to providing that evidentiary basis.

First, Plaintiff points to the fact that he mentioned that Sircher was his sister during his deposition. (Dkt 640 at 4.)  Rather than identifying Sircher as a potential source of discovery, Plaintiff's deposition testimony only validates Defendants' belief that she did not have any relevant information.  When Defendants inquired about Sircher, Plaintiff sole testimony was that

he had not seen her since a month after he was released (three years prior to his deposition), that he did not have her phone number, and that he did not even know her last name. (Ex. A (Plaintiff's Deposition) at 290:9-22.) None of this information remotely suggests that Sircher would have information relevant to this case, let alone Defendants' defenses.

Second, the fact that Sircher was identified as present when Defendant Leonard Rolston and his late partner John Schmitz came to interview Kluppelberg at his mother's home at 51st and Hermitage after the Belle Plaine Fires is not enough to suggest that she had information relevant to Defendants' defenses. Plaintiff has never alleged any claim which would implicate the circumstances of that encounter at his mother's home. Instead, Plaintiff's allegations concerning the alleged impropriety of his arrest and subsequent interrogation involve what happened after he was taken to police headquarters and focused on the mental state of the officers in arresting and prosecuting him, and the beating he allegedly suffered at their hands, issues which Defendants would have no reason to believe Sircher could possibly have any personal knowledge about.

Third, the fact that Sircher's name appeared in the 1989 presentence investigation report of George Savarese would not lead to the belief she had relevant evidence. That report also identifies twenty-five other interviewees (ranging from friends of the Kluppelberg family to an attorney for a realty company) and twenty-four other individuals who Savarese attempted to contact but could not reach. (Ex. B (Savarese's Presentence Investigation Report) at 2-3.) Plaintiff's contention that Defendants should have deposed each of these individuals or risk untimely and unjustified disclosure should one of them come forth with relevant information on an entirely unrelated issue years later strains credulity.[2]

---

[2] Plaintiff also takes issue with Defendants' choice to investigate Donna Kluppelberg, one of Plaintiff's ex-wives, but not Sircher. (Dkt. 640 at 4.) But that Defendants investigated one family member without relevant information is hardly an argument that Defendants should have investigated

Likewise, Plaintiff's reliance on *System Dev. Integration, LLC v. Computer Scis. Corp.*, No. 09 CV 4008, 2012 WL 2953063 (N.D. Ill. July 19, 2012), a case in which there was no explanation for why the information was not disclosed earlier, is misplaced. *See Medicines Co. v. Mylan, Inc.*, No. 11 C 1285, 2013 WL 2303247, at *3 (N.D. Ill. May 24, 2013) (finding substantial justification for late disclosure and distinguishing *Sys. Dev. Integration* as a case where the "party failed to 'provide any detail regarding when it learned of the new information' or why it failed to disclose the information earlier"). Accordingly, the timing of Defendants' disclosure of Sircher is substantially justified. *See United States v. Dish Network, L.L.C.*, No. 09-3073, 2016 WL 29244, at *12 (C.D. Ill. Jan. 4, 2016) ("Dish argues that the omission of Cagle and Gniadek is substantially justified because they only recently performed the audits, had no earlier connection to this case, and could not have been disclosed earlier. . . . [T]he Court finds that omission of Cagle and Gniadek was substantially justified.").

### B.  The Timing of Defendants' Disclosure of Victoria Sircher Is Harmless.

Even if the timing of Defendants' disclosure of Sircher was not substantially justified, Sircher should still be permitted to testify because the disclosure was harmless. *See Sherrod*, 223 F.3d at 612 (7th Cir. 2000) ("Rule 37 precludes . . . the exclusion sanction unless . . . failure to comply with Rule 26(a) was *both* unjustified and harmful."). Plaintiff appears to argue that the timing of Sircher's disclosure "is deeply prejudicial to Plaintiff" because "Sircher is a new witness making explosive and far reaching false allegations about Plaintiff" and because the

---

(continued…)

another. Moreover, unlike Sircher, Plaintiff was with Donna Kluppelberg earlier on the day of the Hermitage Fire, was interviewed by police regarding the fire, and provided relevant information regarding Plaintiff's work for a board-up service. (*See* Ex. C (Rolston/Schmitz 1.18.88 Supplementary Report).)

language of Sircher's affidavit is "ambiguous."[3]  (Dkt. 640 at 5.)  But Plaintiff is not the trier of fact in this case, and any question as to the credibility and weight to be assigned to Sircher's testimony should be reserved for the jury.  It is not a reason to bar that testimony.[4]  Nor can Plaintiff rely on any prejudice created by "far reaching" allegations, as the only testimony in Sircher's affidavit that Defendants' intend to elicit from Sircher at trial is Plaintiff's admission to setting the fire.

For the same reason, Plaintiff cannot contend that he was unaware of the subject matter of Sircher's testimony where it relates to an admission he made to her almost 30 years ago.  It is well established that there is no obligation to supplement Rule 26(a) disclosures where "the additional information was 'otherwise … made known to other parties during the discovery process.'"  *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, No. 02 C 3767, 2007 WL 781253, at *9 (N.D. Ill. Mar. 7, 2007); *see also Fenje v. Feld*, 301 F.Supp.2d 781, 814-815 (N.D.Ill.2003) (defendant was not obligated to supplement interrogatory answers to identify witnesses that plaintiff was aware of); *Everst v. Credit Protection Ass'n, L.P.*, No. 01-7025, 2003 WL 22048719, *1 n. 1 (N.D.Ill. Aug.25, 2003) (defendants under no duty to supplement Rule 26(a) disclosures where plaintiffs admitted they knew of the witnesses at issue).

Indeed, Plaintiff's personal knowledge of the subject matter of Sircher's testimony

---

[3] Despite Plaintiff's claim, Sircher's testimony in her affidavit that Plaintiff admitted that "he told me he knew he did it but that he didn't want to go back to prison, that he couldn't be there for the rest of his life" is not ambiguous, as the only crime Plaintiff was ever accused of that carried a life term was the murder of the Lupercio family in the Hermitage Fire.  Further any supposed ambiguity is clarified later in Sircher's affidavit when she testifies that she "never told anyone that [her] brother had admitted to [her] that he had started the fire."  (Dkt. 640, Ex. A at 1.)

[4] Plaintiff's cynical conclusion that Sircher's testimony is "false" because she has never before asserted these claims against Plaintiff before ignores numerous other reasonable alternative conclusions, including that she was never asked, and that she likely did not want to go around advertising that her brother was responsible for starting a fire that killed a mother and her five children.

mitigates any prejudice even if, as Plaintiff claims, he never admitted to Sircher to setting the Hermitage Fire, as he can simply deny having made those admissions at trial. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir. 2003) ("[T]he district court[ ] . . . [did not] abuse[] its discretion in permitting Dieckow to testify at trial. Caterpillar . . . was able to rebut directly Dieckow's testimony at trial. Caterpillar called Mitzelfelt, and he squarely denied making any such statements. Because Mitzelfelt was the only other person privy to the conversation in question, the district court reasonably could have determined that Caterpillar was not prejudiced by Ms. David's failure to disclose in a timely manner the subject of Dieckow's testimony.").

To the extent that any prejudice was introduced by the timing of Defendants' disclosure of Sircher, it can be cured through a deposition of Sircher. *See Medicines Co.*, 2013 WL 2303247, at *3 ("Moreover, any prejudice to TMC from the timing of the disclosure is curable. The Court has already indicated its willingness to allow the parties to conduct the depositions of [the late disclosed witnesses]."); *Warfield v. City of Chicago*, 565 F. Supp. 2d 948, 960 (N.D. Ill. 2008) ("Nevertheless, the Court finds that the prejudice can be cured. Defendants do not object to Plaintiffs deposing Jackson after the close of discovery, and Plaintiffs have time to do so.").[5] This is particularly true where, as here, there is a limited focus to the newly disclosed testimony. *See Illinois Computer Research, LLC v. Harpo Prods., Inc.*, No. 08 C 7322, 2010 WL 2136665, at *12 (N.D. Ill. May 26, 2010) ("Permitting discovery regarding licenses that ICR granted will

---

[5] Plaintiff contends that a deposition alone is insufficient to cure the prejudice in this case, listing a plethora of other steps Plaintiff would have taken in discovery had he been aware of the subject matter of Sircher's testimony (which Defendants note, he was). But Plaintiff has not cited to a single case which suggests that prejudice can be established through the exercise of listing every imaginable act of discovery Plaintiff might have taken. Plaintiff has not established that such discovery is needed to rebut Sircher's testimony or that the evidence uncovered could even be admitted to do so. For instance, Plaintiff suggests that he would have conducted discovery on how Sircher's "very serious substance abuse problems affect her veracity and memory" but identifies no basis for admitting such evidence under Federal Rules of Evidence 608 or 609. (Dkt. 640 at 6.) The idea that Plaintiff needs discovery to develop inadmissible, improper character evidence that would never be admitted is absurd.

impose no unfair prejudice on ICR. . . .  [T]he focus is discrete enough that ICR should be able to adjust without unduly hampering . . . trial preparation and without imperiling the trial date.").

Finally, any claim that Plaintiff was "deeply prejudice[ed]" by the timing of Defendants' disclosure of Sircher is belied by Plaintiff's own failure to seek the deposition of Sircher prior to the filing of the instant Motion.[6]  *See Umbenhower v. Copart*, Inc., 222 F.R.D. 672, 676 (D. Kan. 2004) ("[I]f Plaintiff truly believed she was being prejudiced or harmed by Defendants' failure to disclose . . . Plaintiff could have alleviated such prejudice . . . . Instead of taking this logical step, Plaintiff waited for two weeks after . . . to file the instant motion").

## II.      THERE IS NO NEED FOR A PREEMPTIVE ORDER LIMITING THE TESTIMONY OF SIRCHER OR HILEMAN.

Plaintiff's objections to the proffered testimony of Sircher and Hileman are largely misplaced.  Defendants are not seeking to admit either affidavit into evidence.  As stated earlier, Defendants recognize that portions of both affidavits are inadmissible.  If and when Sircher and Hileman testify, they will be bound by the same rules of evidence and rulings on motions *in limine* as any other witness in this case.  There is thus no need for an order preemptively restricting the subject matter of their testimony.  (*See* Dkt. 533 at 5 ("Unless evidence is 'clearly inadmissible,' the court should defer ruling until trial so that questions of relevance, foundation, and prejudice can be decided in context.").)  If, nevertheless, this Court believes it necessary to consider Plaintiff's objections at this juncture, this Court should allow both Sircher and Hileman to testify to Plaintiff's admissions to setting the fire, and allow Hileman to additionally testify to Plaintiff's admission that he staged his beating while in police custody and to Plaintiff's

---

[6] Notably, Plaintiff did not hesitate to serve a subpoena on Bonnie Hileman prior to the filing of this Motion even though, with respect to Hileman, he was actually required to seek leave of the court before compelling a second deposition.  *See* Fed. R. Civ. P. 30(a)(2).

admission that he set the Belle Plaine Fires.

### A. This Court Should Permit Sircher and Hileman to Testify as to Plaintiff's Admissions to Setting the 1984 Hermitage Fire.

Both Sircher and Hileman's affidavits contain testimony that Plaintiff admitted to setting the 1984 Hermitage Fire. (*See* Dkt. 640, Ex. A (Sircher's Affidavit) at 1 ("[Plaintiff] told me he knew he did it but that he didn't want to go back to prison, that he couldn't be there for the rest of his life. . . . I never told anyone that my brother had admitted to me that he had started the fire."); Dkt. 640, Ex. B (Hileman's Affidavit) at 2 ("Kluppelberg admitted to me that he had started the fire in the building at Hermitage that killed that family.").) Plaintiff does not dispute that testimony as to these inculpatory statements is admissible. Nor could he. This Court has already ruled that "[P]laintiff's inculpatory statement made to [a witness] that 'he is not going back to jail for something stupid he did and spend the rest of his life in jail' is relevant to plaintiff's expected damages theory." (Dkt. 533 at 9-10); *see also Parish v. City of Elkhart,* 702 F.3d 997, 1002 (7th Cir. 2012) (evidence of guilt relevant to due process claims alleging wrongful conviction). Accordingly, this Court should permit Sircher and Hileman to testify at trial as to these inculpatory admissions by Plaintiff. Moreover, as Defendants do not currently intend to elicit from Sircher any of the other topics covered in her affidavit,[7] Plaintiff's arguments that those other topics should be excluded is moot. (*See* Dkt. 640 at 8-10.)

### B. This Court Should Permit Hileman to Testify as to Plaintiff's Admission to Staging His Own Beating.

While Plaintiff's Motion lists Paragraph 6 of Hileman's affidavit—the paragraph containing Plaintiff's "admi[ssion] . . . that he had faked his injuries and the purported beating he had received from the police" (*Id.*, Ex. B (Hileman's Affidavit) at 2)—amongst the paragraphs

---

[7] Subject to Plaintiff not opening the door to such testimony.

"Hileman [] should be barred from testifying about," Plaintiff advances no argument in support of this position. (*Id*. at 10.) Nor could he. The admission is clearly relevant to Plaintiff's claim that Defendants violated his rights by fabricating evidence against him, including by allegedly coercing his confession through violence (Dkt. 637 at Count I), as well as to Plaintiff's "expected damages theory, which is premised on his proving his actual innocence." (Dkt. 533 at 10.) Further, Plaintiff's arguments for precluding *Sircher* from testifying to Plaintiff's self-infliction of injuries (that it is hearsay "learned . . . second- or third-hand from either her mother or stepfather") do not apply to Hileman's testimony, which is based on Plaintiff's direct admission to Hileman. (*Id.* at 9.) Accordingly, this Court should permit Hileman to testify at trial as to Plaintiff's admission to staging his own beating.

**C.     This Court Should Permit Hileman to Testify as to Plaintiff's Admission to Setting the Belle Plaine Fires.**

Plaintiff's sole argument for precluding Hileman from testifying as to Plaintiff's admission to setting the Belle Plaine Fires is that the fires are inadmissible propensity evidence. According to Plaintiff, "because Plaintiff has withdrawn his malicious prosecution claim," the only inference Defendants "intend to ask the jury to draw is that Plaintiff's propensity for starting fires makes it more likely he committed the arson for which he was convicted." (Dkt. 640 at 8-10.) Not so. Here, Plaintiff's involvement in the Bell Plaine Fires is necessary to establish why Plaintiff was brought to police headquarters for questioning in January 1988—it was during that questioning that he confessed to starting the Hermitage Fire, something Plaintiff has previously agreed. (*See* Dkt. 406 at 3 ("Plaintiff acknowledges that the jury will need to be told why the Defendants came to be interrogating him about fires. As such, it would be appropriate to inform the jury that Plaintiff, while working as a security guard, reported the two car fires, and that the Detectives proceeded to interrogate him.").) This alone, is reason enough

12

to admit the testimony. *See United States v. Cunningham,* 103 F.3d 553, 557 (7th Cir. 1996) ("Without knowing that she had been suspended, the jury would have wondered why she had been tested and [] falsified the test results. The admission of bad-acts evidence to contextualize[] and . . . enable the jury to understand[] other evidence is a recognized exception to the prohibition of bad-acts evidence.").

Moreover, though Plaintiff has indicated an intent to withdraw his malicious prosecution claim, Plaintiff still intends to proceed on his theory that Defendants framed him for a crime he claims he did not commit. Without evidence of the Bell Plaine Fires, the jury would be left with the impression that police investigated him in January 1988 for no reason, questioned him about a fire which was no longer under investigation, and convinced him to confess to the Hermitage Fire after that questioning. This incomplete timeline makes it far more likely that a jury would conclude that Plaintiff did not set the Hermitage fire and that his confession was coerced. Thus, the context provided by the fact that officers were investigating the Belle Plaine Fires, which Plaintiff had reported to the police just weeks earlier and which led to the police having renewed contact with Plaintiff, is relevant to the core issues of Plaintiff's guilt or innocence and the alleged fabrication of his confession. *See id*.

Accordingly, this Court should permit Hileman to testify as to Plaintiff's admission that he set the Belle Plaine Fires.

## III. THIS COURT SHOULD DENY PLAINTIFF'S REQUEST FOR A TWO WEEK EXTENSION.

Trial in this matter has already been postponed once at the last minute and without any prior notice to accommodate the needs of Plaintiff, and he has provided no legitimate reason to impose on the Court and the parties the substantial additional hardship of another delay. As Plaintiff notes in his Motion for Extension of the Trial Date, lead counsel for the City has another

13

trial starting on October 23, a date that was set by Judge Durkin specifically around the trial date in this case, and a trial which requires significant preparation.  (Dkt. 642 at 3.) [8]  Individual Defendants' counsel also starts a two to three week trial on October 30.  Consequently, Defendants would be significantly prejudiced by a two-week delay in the start of trial.

Nor has Plaintiff offered any legitimate reason for the delay.  Plaintiff indicates that he needs the two weeks to (1) re-depose Hileman, (2) re-depose Cook County investigator Daniel Brannigan and depose Cook County Assistant State's Attorney Carol Rogala regarding Hileman's affidavit, (3) subpoena Hileman's medical records, (4) serve discovery requests on Defendants relating to Hileman's affidavit, and (5) depose Sircher.

First, other than the Sircher deposition, which can be accomplished in a day, Plaintiff is not entitled to any of the discovery he claims he plans to seek.  That Hileman intends to testify differently from her deposition testimony is no justification to re-depose Hileman, or Brannigan, depose Rogala for the first time (she has long been disclosed as a witness in Defendants' Rule 26(a)(1) disclosures, and Plaintiff never chose to depose her), or seek additional discovery from Defendants and Hileman's medical providers.  "[I]t is common in litigation that witnesses' initial memories and versions of events change-and often radically."  *Se-Kure Controls, Inc.*, 2007 WL 781253, at *9.  It is absurd for Plaintiff to suggest that every time a party is given notice of such a change in testimony, they are permitted to depose that witness (and any other witness affected by the changed testimony) again.  Had Hileman, rather than provide an affidavit, testified

---

[8] Plaintiff's argument that this trial will be completed in two weeks is fantasy, given his own current witness plan.  Plaintiff apparently intends to call nine different City employees to testify as to the movement of the 1984 Area 3 Investigative File (rather than engage on a stipulation which Plaintiff himself proposed and the City offered minor revisions to a day later), and ten individuals who allegedly were abused by Jon Burge.  That's 19 witnesses alone, none of whom have anything to do with the Hermitage Fire, the police investigation of the same, or Plaintiff's criminal trial.  Under the circumstances, there is absolutely no hope that this trial will be completed in two weeks.

consistently with the contents of the affidavit on the stand, Plaintiff would not be given the chance suspend the trial to go take discovery. That Defendants have given Plaintiff notice of this change in advance is no justification for additional discovery. Similarly, Hileman's alleged capacity issues are not referenced in her affidavit and are not new information to Plaintiff, it was disclosed in her deposition.

Second, Defendants note that the affidavits giving rise to Plaintiff's requests were served on Plaintiff over three weeks before trial and a week before the pretrial conference. If, as Plaintiff claims, the necessary discovery could be completed in two weeks, it is incomprehensible why Plaintiff waited until 12 days before trial to make his request. Indeed, when Plaintiff raised the issue of moving to strike Defendants' new disclosures at the August 3, 2017 pretrial conference, Plaintiff made no mention of his intention to request a two-week extension of trial. Had he done so, this Court could have set an accelerated briefing schedule to ensure that all necessary discovery would be completed before trial. Instead, Plaintiff intentionally delayed making its request to postpone trial until he was in a better position to argue that he would be prejudiced without one. "Courts repeatedly hold parties to their strategic choices, and this should be no different." (Dkt. 640 at 7.)

Accordingly, this Court should deny Plaintiff's request for a two-week extension.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike and for Other Relief (Dkt. 640) and Plaintiff's Motion for Extension of Trial (Dkt. 642) should be denied.

Dated: August 14, 2017

Respectfully submitted,


By: /s/ *Daniel E. Reidy*

Daniel E. Reidy
Morgan R. Hirst
Elizabeth E. Manning
Scott B. Elmer
JONES DAY
77 W. Wacker Dr.
Chicago, IL 60601-1692
Telephone:    (312) 782-3939
Facsimile:    (312) 782-8585

*Counsel for Defendant*
*City of Chicago*


By: /s/ *James G. Sotos*

James G. Sotos
Elizabeth A. Ekl
Jeffrey R. Kivetz
THE SOTOS LAW FIRM, P.C.
550 East Devon, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980

*Counsel for the Individual Defendants*

16

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this August 14, 2017.

By: /s/ *Daniel E. Reidy*
One of the Attorneys for the City of Chicago